# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RITZ CAMERA CENTERS, INC.,[1] | Case No. 09-10617 (MFW) |
| Debtor. | RE: D.I. 701 |

## CONDITIONAL ORDER APPROVING SALE OF ALL OR SUBSTANTIALLY ALL OF DEBTOR'S ASSETS PURSUANT TO BACK-UP ASSET PURCHASE AGREEMENT, AND GRANTING RELATED RELIEF

Upon consideration of Debtor's **Motion for (I) Order (A) Approving Bid Procedures for the Sale of All or Substantially all of its Assets, (B) Authorizing Debtor to offer Bidder Protections, (C) Requiring the United States Trustee to Appoint a Consumer Privacy Ombudsman, (D) Scheduling Final Hearing and Approving Form and Manner of Notice Thereof, and (II) Order Authorizing and Approving (A) the Sale of Such Assets Free and Clear of Liens and Other Interests and (B) the Assumption and Assignment of Executory Contracts to the Successful Bidder(s) [D.I. 701]** (the "Motion");[2] and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a "core" proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other notice need be given; and a hearing on approval of the Bidding Procedures having been held before the Court on July 10, 2009; and this Court having entered an

---

[1] The last four digits of the Debtor's federal tax identification number is 6025.

[2] All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Purchase Agreement (as defined herein), and if not defined therein, then as defined in the Motion.

46460/0002-5796369v7

Order, inter alia, approving the Bid Procedures [D.I. 726]; and the Sale Hearing having been held before the Court on July 23, 2009; and upon the record of the Sale Hearing; and it appearing that the relief requested in the Motion and the entry of this Order is in the best interest of the Debtor, its estate and creditors; and any objections filed to the Motion having been resolved, withdrawn, or otherwise overruled on the merits by the Court as provided in this Order; and after due deliberation, and sufficient cause appearing therefor,

IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. Notice of the Motion, and of the Sale Hearing was given in accordance with the directive of the Court and as otherwise required by applicable law, as evidenced by the affidavits of service on file with the Clerk of the Court.

D. The notice provided of the Motion and of the Sale Hearing was adequate and sufficient under the circumstances.

E. In accordance with the Bidding Procedures Order, the Debtor conducted an auction for the Purchased Assets on July 20, 2009, beginning at approximately 10 a.m. At the conclusion of bidding, spanning several hours and over two days, the Debtor, after consultation with the Committee, selected RCI Acquisition, LLC ("RCI") as the Successful Bidder. Also on July 20, 2009, at the conclusion of the bidding, the Debtor, after consultation with the

2

Committee, selected Ritz Acquisition Group, LLC (the "Purchaser" or "Agent"), as the "back-up bidder" for the sale of the Purchased Assets in the event the proposed sale transaction with RCI fails to close by July 24, 2009 at 5:00 p.m. EST. In the event the proposed sale transaction with RCI does not close by July 24, 2009 at 5:00 p.m. EST, this Order shall immediately become effective, and the Debtor and the Purchaser shall be authorized, but not required, to consummate the sale of the Purchased Assets in accordance with this Order. In the event the transaction with RCI closes by 5:00 p.m. EST on July 24, 2009, this Order shall be of no further force and effect.

F. On July 23, 2009, the Debtor and the Purchaser entered into a Back-Up Asset Purchase Agreement and Back-Up Agency Agreement and related documents containing the terms and conditions of the Purchaser's back-up bid (the Back-Up Asset Purchase Agreement, the Back-Up Agency Agreement and related documents together, with all exhibits, schedules and like thereto, the "Purchase Agreement"), a copy of which is attached hereto as **Exhibit A**. Under, and subject to the terms and conditions of, the Purchase Agreement, the Purchaser has agreed to pay certain consideration for the Purchased Assets in the form and amount set forth in Article III of the Back-Up Asset Purchase Agreement.

G. Except as otherwise set forth herein, the Debtor is the sole and lawful owner of the Purchased Assets. Subject to any exceptions set forth herein, the Debtor may sell the Purchased Assets to the Purchaser free and clear of all liens, claims, encumbrances and interests ("Liens") in accordance with, and to the extent permitted by, section 363(f) of the Bankruptcy Code. As a condition of purchasing the Purchased Assets, the Purchaser requires that the Purchased Assets be sold free and clear of all Liens, except those explicitly and expressly assumed by the Purchaser in the Purchase Agreement. Accordingly, the transfer of the Purchased Assets to the Purchaser is or will be a legal, valid and effective transfer of the

3

Purchased Assets, and will vest the Purchaser with all right, title and interest in and to the Purchased Assets, free and clear of all Liens, except those explicitly and expressly assumed by Purchaser in the Purchase Agreement. Except as otherwise expressly set forth in the Purchase Agreement, the transfer of the Purchased Assets to Purchaser does not and will not subject Purchaser to any liability whatsoever, successor or otherwise, with respect to the operation of the Debtor's business and/or ownership of the Purchased Assets prior to the Closing.

H. Except as set forth herein, non-debtor parties holding valid Liens in or with respect to the Purchased Assets, including parties to Assumed Executory Contracts, who did not object to the Motion or those whose objection were withdrawn are deemed to have consented to the sale of the Purchased Assets free and clear of their Liens in or with respect to the Purchased Assets pursuant to sections 362(f)(2) and 365 of the Bankruptcy Code.

I. The Purchaser is acting in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code §§ 363(m) and (n) with respect to all of the Purchased Assets and in connection with all of the transactions contemplated by the Purchase Agreement. The Purchase Agreement was negotiated and entered into in good faith, based upon arm's-length bargaining, and without collusion or fraud. Neither the Debtor nor the Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Purchase Agreement or to the consummation of the transactions contemplated thereby. The Agent is entitled to all the protections and immunities of Bankruptcy Code § 363(m).

J. The Debtor has demonstrated that the sale of the Purchased Assets in accordance with the Purchase Agreement and this Order reflects the exercise of the Debtor's sound business judgment.

K. In the event the sale transaction with RCI fails to close, the offer of the Purchaser upon the terms and conditions set forth in the Purchase Agreement, including the form and total consideration to be realized by the Debtor pursuant to the Purchase Agreement, (i) is the highest and best offer received by the Debtor; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor's creditors and estate.

L. The closing of the Ritz Closing Stores is in the best interest of the Debtor's estate and creditors. The Purchase Agreement is not being entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

M. Conduct of the Sales at the Ritz Closing Stores will provide an efficient means for the Debtor to dispose of the merchandise and other assets located at the Ritz Closing Stores in accordance with the terms of the Purchase Agreement.

N. The consumer privacy ombudsman appointed by the United States Trustee has represented that there are no potential losses to consumer's privacy which preclude the sale of the Debtor's consumer privacy information.

IT IS HEREBY ORDERED AS FOLLOWS:

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O). Venue of this proceeding and this Motion is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a), 363(b), (f), (k), (l), (m) and (n), and 365(a), (b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007, and Local Bankruptcy Rule 6004-1.

2. The Motion is granted to the extent provided herein. All objections to the Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

### Transfer of Assets Free and Clear of Liens

3. The Debtor is hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Store Closing Sales at the Ritz Closing Stores identified on **Exhibit B**, attached hereto in accordance with the Purchase Agreement. Subject to the terms and conditions of this Order, no bulk sale, "going-out-of-business", or similar law shall prohibit the Debtor or the Agent from taking any action contemplated by the Purchase Agreement.

4. The Debtor is hereby authorized and empowered to enter into the Purchase Agreement, and, subject to the terms and conditions of this Order, the Purchase Agreement is hereby approved in its entirety and is incorporated herein by reference, and it is further ordered that all amounts payable to the Agent under the Purchase Agreement shall be payable to the Agent without the need for any application of the Agent therefor or a further order of the Court.

5. Except as otherwise provided in the Purchase Agreement, pursuant to section 363(f) of the Bankruptcy Code, the assets being sold pursuant to the Purchase Agreement shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code), including, without limitation, the liens and security interests of the Lender whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced (collectively, the "Liens"), with such Liens, if any, to attach to the Purchase Price with the same validity, force and effect as the

same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.

6. Except as expressly provided for in the Purchase Agreement, nothing in this Order or the Purchase Agreement and none of the Agent's actions taken in respect of the Store Closing Sales shall be deemed to constitute an assumption by Agent of any of the Debtor's obligations relating to any of the Debtor's employees, nor shall Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

7. All of the transactions contemplated by the Purchase Agreement shall be protected by section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.

8. The Agent shall not be liable for any claims against the Debtor other than as expressly provided for in the Purchase Agreement.

## Store Closing Procedures

9. The Store Closing Sales shall not be exempt from, and the Agent shall be required to comply with, all laws of general applicability, including without limitation, public health and safety laws, and applicable criminal, traffic, tax, labor, employment, environmental, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Subject to the foregoing, the Debtor and the Agent be, and they hereby are, authorized to take such actions necessary and appropriate to implement the Purchase Agreement and to conduct the Store Closing Sales without the necessity of a further order of this Court as provided by the Purchase Agreement, including, but not limited to, advertising the Store Closing Sales through the posting of signs (including the use of exterior banners at (i) non-enclosed mall Ritz Closing Stores, and (ii) enclosed mall Ritz Closing Stores

7

46460/0002-5796369v7

to the extent the applicable Ritz Closing Store entrance does not require entry into the enclosed mall common area), use of sign walkers and street signage, in accordance with the Purchase Agreement and as otherwise provided in the sale guidelines attached to the Purchase Agreement (the "Sale Guidelines"), which Sale Guidelines are hereby approved in the form attached hereto as **Exhibit C**.

10. The provisions of this Order shall be self-executing notwithstanding any restrictions in the Purchase Agreement on the Agent's ability to conduct the Store Closing Sales in compliance with applicable laws or Ritz Closing Store leases. Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Store Closing Sales may be advertised, and all landlords are directed to accept this Order as binding authority so as to authorize the Debtor and the Agent to consummate the Purchase Agreement and to conduct the Store Closing Sales at the Ritz Closing Stores, including, without limitation, conducting and advertising of the Store Closing Sales in accordance with the Purchase Agreement, the Sale Guidelines and this Order; and no further approval, license or permits of any governmental authority shall be required for those entities to abide by this Order.

11. Except as to Governmental Units (as defined in section 101(27) of the Bankruptcy Code) (as to which this paragraph shall not apply), and except as expressly provided for herein or in the Sale Guidelines: no person or entity, (i) served with a copy of the Motion; or (ii) served with a copy of this Order who does not object pursuant to the provisions of this Order, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs and use of sign walkers) of such Store Closing Sales, and all such parties and persons of every nature and description, including landlords and utility companies and all those

acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, or otherwise impeding the conduct of the Store Closing Sales and/or (b) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtor, the Agent, or the Debtor's landlords for the Ritz Closing Stores, that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in any lease or sublease based upon any relief authorized herein.

12. Further, provided the Store Closing Sales at the Ritz Closing Stores are conducted in accordance with the terms of this Order, the Sale Guidelines, and the Purchase Agreement, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtor and the Agent shall be presumed to be in compliance with any GOB Laws (as defined below) and, subject to paragraphs 16, and 18-20 hereof, are authorized to conduct the Store Closing Sales in accordance with the terms of this Order, the Purchase Agreement, and the Sale Guidelines, without further showing of compliance with any such GOB Laws. For purposes of this Order, GOB Laws shall mean any federal, state or local statute or ordinance, lease provision or licensing requirement directed solely at regulating store closing, "going out of business," liquidation, bankruptcy or auction sales ("GOB Sales"), such as laws restricting safe, professional and non-deceptive, customary advertising of GOB Sales such as signs, banners, posting of signage, and use of sign walkers, and including ordinances establishing licensing or permitting requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply (collectively, "GOB Laws").

13. Subject to the provisions of paragraph 12, Agent's use, in conformity with the Sale Guidelines and the Order, of (i) sign walkers; (ii) interior store signage and banners; and

9

(iii) exterior banners and signage ("Banner and Sign Walker Advertising"), is authorized (subject to the terms and conditions of any side letter agreement between the Agent and a landlord entered into in connection with the Store Closing Sales), notwithstanding any restrictive provision of any lease, sublease or other agreement affecting or purporting to restrict such activity so long as such activity is undertaken in a safe, professional and non-deceptive manner. Any person who, after having received a copy of this Order, and after having been specifically advised in writing of the provisions of this paragraph, continues to interfere with Banner and Sign Walker Advertising undertaken in compliance with this Order, shall be liable to Agent and/or Debtor and affected landlord(s) for any and all damages resulting from such continued interference.

14. Except as provided in the Purchase Agreement, the Store Closing Sales shall be conducted by the Agent and the Debtors notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of Store Closing Sales, the rejection of leases, abandonment of assets or "going dark" provisions, provided, however, that nothing in this Order shall impact any objection that any of the Debtor's landlords may have to assumption, assignment or rejection of their respective lease or to any proposed cure amount or rejection damages claim in association with such assumption, assignment or rejection. Nothing in this Order or in the Purchase Agreement shall constitute a waiver of the Debtor's obligations under Section 365(b) in the event that any Lease is designated pursuant to Section 2.5 of the Purchase Agreement for assumption and assignment to Purchaser.

15. Except as may otherwise be specifically set forth in the Sale Guidelines, or any side letter agreement between the Agent and the subject landlord, the Debtor and/or the Agent (as the case may be), are authorized and empowered to transfer assets among the Ritz Closing

10

Stores. Notwithstanding anything in this Order, the Purchase Agreement or the Sale Guidelines to the contrary, the Purchaser shall not be permitted to augment the sale of the Purchased Assets with non-Debtor inventory.

16. Nothing in this Order shall be deemed to bar any Governmental Units from enforcing General Laws in the applicable nonbankruptcy forum, subject to the Debtor's or Agent's right to assert that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order or otherwise, subject to paragraph 18 hereof. To the extent reasonably practicable, each applicable Governmental Unit shall provide the Debtor and Agent and any affected landlord with reasonable notice and opportunity to cure any alleged violation of any applicable law or regulation prior to instituting formal administrative or judicial proceedings. No party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of any such law is preempted by the Bankruptcy Code. In the event that the Debtor and the Agent are unable to have such Governmental Unit withdraw any citations that may be issued by a Governmental Unit against a landlord, then such landlord shall have the right to file a claim for its reasonable costs and expenses, including attorneys fees, incurred in connection with such citation.

17. The Debtor shall serve copies of this Order within two (2) business days, by first-class mail, upon (i) the state Attorney General's offices (upon (x) Chief or Director of the Consumer Protection Division or Bureau; and (y) Chief or Director of the Bankruptcy Division or Bureau) and state Consumer Protection Agency for each state where a Ritz Closing Store is located, and (ii) the local mayor or similar representative of each village, or city official, and the

county or parish where a Store is located, addressed to the attention of the municipal, city or county attorney, in each case to the consumer protection division.

18. If there is a dispute as to whether the general conduct of the Store Closing Sales in accordance with this Order, the Purchase Agreement and the Sale Guidelines would violate a GOB Law and should be limited or barred (a "Reserved Dispute") resolution of such Reserved Dispute will take place before this Court, as provided in this paragraph. Any time before the twentieth (20th) day following the service of this Order as provided for above, any Governmental Unit may assert a Reserved Dispute by sending a notice explaining the nature of the dispute to counsel to the Debtor, the Agent and the Creditors Committee. If the Debtor and the objecting Governmental Unit (as the case may be, the "Objecting Party") are unable to resolve the Reserved Dispute within fifteen (15) days of receipt of the Objecting Parties notice, either party may file a motion with the Court requesting a resolution of the dispute ("Dispute Resolution Motion"). Any issues relating to a Reserved Dispute shall not affect the finality of this Order or limit or interfere with the conduct of the Store Closing Sales prior to any ruling by this Court on such Reserved Dispute.

19. If such a Dispute Resolution Motion is timely filed, the Debtor and Agent shall each be entitled to assert that the provisions in question are preempted by the Bankruptcy Code and/or that neither the terms of this Order nor the conduct of the Store Closing Sales violates the GOB Law. By timely filing a Dispute Resolution Motion, all Governmental Units shall be entitled to assert any jurisdictional, procedural or substantive argument that it might heretofore have been entitled to raise. Any such Dispute Resolution Motion will also be served upon any affected landlord.

46460/0002-5796369v7

20. Except as otherwise provided herein, nothing herein shall be deemed to constitute a ruling on any issue that might be raised in a Dispute Resolution Motion, including whether any non-bankruptcy state law, regulation or rule applicable to the Store Closing Sales is preempted by the Bankruptcy Code nor as to whether the automatic stay applies nor is this Order a ruling with respect to whether sovereign immunity applies. If at any time a dispute arises between the Debtor and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and subject to any provisions contained in this Order related to GOB Laws, then any party to that dispute may utilize the provisions of paragraph 18 by sending a notice to the other party and proceeding thereunder in accordance therewith. Any determination with respect to whether a particular law is a GOB Law shall be made "de novo" in accordance with the definition in this Order. Notwithstanding anything to the contrary herein, to the extent that disputes arise during the course of the Store Closing Sales with respect to laws regulating the use of sign walkers and banner advertising and the Debtor and/or Agent are unable to resolve the matter consensually with the Governmental Unit, either party may request an immediate telephonic hearing with this Court and, subject to the Court's calendar and to the extent practicable, such hearing shall be scheduled initially within two (2) business days of the request (which shall not preclude the scheduling of additional hearings for the presentment of evidence or argument, as may be necessary).

21. This Court shall retain jurisdiction with regard to all issues or disputes in connection with this Order and the relief provided for herein, and the Sale Guidelines, including, without limitation, to protect the Debtor, the landlords and/or the Agent from interference with the Store Closing Sales, and to resolve any disputes related to the Store Closing Sales or arising under the Purchase Agreement or the implementation thereof.

13

22. All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales". The Agent shall accept return of any goods that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the time period proscribed by the Debtor's return policy that was in effect when the merchandise was purchased (except with respect to items purchased during the Store Closing Sales, in which case such items must be returned within fourteen (14) days following the purchase date), the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Debtor's employees and Agent's personnel shall be made aware of this policy and consumers shall be so informed of the policy. The Debtor shall reimburse the Agent for any documented refund attributable to a "latent" defect as part of the weekly sale reconciliation process.

## Additional Provisions

23. The Debtor, the Agent and each of their respective officers, employees and Agents be, and they hereby are, authorized to execute such documents and to do such acts as are necessary or desirable to carry out the Store Closing Sales and effectuate the Purchase Agreement and the related actions set forth therein.

24. The Agent shall have the right to use the Ritz Closing Stores and all related Ritz Closing Store services, furniture, fixtures, equipment and other assets of Debtor as designated hereunder for the purpose of conducting the Store Closing Sales, in accordance with the provisions of the Purchase Agreement.

25. The provisions of this Order and the Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of the Debtor, or which may be entered converting

14

Debtor's cases from chapter 11 to chapter 7, and the terms and provisions of the Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Debtor, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in these cases shall be and hereby is authorized to operate the business of the Debtor to the fullest extent necessary to permit compliance with the terms of this Order and the Purchase Agreement and the Agent and the trustee shall be and hereby are authorized to perform under the Purchase Agreement upon the appointment of a trustee without the need for further order of this Court. In the event the chapter 7 trustee determines that it needs a further order of this Court in connection with the continued operation of the business, such motion shall be heard on an expedited basis.

26. The Furniture and Equipment remaining in the Ritz Closing Stores as of the effective date of rejection of the lease for such Closing Ritz Closing Stores shall, unless the affected lessor has been previously notified in writing by the Debtor or the Agent to the contrary at least three (3) days prior to the effective date of the rejection of the lease, be deemed abandoned by the Debtor and/or the Agent; provided however, the Debtor shall provide any known third party holding or asserting a Lien or other interest in such Furniture and Equipment, including taxing authorities, with five (5) days' prior notice of such abandonment and if such third party fails to remove such Furniture and Equipment or to make arrangements to remove such Furniture and Equipment within such time as is deemed acceptable to the affected landlord prior to the expiration of such five (5) day notice period, such Furniture and Equipment shall be deemed abandoned by such third party and the affected Landlord may dispose of such property

15

without liability to them or any third party, and the Landlord shall have the right to file a claim for any costs incurred in connection with the removal of such abandoned Furniture and Equipment; provided however, the Debtor reserves the right to object to such claim. Notwithstanding the foregoing, the Debtor shall not abandon any hazardous (as such term is defined in any federal, state or local law, rule, regulation, or ordinance) material, at the leased locations.

27. Before any sale, abandonment or other computers (including software) and/or cash registers and any other point of sale Furniture and Equipment owned by the Debtor (collectively, "POS Equipment"), which may contain personally identifiable information, the Debtor shall remove or cause to be removed the personally identifiable information from the POS Equipment.

28. This Order constitutes an authorization of conduct by the Debtor and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state, and the failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

29. To the extent, if any, anything contained in this Order conflicts with a provision in the Purchase Agreement or the Sale Guidelines, this Order shall govern and control; provided however, that the Agent and/or the Debtor, as may be appropriate, is authorized to enter into side letter agreements with objecting landlords and the terms and conditions of such side letter agreements, to the extent inconsistent with the terms of this Order or the Sale Guidelines, shall control. Nothing in such side letter agreements, however, shall be deemed to override the provisions herein affecting Governmental Units.

46460/0002-5796369v7

30. Effective upon the Effective Date, for purposes of securing the rights of Purchaser and Agent with respect to the Disposition Rights at the Store Closing Locations, the Purchaser and Agent, pursuant to Section 364(d) of the Bankruptcy Code, shall have a first priority security interest in and lien upon the Inventory and Furniture and Equipment owned by Seller located at the Store Closing Locations, and the Proceeds thereof to secure all obligations of Seller to Purchaser and Agent under the Purchase Agreement. The security interest granted to Purchaser and Agent under the Purchase Agreement shall be deemed properly perfected without the need for further filings or documentation. The Debtor shall execute all such documents and take all such other actions as are reasonably required to perfect and maintain such security interest as a valid and perfected security interest.

31. To the extent that the disposition of the assets under the Purchase Agreement would constitute the sale of an interest in a consumer credit transaction that is subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004)), as amended from time to time, then the purchaser shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

32. Gift certificates and gift cards issued by the Debtor postpetition shall be accepted and honored by the Agent during the Sale Term; provided, however, that notwithstanding anything contained in this Order or the Purchase Agreement, in the event the Agent accepts gift certificates or gift cards issued by the Debtor postpetition in an aggregate amount of more than $900,000, the Agent shall receive a dollar for dollar credit off of the Purchase Price in the

17
46460/0002-5796369v7

amount equal to any gift certificates and gift cards accepted and honored by the Agent in excess of $900,000 (the "Gift Card Credit Amount"), and Agent shall have an allowed superpriority administrative expense claim senior to all other claims in the Debtor's case in an amount equal to the Gift Card Credit Amount. At a customer's request, the Debtor shall return any deposit made by such customer prior to the Petition Date. The Agent shall have no obligation to return any such deposit, provided, however that if questioned by a customer about such deposits the Agent shall direct such customer to the appropriate office of the Debtor at which the return of such deposit may be obtained.

33. Nothing in this Order shall (a) alter or affect the Debtor's obligation to timely comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtor to file an appropriate motion or otherwise seek appropriate relief if the Debtor fails to comply with section 365(d)(3) of the Bankruptcy Code.

34. To the extent parties possess liens on personal property sold as part of the Sales, including personal property or other tax liens, such liens will attach to the proceeds of Sales in the same order and priority as such liens would attach under applicable nonbakruptcy law, and nothing in this Order shall affect the rights of such lienholders.

35. The transfer of the Store Closing Assets to Purchaser pursuant to the Purchase Agreement is an exchange for consideration by Purchaser that constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

36. The transactions contemplated by the Purchase Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

37. In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Agent are free to perform under the Purchase Agreement at any time, subject to the terms of the Purchase Agreement and the Agent shall be afforded the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Purchase Agreement if this Order or any authorization contained herein is reversed or modified on appeal. Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal shall not affect the validity of the transfer of the Purchased Assets to the Purchaser unless the transfer is stayed pending appeal prior to Closing.

38. The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Purchase Agreement and the conduct of the Store Closing Sales.

39. In accordance with the Bid Procedures utilized at the auction, and based on the evidence presented at the hearing, Ilex Retail Holdings, LLC (collectively, the "<u>Stalking Horse</u>") is entitled to the break-up fee of $500,000, plus the amount of the Stalking Horse's documented expenses not to exceed $175,000, and the Debtor is authorized and directed to pay such amount immediately upon the receipt of the Purchase Price.

40. Nothing herein shall prevent any holder of a reclamation claim from seeking treatment superior to that of general unsecured creditors in a plan of reorganization or liquidation of the Debtor (including in any chapter 7 proceeding), and all such rights are reserved and survive the Agency Agreement and any sale.

41. ~~The Agent shall abide by, and adhere to, the conditions set forth in~~ the ~~Supplemental Report to the Court filed on July 23, 2009 by Dana Rosenfeld, Esquire,~~ the duly appointed Consumer Privacy Ombudsman ~~in the case, relating to the transfer of~~ personally

~~identifiable information from the Debtor to Agent~~. The Debtor and/or the Agent shall give notice to all consumers whose personally identifiable information is currently maintained by the Debtor and was obtained after September 6, 2006 that the transfer of their information is imminent, and they have thirty (30) days to opt-out of the transfer. The Debtor and/or the Agent shall also give notice to all consumers whose personally identifiable information is currently maintained by the Debtor and was obtained prior September 6, 2006 that they may opt-in to the transfer of such information. The Debtor and/or the Agent shall also give notice to all consumers whose personally identifiable information was obtained by the Debtor through its Frequent Foto program or the warranty program that they may opt-in to the transfer of such information. The personally identifiable information may be transferred to the Agent at closing, but the information shall not be used by the Agent until the respective notices have been sent to the consumers and the opt-out period has run, or the consumers have opted-in. *Any personally identifiable consumer information maintained by the Debtor who do not opt-in to the transfer of such information as required in this paragraph shall be destroyed after a reasonable period of time.*

42. This Order shall be effective immediately upon entry pursuant to Rule-9014 of the Federal Rules of Bankruptcy Procedure, and no automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Rule 6004(g) or 6006(d) of the Federal Rules of Bankruptcy Procedures applies with respect to this Order.

43. This Order shall be binding on the Debtor, the estate, all creditors and shareholders of the Debtor, all parties in interest, and their respective successors and assigns.

Dated: July 23, 2009
Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE