# Exhibit A-1 to Sale Order

*Agency Agreement*

## AGENCY AGREEMENT

This Agency Agreement (this "Agreement") is made as of July 23, 2009, by and between Ritz Camera Centers, Inc., a Delaware corporation and a debtor-in-possession ("Merchant") and Ritz Acquisition Group, LLC, a Delaware limited liability company ("Agent").

## R E C I T A L S

WHEREAS, on February 22, 2009 (the "Petition Date"), Merchant filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 09-10617 (MFW) (the "Bankruptcy Case");

WHEREAS, Merchant operates retail stores in the United States, and during its Bankruptcy Case has engaged in the process of selling all or substantially all of its assets;

WHEREAS, Seller held an auction (the "Auction") for the sale of substantially all of its assets on July 20th and 21st, 2009;

WHEREAS, at the conclusion of the Auction, Seller chose RCI Acquisition, LLC ("RCI") as the bidder submitting the highest or otherwise best bid (the "RCI Transaction");

WHEREAS, Purchaser was chosen as the "back-up bidder" in the event RCI fails to close on the proposed transaction by July 24, 2009;

WHEREAS, contemporaneously herewith, Agent and Merchant and have entered into that certain Asset Purchase Agreement, dated as of July 23, 2009 (the "APA"), pursuant to which Agent may acquire certain assets of, and certain rights from, Merchant as specified therein, including the right of Agent to conduct the GOB Sales (as defined in the APA) pursuant to the terms of this Agreement in the event that RCI fails to close on the proposed transaction by July 24, 2009 by 6:00 p.m. Eastern Time;

WHEREAS, in accordance with the APA, Merchant agrees to retain Agent act as Merchant's exclusive agent for the limited purposes of: (a) conducting the GOB Sales and selling all of the Merchandise (as hereinafter defined) located in Merchant's Store Closing Locations (as defined in the APA) (each individually a "Store" or "Closing Store," and collectively the "Stores" or "Closing Stores"), by means of a "store closing", "sale on everything" or similar sale (as further described below, the "Sale"); and (b) disposing of the Owned FF&E in the Closing Stores;

WHEREAS, Agent intends to assign certain rights under this Agreement and APA to Hilco Merchant Resources, LLC, Gordon Brothers Retail Partners, LLC, Hilco Real Estate Holdings, LLC and DJM Realty Services, LLC;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Agent and Merchant hereby agree as follows:

Section 1.    Defined Terms.  The terms set forth below are defined in the

referenced sections of this Agreement:

| Defined Term | Section Reference |
|---|---|
| Agency Accounts | Section 7.2(a) |
| Agency Documents | Section 11.1(b) |
| Agent | Preamble |
| Agent Indemnified Parties | Section 13.1 |
| APA | Recitals |
| Applicable General Laws | Section 2(c) |
| Bankruptcy Case | Recitals |
| Bankruptcy Code | Recitals, Section 2(c) |
| Bankruptcy Court | Recitals |
| Central Service Expenses | Section 4.1(i) |
| Consignment Goods | Sections 5.4 |
| Court | Section 2(b) |
| Defective Merchandise | Section 5.2(b) |
| Delayed Store Closing Location | Section 6.1 |
| Designated Deposit Accounts | Sections 7.2(b) |
| Display Merchandise | Section 5.2(b) |
| Events of Default | Section 14 |
| Excluded Benefits | Section 4.1 |
| Expenses | Section 4.1 |
| GOB Sales | Recitals |
| Inventory Taking | Section 4.1(a) |
| Lenders | Section 2(b) |
| Liquidation Sale Laws | Section 2(c) |
| Merchandise | Section 5.2(a) |
| Merchant | Preamble |
| Owned FF&E | Section 15.9 |
| Petition Date | Recitals, Section 2(b) |
| Proceeds | Section 7.1 |
| Purchase Price | Section 2(b) |
| Remaining Merchandise | Section 3(b) |
| Retained Employee | Section 9.1 |
| Retention Bonuses | Section 9.4 |
| Sale | Recitals |
| Sale Commencement Date | Section 6.1 |
| Sale Guidelines | Section 8.1 |
| Sale Order | Section 2(b) |
| Sale Term | Section 6.1 |
| Sale Termination Date | Section 6.1 |
| Sales Taxes | Section 8.3 |
| Sales Taxes Account | Section 8.3 |
| Sample Inventory Taking | Section 4.1(a) |

| | |
|---|---|
| Store(s) | Recitals |
| Supplies | Section 8.4 |
| Vacate Notice | Section 6.1 |
| WARN Act | Section 4.1(ii) |
| Weekly Sale Reconciliation | Section 8.6 |

Section 2.     Appointment of Agent/Liquidation Sale Laws/Sale Order/Closing Stores.

(a)     Solely in the event that: (i) the Court enters the Sale Order (as defined below) approving the APA and this Agreement; and (ii) RCI fails to close on the RCI Transaction by July 24, 2009 at 6:00 p.m. Eastern Time, Merchant shall appoint Agent, and Agent hereby agrees to serve, as Merchant's exclusive agent for the limited purpose of conducting the Sale at the Closing Stores and disposing of the Owned FF&E in the Closing Stores in accordance with the terms and conditions of this Agreement.

(b)     Merchant filed a motion with the Bankruptcy Court, for entry of an order approving this Agreement and authorizing Merchant and Agent to conduct the Sale in accordance with the terms hereof (the "Sale Order"). The Sale Order shall be in form and substance reasonably acceptable to the Merchant and Agent and their respective counsel.

(c)     Subject to entry of the Sale Order, Agent shall be authorized to advertise the Sale as a "store closing," "sale on everything," "everything must go," or similar-themed sale, and the Sale Order shall provide that Agent shall be required to comply with certain customer and health and safety federal, state and local laws, regulations and ordinances, including, without limitation, all laws and regulations relating to advertising, permitting, privacy, consumer protection, occupational health and safety and the environment, together with all applicable statutes, rules, regulations and orders of, and applicable restrictions imposed by, governmental authorities (collectively, the "Applicable General Laws"), but excluding all applicable laws, rules and regulations in respect of "going out of business," "store closing" or similar-themed sales (collectively, the "Liquidation Sale Laws"), provided that the Sale is conducted in accordance with the terms of this Agreement, the Sale Guidelines and the Sale Order; and provided further that the Sale Order shall provide that so long as the Sale is conducted in accordance with the Sale Guidelines and in a safe and professional manner, Agent shall be deemed to be in compliance with any Applicable General Laws.

(d)     The Closing Stores shall be those retail stores set forth on a schedule to the APA as designated by Agent pursuant to Section 2.7 of the APA.

Section 3.     Consideration. Subject to entry of the Sale Order:

(a)     Agent shall receive, as its compensation for services rendered to Merchant, all Proceeds of the Sale after payment of the Expenses.

(b)     All Merchandise remaining at the Sale Termination Date (the "Remaining Merchandise") shall become the property of Agent, free and clear of all liens, claims and

encumbrances of any kind or nature, subject to Merchant's right to payment of any amount owing hereunder, and the proceeds received by Agent from the disposition of such unsold Merchandise shall constitute Proceeds hereunder.

Section 4.    Expenses of the Sale.

4.1    Expenses. Agent shall be unconditionally responsible for all Expenses incurred in conducting the Sale during the Sale Term, which expenses shall be paid by Agent in accordance with Section 4.2 below. As used herein, "Expenses" shall mean, except as provided below in Section 4.1(v), all Closing Store level expenses of the Sale that accrue from and relate to events occurring during the Sale Term, limited to the following:

(a)    (i) payroll (including overtime pay and holiday pay for paid holidays that fall during the Sale Term, if applicable) and commissions (including SPIFS), if applicable, for all Retained Employees used in conducting the Sale as well as payroll for any of Merchant's former employees or temporary labor retained by Agent for the Sale as independent contractors; and (ii) the actual and payroll and related costs for the Retained Employees or former or temporary employees who work at a Closing Store during the Inventory Taking (as defined in the APA) or Sample Inventory Taking (as defined in the APA), as applicable, at any Store;

(b)    any amounts payable by Merchant for benefits for Retained Employees (including FICA, unemployment taxes, workers' compensation and health care insurance benefits, but excluding Excluded Benefits) used in the Sale and the Inventory Taking or Sample Inventory Taking, as applicable, and for any of Merchant's former employees or temporary labor retained by Agent for the Sale as independent contractors,

(c)    costs of all security in the Closing Stores, including, without limitation, armored car service, security personnel and monthly alarm services;

(d)    50% of the fees and costs of the service conducting the Inventory Taking or Sample Inventory Taking, as applicable, to conduct the Inventory Taking or Sample Inventory Taking, as applicable, at the Closing Stores;

(e)    Retention Bonuses for Retained Employees, as provided for in Section 9.4 below;

(f)    Merchant's cost of maintaining all casualty and liability insurance at all the Store Closing Locations;

(g)    advertising and direct mailings relating to the Sale (including mail and email costs to persons on Merchant's customer list), and Store interior and exterior signage and banners, sign-walkers and other promotional/marketing expenses relating to the Sale, all to be performed at Agent's discretion;

(h)    local and long-distance telephone expenses incurred at the Closing Stores;

(i)    credit card fees, chargebacks and discounts with respect to Merchandise sold in the Sale;

(j)      bank service charges (for Store and corporate accounts), including with respect to the Designated Deposit Accounts, check guarantee fees, and bad check expenses to the extent attributable to the Sale;

(k)      costs for additional Supplies used at the Closing Stores as may be requested by Agent in the conduct of the Sale;

(l)      all fees and charges required to comply with Applicable General Laws in connection with the Sale;

(m)      Store cash theft and other store cash shortfalls in the registers;

(n)      costs of moving, transferring, or consolidating Merchandise between the Closing Stores or the Distribution Center, including delivery and freight charges and costs, it being understood that Agent shall be responsible for coordinating such transfer of Merchandise;

(o)      housekeeping and cleaning expenses related to the Closing Stores;

(p)      on-site supervision of the Closing Stores, including base fees and bonuses of Agent's field personnel, actual costs of temporary employees retained by Agent through third-party agencies during the Sale Term, travel to and from the Closing Stores and incidental out-of-pocket and commercially reasonable travel expenses relating thereto (including reasonable and documented corporate travel to monitor and manage the Sale);

(q)      postage, courier and overnight mail charges to and from or among the Closing Stores and central office to the extent relating to the Sale;

(r)      Agent's actual cost of capital (including Letter of Credit fees);

(s)      Agent's reasonable out-of-pocket costs and expenses, including but not limited to, legal fees and expenses, incurred in connection with the review of data, preparation, negotiation and execution of this Agreement, the Sale Order and any ancillary documents;

(t)      routine repair and maintenance costs to the extent deemed necessary by Agent or otherwise required under the applicable lease or occupancy agreement.

(u)      Agent's actual cost for insurance under Section 12.3; and

(v)      All Carrying Costs (as defined in the APA) through the applicable final Sale Termination Date (as defined below); provided, however, that (i) Carrying Costs at the Distribution Center and at the Office for payroll for all Retained Employees, rent, utilities, telecommunications and other associated occupancy costs shall be reimbursed in arrears to Merchant at a rate of Fifty Thousand Dollars ($50,000.00) per week for six (6) weeks, and (ii) the aggregate monthly Carrying Costs per Store shall not be materially greater than those set forth on Schedule 4.1(v) attached hereto, based on the per diem costs set forth thereon.

There will be no double payment of Expenses to the extent that Expenses appear or are contained in more than one Expense category. "Expenses" shall not include: (i) Excluded

Benefits (as defined below); and (ii) any other costs, expenses or liabilities payable by Merchant not provided for herein; all of which shall be paid by Merchant promptly when due.

As used herein, "Excluded Benefits" means (i) the following benefits arising or accruing prior to the Sale Commencement Date: (w) vacation days or vacation pay, (x) sick days or sick leave or any other form of paid time off, (y) maternity leave or other leaves of absence, termination or severance pay and (z) ERISA coverage and similar contributions and/or (ii) any payments due under the Worker Adjustment Retraining Notification Act ("WARN Act").

    4.2    Payment of Expenses. Effective from and after entry of the Sale Order:

    (a)    Agent shall be responsible for the payment of all Expenses, whether or not there are sufficient Proceeds collected to pay such Expenses. Except for the Expenses set forth in Section 4.1(v) above, which shall be paid in accordance with Section 2.5(d) of the APA, all Expenses incurred during each week of the Sale (i.e. Sunday through Saturday) shall be paid by Agent to or on behalf of Merchant, or paid by Merchant and thereafter reimbursed by Agent as provided for herein, immediately following the weekly Sale reconciliation by Merchant and Agent pursuant to Section 8.7 below; provided, however, in the event that the actual amount of an expense is unavailable on the date of the reconciliation (such as payroll), Merchant and Agent shall agree to an estimate of such amounts, which amounts will be reconciled once the actual amount of such Expense becomes available. Agent and/or Merchant may review or audit the Expenses at any time.

    (b)    Merchant shall not be required to fund or otherwise pay any Expenses unless Agent has pre-funded such expense (subject to reconciliation) and (ii) without limitation on Expenses that may be funded in advance by Agent, Agent shall fund, in advance, all payroll and related expenses for Retained Employees at least two (2) business days prior to the date that such payments are due by Merchant.

    (c)    In order to secure the Agent's obligations under this Agreement to pay Expenses and Agent's obligations under the APA to pay Carrying Costs, on or before the second business day before the Sale Commencement Date, Agent shall furnish Merchant an irrevocable standby Letter(s) of Credit naming Merchant as beneficiary (the "Beneficiary") in the aggregate original face amount of $4,000,000, which represents an amount equal to four (4) weeks' estimated Expenses that Merchant pays in the ordinary course, which letter of credit shall be in form and substance and from a bank reasonably acceptable to Merchant (the "Expense L/C"). The Expense L/C shall have an expiration date of no earlier than sixty days after the Sale Termination Date. Unless the parties shall have mutually agreed that they have completed the final reconciliation and verification of the Expenses, then, at least thirty (30) days prior to the initial or any subsequent expiration date, Agent shall secure and the Beneficiary shall receive an amendment to the Expense L/C solely extending (or further extending, as the case may be) the expiration date by at least sixty (60) days. If the Beneficiary fails to receive such amendment to the Expense L/C no later than thirty (30) days before the expiration date, then all amounts hereunder shall become immediately due and payable and the Beneficiary shall be permitted to draw under the Expense L/C in payment of amounts owed and the Beneficiary shall hold the balance of the amount drawn under the Expense L/C as security for amounts that may become due and payable to Merchant. In the event that Agent, after receipt of five (5) days' notice

(which notice shall not be required if Agent or any member of Agent shall be a debtor under title 11, United States Code), fails to pay any Expenses of the Sale when due, the Beneficiary may draw on the Expense L/C in an amount equal to the unpaid, past due amount of Expenses that is not the subject of a reasonable dispute. Subject to Agent's delivery of notice(s) of Vacate Date(s) at the Closing Stores, at Agent's request, to be exercised no more frequently than monthly, the Beneficiary shall take all actions reasonably required to reduce the amount available to be drawn under the Expense L/C to an amount equal to four (4) weeks estimated Expenses for the remaining Closing Stores at which the Sale has not terminated.

Section 5.    Merchandise. For purposes of this Agreement, "Merchandise" shall have the meaning set forth in the APA.

Section 6.    Sale Term.

6.1    Term. Subject to satisfaction of the conditions precedent set forth in Section 10 hereof, the Sale shall commence at each Closing Store no later than the day after the designation by Agent of a Store as a Closing Store in accordance with Section 2.7 of the APA and this Agreement, but in no event later than July 25, 2009 (the "Sale Commencement Date"); provided, however, Agent may designate a Store as a Closing Store through the Designation Deadline (each such Store, a "Delayed Store Closing Location"). Subject to the prior expiration of the term of any Store Lease, Agent shall complete the Sale at each Closing Store and vacate such Closing Store, leaving it in broom-clean condition by no later than September 30, 2009 or, with respect to a Delayed Store Closing Location if later, thirty (30) days after the applicable date of commencement of promotional sales at such location, unless the Sale is extended by mutual written agreement of Merchant and Agent, provided that, the Agent may, in its discretion, terminate the Sale at any Closing Store upon not less than fifteen (15) days' prior written notice to Merchant, provided further that, Agent shall be permitted to terminate the Sale at any Store prior to August 1, 2009 by providing the Merchant with written notice, on the Closing Date (as defined in the APA), with respect to those Stores Agent intends to vacate on or before August 1, 2009 (each such notice, a "Vacate Notice" and the date the Sale is terminated being the "Vacate Date" or the "Sale Termination Date", and the period from the Sale Commencement Date to the Sale Termination Date as to each Store, the "Sale Term").

6.2    Vacating the Closing Stores. On the Vacate Date, Agent shall leave the Closing Store in "broom clean" condition (ordinary wear and tear excepted). Agent shall vacate the Closing Stores on or before the Sale Termination Date or the Vacate Date, as applicable, as provided for herein, at which time Agent shall surrender and deliver the Closing Store keys to, or as directed by, Merchant. Agent's obligations to pay all Expenses for each Closing Store shall continue until the later of (a) ten (10) days after service of a Vacate Notice, or (b) the fifteenth (15th) day of the calendar month in which the Vacate Date for such Store occurs. Notwithstanding the foregoing, Agent's obligations to pay for Expenses in accordance with the immediately preceding sentence shall not apply to Closing Stores for which a Vacate Notice is provided pursuant to the proviso of the last sentence of Section 2.5(d) of the APA. All assets of Merchant used by Agent in the conduct of the Sale (e.g. Owned FF&E (hereinafter defined), supplies, etc.) shall be returned by Agent to Merchant or left at the Closing Store at the end of the Sale Term to the extent the same have not been used in the conduct of the Sale or have not been otherwise disposed of through no fault of Agent; provided, however, Agent shall remove all

7

unsold Merchandise at the end of the Sale Term at each of the Closing Stores. Agent shall be responsible for all Expenses for a Closing Store for which Merchant is or becomes obligated resulting from Agent's failure to vacate such Closing Store in a timely and broom clean manner.

Section 7. Sale Proceeds.

7.1 Proceeds. For purposes of this Agreement, "Proceeds" shall mean the aggregate of (a) the total amount (in dollars) received on all sales of Inventory (as defined in APA) and Owned FF&E made under this Agreement, exclusive of Sales Taxes; (b) all proceeds of Merchant's insurance for loss or damage to Inventory (as defined in APA) or Owned FF&E or loss of cash arising from events occurring during the Sale Term; and (c) any amounts received from providing photo finishing and processing services at the Stores during the Sale Term (which services the Agent shall have the right to sell during the Sale Term). Proceeds shall also include any and all proceeds received by Agent from the disposition, in a commercially reasonable manner, of unsold Inventory (as defined in APA) and Owned FF&E at the end of the Sale, whether through salvage, bulk sale or otherwise.

7.2 Deposit of Proceeds.

(a) Agent may establish its own accounts, dedicated solely for the deposit of the Proceeds and the disbursement of amounts payable to Agent hereunder (the "Agency Accounts"), and Merchant shall promptly upon Agent's request execute and deliver all necessary documents to open and maintain the Agency Accounts; provided, however, the Agent may elect to continue to use the Merchant's Designated Deposit Accounts (as defined below) as the Agency Accounts (as defined below). The Agency Accounts shall be dedicated solely to the deposit of Proceeds and the disbursement of amounts payable hereunder, and Agent shall exercise sole signatory authority and control with respect to the Agency Accounts. Upon request, Agent shall deliver to Merchant copies of all bank statement and other information relating to such accounts. Merchant shall not be responsible for, and Agent shall pay as an Expense hereunder, all bank fees and charges, including wire transfer charges, related to the Agency Accounts during the Sale Term, whether received during or after the Sale Term. Upon Agent's designation of the Agency Accounts, all Proceeds of the Sale (including credit card proceeds) shall be deposited into the Agency Accounts.

(b) During the period between the Sale Commencement Date and the date Agent establishes the Agency Accounts, all Proceeds of the Sale (including credit card proceeds) shall be collected by Agent and deposited on a daily basis into depository accounts designated by Merchant for the Closing Stores, which accounts shall be designated solely for the deposit of Proceeds of the Sale (including credit card proceeds), and the disbursement of amounts payable by Agent hereunder (the "Designated Deposit Accounts"). Following the Closing Date and on each business day thereafter (or as soon thereafter as is practicable, but in no event less than weekly), Merchant shall promptly pay to Agent by wire funds transfer all collected funds constituting Proceeds deposited into the Designated Deposit Accounts (but not any other funds, including, without limitation, any proceeds of Merchant's inventory sold prior to the Sale Commencement Date).

7.3     Credit Card Proceeds. Agent shall have the right to use Merchant's credit card facilities (including Merchant's credit card terminals and processor(s), credit card processor coding, Merchant identification number(s) and existing bank accounts) for credit card Proceeds relating solely to the Sale. In the event that Agent elects to use Merchant's credit card facilities, Merchant shall process credit card transactions on behalf of Agent and for Agent's account, applying customary practices and procedures. Agent shall not accept Merchant's proprietary card, if any. Without limiting the foregoing, Merchant shall cooperate with Agent to down-load data from all credit card terminals each day during the Sale Term and to effect settlement with Merchant's credit card processor(s) and shall take such other actions necessary to process credit card transactions on behalf of Agent under Merchant's identification number(s). At Agent's request following the Closing Date, Merchant shall cooperate with Agent to establish Merchant identification numbers under Agent's name to enable Agent to process all such credit card Proceeds for Agent's account. Merchant shall not be responsible for and Agent shall pay as an Expense hereunder, all credit card fees, charges and chargebacks related to the Sale, whether received during or after the Sale Term. Merchant makes no representation that the credit card processors shall permit the use of Merchant's credit card facilities on the same terms and conditions as they did prior to the date hereof. Notwithstanding anything herein to the contrary, if Agent elects to use Merchant's credit card facilities during the Sale, Agent shall be required to make all arrangements necessary with and pay all costs and expenses charged by Merchant's credit card processors, including, without limitation, regarding the establishment of reserves for credit card sales during the Sale Term, and no funds of Merchant shall be used to establish any such reserves or pay any such expenses. Agent shall also be responsible and pay for all credit card charge backs imposed by any of Merchant's credit card processors.

7.4     Petty Cash. Agent shall purchase all cash in the Closing Stores on and as of the start of business on the Sale Commencement Date and shall reimburse Merchant on a dollar for dollar basis therefor. Agent also shall purchase, on a dollar for dollar basis, all cash located in Merchant's bank accounts which are used by Agent hereunder, which shall be determined, and paid for, as of the Sale Commencement Date. To the extent that Agent purchases the petty cash at any Closing Stores or the cash in any of the Merchant's bank accounts, the credit against the Purchase Price to Agent under Section 3.1(d) of the APA shall be reduced dollar for dollar.

Section 8.     Conduct of the Sale. From and after the entry of the Sale Order:

8.1     Rights of Agent. Subject to the provisions of Section 2 hereof and except as may otherwise be provided for in the Sale Order, the Agent shall be permitted to conduct the Sale as a "store closing," "sale on everything," "everything must go," "going-out-of-business" or similar themed sale throughout the Sale Term. The Agent shall conduct the Sale in the name of and on behalf of the Merchant in a commercially reasonable manner and in compliance with the terms of this Agreement, the Sale Guidelines, and the Sale Order. The Agent shall conduct the Sale in accordance with the sale guidelines attached hereto as Exhibit 8.1 (the "Sale Guidelines"). In addition to any other rights granted to Agent hereunder in conducting the Sale, but subject to the Sale Guidelines and the Sale Order, the Agent, in the exercise of its reasonable discretion, shall have the right:

(a)     to establish Sale prices and Store hours which are consistent with the terms of applicable leases and local laws or regulations, including without limitation Sunday closing laws.

(b)     except as otherwise expressly included as an Expense, to use without charge during the Sale Term all Owned FF&E, Store-level customer email lists (provided, however, such access shall be provided solely through Merchant's outside advertisement email services, and the Agent shall not have direct access to any personally identifiable information contained therein), computer hardware and software, existing supplies located at the Closing Stores and Distribution Center, intangible assets (including Merchant's name, logo and tax identification numbers), Store keys, case keys, security codes and safe and lock combinations required to gain access to and operate the Closing Stores, and any other assets of Merchant located at the Closing Stores (whether owned, leased, or licensed) consistent with the Sale Order;

(c)     to use (i) Merchant's central office facilities, central administrative services and personnel to process payroll, perform MIS, POS, and provide other central office services necessary for the Sale to the extent that such services are normally provided by Merchant in the ordinary course; provided, however, that, in the event that Agent expressly requests Merchant to provide services other than those normally provided by Merchant in the ordinary course, Agent shall be responsible for the actual incremental cost of such services as an Expense; and (ii) offices located at Merchant's central office facility reasonably necessary to conduct the Sale.

(d)     to establish and implement advertising, signage and promotion programs consistent with the "store closing" or similar theme (including, without limitation, by means of media advertising, sign-walkers, A-frame signs, and interior and exterior signs and banners) in a manner consistent with the Sale Guidelines and applicable law;

(e)     to transfer Merchandise between and among the Closing Stores and/or the Distribution Center; provided, however, the Agent shall not transfer Merchandise between Closing Stores unless the Inventory Taking or Sample Inventory Taking, as applicable, at the transferring and receiving Closing Store has been completed; and

(f)     upon entry of the Sale Order, Agent shall be authorized to conduct the Sale in accordance with the provisions of the Sale Guidelines and Sale Order.

8.2     Terms of Sales to Customers.

(a)     All sales of Merchandise will be "final sales" and "as is," and all advertisements, sales tags and sales receipts will reflect the same. Agent shall clearly mark all tickets and receipts for the Merchandise sold at the Closing Stores during the Sale Term, so as to distinguish such Merchandise from goods sold prior to the Sale Commencement Date or from locations that are not Closing Stores. Agent shall not warrant the Merchandise in any manner, but will, to the extent legally permissible, pass on all manufacturers' warranties to customers. All sales will be made only for cash, nationally recognized bank credit cards and, in Agent's discretion, personal checks, provided, however, if Agent determines to accept personal checks,

Agent shall bear the risk of nonpayment or loss with respect thereto. Agent shall not accept or honor any coupons during the Sale Term.

(b) <u>Gift Certificates</u>. Agent shall accept Merchant's postpetition gift certificates up to a cap of $900,000. Agent shall not accept prepetition gift cards and merchandise credits issued by Merchant prior to the Sale Commencement Date, but shall direct all customers to the remaining open Stores to use their post-petition gift certificates, gift cards and merchandise credits.

8.3 <u>Sales Taxes</u>.

(a) During the Sale Term, all sales, excise, gross receipts and other taxes attributable to sales of Merchandise, as indicated on Merchant's point of sale equipment (other than taxes on income) payable to any taxing authority having jurisdiction (collectively, "<u>Sales Taxes</u>") shall be added to the sales price of Merchandise and collected by Agent, on Merchant's behalf, at the time of sale. All Sales Taxes shall be deposited into a segregated account designated by Merchant and Agent solely for the deposit of such Sales Taxes (the "<u>Sales Taxes Account</u>"). Merchant shall prepare and file all applicable reports and documents required by the applicable taxing authorities, and Merchant shall promptly pay all Sales Taxes from the Sales Taxes Account. Merchant will be given access to the computation of gross receipts for verification of all such tax collections. Provided that Agent performs its responsibilities in accordance with this Section 8.3, Merchant shall indemnify and hold harmless Agent from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which Agent sustains or incurs as a result or consequence of the failure by Merchant to promptly pay such taxes to the proper taxing authorities and/or the failure by Merchant to promptly file with such taxing authorities all reports and other documents required, by applicable law, to be filed with or delivered to such taxing authorities. If Agent fails to perform its responsibilities in accordance with this Section 8.3, and provided Merchant complies with its obligations hereunder, Agent shall indemnify and hold harmless Merchant from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines or penalties which Merchant sustains or incurs as a result or consequence of the failure by Agent to collect Sales Taxes and/or the failure by Agent to promptly deliver any and all reports and other documents required to enable Merchant to file any requisite returns with such taxing authorities.

(b) Without limiting the generality of Section 8.3(a) hereof, it is hereby agreed that, as Agent is conducting the Sale solely as agent for Merchant, various payments that this Agreement contemplates that one party may make to the other party do not represent the sale of tangible personal property and, accordingly, are not subject to Sales Taxes.

8.4 <u>Supplies</u>. Agent shall have the right to use, without charge, all existing supplies located at the Closing Stores and Distribution Center, including, without limitation, boxes, bags, paper, twine and similar sales materials (collectively, "<u>Supplies</u>"). In the event that additional Supplies are required in any of the Closing Stores during the Sale, Merchant agrees to promptly provide the same to Agent, if available, for which Agent shall reimburse Merchant at its cost therefor. Merchant does not warrant that the existing Supplies as of the Sale Commencement Date are adequate for the purposes of the Sale.

8.5     Returns of Merchandise. Unless Merchant and Agent otherwise agree, during the Sale Term, Agent shall not accept returns of merchandise sold by Merchant prior to the Sale Commencement Date ("Returned Merchandise"); but shall direct all customers to the remaining open Stores with respect to any Returned Merchandise.

8.6     Sale Reconciliation. On each Wednesday during the Sale Term, commencing on the second Wednesday after the Sale Commencement Date, Agent and Merchant shall cooperate to reconcile Expenses and such other Sale-related items as either party shall reasonably request, in each case for the prior week or partial week (i.e. Sunday through Saturday), all pursuant to procedures agreed upon by Merchant and Agent (the "Weekly Sale Reconciliation"). Within thirty (30) days after the end of the Sale Term, Agent and Merchant shall complete a final reconciliation of the Sale, the written results of which shall be certified by representatives of each of Merchant and Agent as a final settlement of accounts between Merchant and Agent.

8.7     Force Majeure. If any casualty, act of terrorism, or act of God prevents or substantially inhibits the conduct of business in the ordinary course at any Store, such Store and the Merchandise located at such Store shall, in Agent's discretion, be eliminated from the Sale and considered to be deleted from this Agreement as of the date of such event, and Agent and Merchant shall have no further rights or obligations hereunder with respect thereto; provided, however, that subject to the terms of Section 7.1 above, the proceeds of any insurance attributable to such Merchandise shall constitute Proceeds hereunder.

8.8     Merchant's Right to Monitor. Merchant shall have the right to monitor the Sale and activities attendant thereto and to be present in the Closing Stores during the hours when the Closing Stores are open for business; provided that Merchant's presence does not unreasonably disrupt the conduct of the Sale. Merchant shall also have a right of access to the Closing Stores at any time in the event of an emergency situation and shall promptly notify Agent of such emergency.

Section 9.     Employee Matters.

9.1     Merchant's Employees. Agent may use Merchant's store level employees in the conduct of the Sale to the extent Agent deems expedient, and Agent may select and schedule the number and type of Merchant's employees required for the Sale. Agent shall identify any such store level employees to be used in connection with the Sale (each such employee, a "Retained Employee") prior to the Sale Commencement Date. Notwithstanding the foregoing, Merchant's employees shall at all times remain employees of Merchant. Agent's selection and scheduling of Merchant's employees shall at all times comply with all applicable laws and regulations. Merchant and Agent agree that, except to the extent that wages and benefits of Retained Employees constitute Expenses hereunder, nothing contained in this Agreement and none of Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of Merchant's obligations relating to any of Merchant's employees including, without limitation, WARN Act claims and other termination type claims and obligations, or any other amounts required to be paid by statute or law; nor shall Agent become liable under any employment agreement or be deemed a joint or successor employer with respect to such employees. Agent shall comply in the conduct of the Sale with all of Merchant's employee rules, regulations, guidelines and policies which have been provided to Agent in writing.

Merchant shall not, without the prior consent of Agent, raise the salary or wages or increase the benefits for, or pay any bonuses or other extraordinary payments to, any Store employees prior to the Sale Termination Date. Merchant shall not transfer any Retained Employee during the Sale Term without Agent's prior consent, which consent shall not be unreasonably withheld.

9.2    Termination of Employees. Agent may in its discretion stop using any Retained Employee at any time during the Sale, subject to the conditions provided for herein. In the event that Agent desires to cease using any Retained Employee, Agent shall notify Merchant at least five (5) days prior thereto, so that Merchant may coordinate the termination of such employee; provided, however, in the event that Agent desires to cease using any Retained Employee prior to August 1, 2009, Agent shall notify Merchant at least three (3) days prior thereto, provided further, however that, in the event that Agent determines to cease using an employee "for cause" (which shall consist of dishonesty, fraud or breach of employee duties), the three (3) or five (5) day notice period, as applicable, shall not apply, provided further, however, that Agent shall immediately notify Merchant of the basis for such "cause" so that Merchant can arrange for termination of such employee. From and after the date of this Agreement and until the Sale Termination Date, Merchant shall not transfer or dismiss employees of the Closing Stores except "for cause" without Agent's prior consent. Notwithstanding the foregoing, Agent shall not have the right to terminate the actual employment of any employee, but rather may only cease using such employee in the Sale and paying any Expenses with respect to such employee.

9.3    Payroll Matters. During the Sale Term, Merchant shall process and pay the base payroll and all related payroll taxes, worker's compensation, employment and unemployment insurance, and benefits for all Retained Employees, including any independent contractors retained by Agent, in accordance with its usual and customary procedures. At Agent's expense, Merchant shall also process payroll for additional personnel retained by Agent for the Sale.

9.4    Employee Retention Bonuses. Agent may pay, as an Expense, retention bonuses ("Retention Bonuses") (which bonuses shall be inclusive of payroll taxes, but as to which no benefits shall be payable), up to a maximum of ten percent (10%) of base payroll for all Retained Employees, to such Retained Employees who do not voluntarily leave employment and are not terminated "for cause," as it may determine in its discretion. The amount of such Retention Bonuses shall be in an amount to be determined by Agent, in its discretion, and shall be payable within thirty (30) days after the Sale Termination Date, and shall be processed through Merchant's payroll system.

Section 10.    Conditions Precedent and Subsequent. The willingness of Agent and Merchant to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by the applicable party:

(a)    All representations and warranties of Merchant and Agent hereunder shall be true and correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and as of the Sale Commencement Date.

(b)    The Sale Order shall be obtained on or before July 24, 2009.

Section 11.    Representations, Warranties and Covenants.

11.1    Merchant's Representations, Warranties and Covenants.  Merchant hereby represents, warrants and covenants in favor of Agent as follows:

(a)    Each entity comprising Merchant (i) is a corporation or a limited liability company duly organized, validly existing and in good standing under the laws of the state of its formation (except as may be a result of the commencement any Chapter 11 Cases for Merchant); (ii) has all requisite corporate power and authority to own, lease and operate its assets and properties and to carry on its business as presently conducted; and (iii) is, and during the Sale Term will continue to be, duly authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification, including all jurisdictions in which the Closing Stores are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.

(b)    Subject to the issuance and entry of the Approval Order, Merchant has the right, power and authority to execute and deliver this Agreement and each other document and agreement contemplated hereby (collectively, together with this Agreement, the "Agency Documents") and to perform fully its obligations thereunder. Subject to the issuance and entry of the Approval Order, Merchant has taken all necessary actions required to authorize the execution, delivery and performance of the Agency Documents, and no further consent or approval on the part of Merchant is required for Merchant to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale. Subject to the issuance and entry of the Approval Order, each of the Agency Documents has been duly executed and delivered by Merchant and constitutes the legal, valid and binding obligation of Merchant enforceable in accordance with its terms. Subject to the issuance and entry of the Approval Order, no court order or decree of any federal, state, local, or provincial governmental authority or regulatory body is in effect that would prevent or materially impair, or is required for the Merchant's consummation of, the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefore, other than as shall be obtained prior to the Sale Commencement Date, except for any such consent the failure of which to be obtained could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder. Other than for any consent as shall be obtained prior to the Sale Commencement Date, and those contracts or agreements identified by Merchant to Agent on or prior to the Sale Commencement Date, if any, no contract or other agreement to which the Merchant is a party or by which the Merchant is otherwise bound will prevent or materially impair the consummation of the Sale and the other transactions contemplated by this Agreement.

(c)    Merchant owns, and will own at all times during the Sale Term, good and marketable title to all of the Merchandise and Owned FF&E to be included in the Sale, free and clear of all liens, claims and encumbrances of any nature, other than the liens listed on Schedule 11.1(c)(ii) and any applicable statutory liens. Merchant shall not create, incur, assume or suffer to exist any security interest, lien or other charge or encumbrance upon or with respect to any of the Merchandise or the Proceeds other than as provided for herein (including any applicable

statutory liens). Any Approval Order shall provide that all such liens, claims and encumbrances shall be transferred to and attach only to the Purchase Price or other amounts payable to Merchant hereunder.

(d) Merchant has maintained its pricing files in the ordinary course of business, and prices charged to the public for goods (whether in-Store, by advertisement or otherwise) are the same in all material respects as set forth in such pricing files for the periods indicated therein (without consideration of any point of sale markdowns or advertised sales). All pricing files and records relative to the Merchandise have been made available to Agent. To the best of Merchant's knowledge, all pricing files and records are true and accurate in all material respects as to the actual cost to Merchant for purchasing the goods referred to therein and as to the selling price to the public for such goods as of the dates and for the periods indicated therein.

(e) From the date hereof through the Sale Commencement Date, Merchant shall not purchase for or transfer to or from the Closing Stores any merchandise or goods outside the ordinary course.

(f) To the best of Merchant's knowledge, all Merchandise is in compliance with all applicable federal, state or local product safety laws, rules and standards. Merchant shall provide Agent with its historic policies and practices, if any, regarding product recalls prior to the Sale Commencement Date and shall notify Agent of any product recalls throughout the Sale Term.

(g) Subject to the provisions of the Sale Order, throughout the Sale Term, the Agent shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, each of the Closing Stores and the Distribution Center, the assets currently located therein and the utilities and other services provided thereat. Agent shall, throughout the Sale Term, maintain in good working order, condition and repair all cash registers, heating systems, air conditioning systems, elevators, escalators and all other mechanical devices necessary for the conduct of the Sale at the Closing Stores. Except any amounts owing as a result of the commencement of any Chapter 11 Case, and absent a bona fide dispute, throughout the Sale Term, Agent shall ensure that all expenses and payables necessary for the conduct of the Sale (other than those relating to any period prior to the commencement of any Chapter 11 Case shall remain current), subject to any restrictions that may be imposed under the Bankruptcy Code and compliance by Agent of its reimbursement obligations hereunder are paid currently.

(h) Except any amounts owing as a result of the commencement of any Chapter 11 Case, Merchant has paid, and will continue to pay throughout the Sale Term, subject to Agent's obligations under Section 4.1 and the other provisions of this Agreement, all self-insured or Merchant funded employee benefit programs for Store employees, including health and medical benefits and insurance and all proper claims made or to be made in accordance with such programs (other than those relating to any period prior to the commencement of any Chapter 11 Case).

(i) Merchant has not intentionally taken, and shall not throughout the Sale Term intentionally take, any actions with the intent of increasing the Expenses, including, without limitation, increasing salaries or other amounts payable to employees.

(j)    Except as may be impacted by the filing of the Chapter 11 Case, or otherwise restricted by the Chapter 11 filing, Merchant covenants to continue to operate the Closing Stores in all material respects in the ordinary course of business from the date of this Agreement to the Sale Commencement Date by: (i) selling inventory during such period at customary prices consistent with the ordinary course of business; (ii) not promoting or advertising any sales or in-store promotions (including POS promotions) to the public (except for Merchant's pending advertisements as of the date of this Agreement and/or Merchant's promotions for the period through the Sale Commencement Date; (iii) except as may occur in the ordinary course of business, not returning inventory to vendors and not transferring inventory or supplies between or among Stores; and (iv) except as may occur in the ordinary course of business, not making any management personnel moves or changes at the Closing Stores without prior written notice to and consultation with (but not approval of) Agent.

(k)    No action, arbitration, suit, notice, or legal, administrative or other proceeding before any court or governmental body has been instituted by or against the Merchant, or has been settled or resolved, or to Merchant's knowledge, is threatened against or affects Merchant, relative to Merchant's business or properties, or which questions the validity of this Agreement, or that if adversely determined, would adversely affect the conduct of the Sale.

(l)    The mix/assortment of all Merchandise included in the Sale will not be materially inconsistent with the mix/assortment of Merchandise data provided by Merchant to Agent in connection with Merchant's due diligence process.

(m)    Supplies have not been, since June 1, 2009, and shall not be, prior to the Sale Commencement Date, transferred by Merchant to or from the Stores so as to alter the mix or quantity of supplies at the Stores from that existing on such date, other than in the ordinary course of business.

11.2    Agent's Representations, Warranties and Covenants. Each entity comprising Agent hereby represents, warrants and covenants in favor of Merchant as follows:

(a)    Each entity comprising Agent: (i) is a limited partnership, corporation or limited liability company (as the case may be) duly and validly existing and in good standing under the laws of the State of its organization; (ii) has all requisite power and authority to carry on its business as presently conducted and to consummate the transactions contemplated hereby. (iii) is, and during the Sale Term will continue to be, duly authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification, including all jurisdictions in which the Closing Stores are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of Agent to execute and deliver this Agreement and perform fully its obligations hereunder.

(b)    Agent has the right, power and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder. Agent has taken all necessary actions required to authorize the execution, delivery and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder and

to consummate the Sale. Each of the Agency Documents has been duly executed and delivered by the Agent and constitutes the legal, valid and binding obligation of Agent enforceable in accordance with its terms. No court order or decree of any federal, state or local governmental authority or regulatory body is in effect that would prevent or impair, or is required for, Agent's consummation of the transactions contemplated by this Agreement (other than the Sale Order), and no consent of any third party which has not been obtained is required therefor, other than as provided herein. No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

(c)     No action, arbitration, suit, notice or legal administrative or other proceeding before any court or governmental body has been instituted by or against Agent, or has been settled or resolved or, to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement or which, if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

(d)     The Sale shall be conducted in compliance with all Applicable General Laws, except as provided for in the Sale Guidelines and or the Sale Order.

11.3     Reserved.

Section 12.     Insurance.

12.1     Merchant's Liability Insurance. Subject to Agent's obligations under Section 4.1, Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, all of its liability insurance policies, including, but not limited to, products liability, comprehensive public liability, auto liability and umbrella liability insurance, covering injuries to persons and property in, or in connection with, Merchant's operation of the Closing Stores and shall cause Agent to be named as additional named insureds (as their respective interests may appear) with respect to all such policies. Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof and naming Agent as additional named insureds, in form reasonably satisfactory to Agent. All such policies shall require at least thirty (30) days' prior notice to Agent of cancellation, non-renewal or material change during the Sale Term. In the event of a claim under any such policies, Merchant shall be responsible for the payment of all deductibles, retentions or self-insured amounts thereunder, unless it is determined that liability arose by reason of the wrongful acts or omissions or negligence of Agent, or Agent's employees, independent contractors or agents (including Merchant's employees being supervised by Agent).

12.2     Merchant's Casualty Insurance. Subject to Agent's obligations under Section 4.1, Merchant will provide throughout the Sale Term, at Agent's cost, fire, flood, theft and extended coverage casualty insurance covering the Merchandise in a total amount equal to no less than the retail value thereof. From and after the date of this Agreement until the Sale Termination Date, all such policies will also name Agent as additional named insureds (as their respective interests may appear). In the event of a loss to the Merchandise on or after the date of this Agreement, the Proceeds of such insurance attributable to the Merchandise, plus any self insurance amounts and the amount of any deductible or self-insured retention (which amounts shall be paid by Agent as

an Expense), shall constitute Proceeds hereunder. Merchant shall deliver to Agent certificates evidencing such insurance, setting forth the duration thereof and naming the Agent as additional insureds (as their respective interest may appear), in form and substance reasonably satisfactory to Agent. All such policies shall require at least thirty (30) days' prior notice to the Agent of cancellation, non-renewal or material change during the Sale Term. Merchant shall not make any change in the amount of any deductibles or self insurance amounts prior to the Sale Termination Date without Agent's prior written consent.

12.3    Agent's Insurance. Agent shall maintain as an Expense hereunder throughout the Sale Term, in such amounts as it currently has in effect, comprehensive public liability insurance policies covering injuries to persons and property in or in connection with Agent's agency at the Closing Stores, and shall cause Merchant to be named as additional insureds with respect to such policies. Agent shall deliver to Merchant certificates evidencing such insurance policies setting forth the duration thereof and naming Merchant as additional insureds, in form and substance reasonably satisfactory to Merchant. In the event of a claim under any such policies, Agent shall be responsible for the payment of all deductibles, retentions or self-insured amounts thereunder, unless it is determined that liability arose by reason of the wrongful acts or omissions or negligence of Merchant or Merchant's independent contractors or agents, other than Agent or Agent's employees, agents or independent contractors (including Merchant's employees under Agent's supervision).

12.4    Worker's Compensation Insurance. Subject to Agent's obligations under Section 4.1 (including the cost of maintaining any letters of credit provided to any of Merchant's worker's compensation insurance carriers), Merchant shall at all times during the Sale Term maintain in full force and effect workers' compensation insurance (including employer liability insurance) covering all Retained Employees in compliance with all statutory requirements.

Section 13.    Indemnification.

13.1    Merchant Indemnification. Merchant shall indemnify and hold Agent and its officers, directors, employees, agents, permitted assigns and independent contractors (collectively, "Agent Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to: (i) Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document; (ii) subject to Agent's performance and compliance with its obligations hereunder, any failure of Merchant to pay to its employees any wages, salaries or benefits due to such employees during the Sale Term, (iii) subject to Agent's compliance with its obligations hereunder, any failure by Merchant to pay any Sales Taxes to the proper taxing authorities or to properly file with any taxing authorities any reports or documents required by applicable law to be filed in respect thereof, (iv) any consumer warranty or products liability claims except to the extent such claims arise from representations made by the Agent relating to the Merchandise, or (v) the gross negligence (including omissions) or willful misconduct of Merchant, or its officers, directors, employees, agents or representatives.

13.2    Agent Indemnification. Agent shall indemnify and hold Merchant and its officers, directors, employees, agents and representatives harmless from and against all claims,

demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to: (i) Agent's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document; (ii) any claims by any party engaged by Agent as an employee or independent contractor arising out of such employment; and (iii) the gross negligence (including omissions) or willful misconduct of Agent, its officers, directors, employees, agents or representatives.

Section 14.    Defaults and Termination.

The following shall constitute "Events of Default" hereunder:

(a)    The Merchant or Agent shall fail to perform any material obligation hereunder if such failure remains uncured ten (10) days after receipt of written notice thereof; or

(b)    Any representation or warranty made by Merchant or Agent proves untrue in any material respect as of the date made and, to the extent curable, continues uncured ten (10) days after written notice to the defaulting party; or

(c)    The Sale is terminated or materially interrupted or impaired for any reason other than (i) an Event of Default by Agent, or (ii) any other material breach or action by Agent not authorized hereunder.

In the event of an Event of Default, (x) the non-defaulting party, in the case of Section 14(a) or Section 14(b), or (y) the Agent, in the case of Section 14(c), may, in its discretion, elect to terminate this Agreement upon written notice to the other party; and any party's damages or entitlement to equitable relief on account of an Event of Default shall be determined in accordance with Section 16 hereof.

Section 15.    Miscellaneous.

15.1    Notices. All notices and communications provided for pursuant to this Agreement shall be in writing and sent by email, by hand, by facsimile or by Federal Express or other recognized overnight delivery service, as follows (with Merchant and Agent to receive all notices regardless of their origin):

If to the Agent:        Ritz Acquisition Group, LLC,
                        5 Revere Drive, Suite 206,
                        Northbrook, IL 60062
                        Attn: Joseph Malfitano
                        Fax: (847) 897-0868
                        Email: jmalfitano@hilcotrading.com

                        Ashby & Geddes
                        500 Delaware Avenue, 8th Floor
                        Wilmington, DE 19801
                        Attn: Bill Bowden, Esq.
                        Fax: (302) 654-2067

Email: wbowden@ashby-geddes.com

Gordon Brothers Retail Partners
101 Huntington Avenue, 10th Floor
Boston, MA 02199
Michael D. Chartock
Fax: (617) 422-6222
Email: mchartock@gordonbrothers.com

If to the Merchant:    Ritz Camera Centers, Inc.
6711 Ritz Way
Beltsville, MD 27075
Attn: Marc Weinsweig, CRO
Email: Marc.Weinsweig@FTIConsulting.com

With a copy to:    Cole, Schotz, Meisel, Forman & Leonard, P.A.
300 East Lombard Street, Suite 2000
Baltimore, MD 21202
Attn: Irving Walker, Esq.
Fax: (410) 230 0667
Email: iwalker@coleschotz.com

and

Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, NY 10036
Attn: Jay R. Indyke, Esq. and Cathy Hershcopf, Esq.
Fax: (212) 479-6275
Email: chershcopf@cooley.com / jindyke@cooley.com

15.2    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Delaware without regard to conflicts of laws principles thereof, except where governed by the Bankruptcy Code in the event of the commencement of the Chapter 11 Cases.

15.3    <u>Entire Agreement</u>. This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto.

15.4    <u>Amendments</u>. This Agreement may not be modified except in a written instrument executed by each of the parties hereto.

15.5    <u>No Waiver</u>. No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by

such other party of the same or any other obligation of such party. Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

15.6 <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and be binding upon Agent and Merchant and their respective successors and assigns including, but not limited to, any chapter 11 or chapter 7 trustee; <u>provided</u>, <u>however</u>, that this Agreement may not be assigned by Merchant, or Agent, to any party without the prior written consent of the other, except that Agent may assign certain rights under this Agreement as disclosed above.

15.7 <u>Execution in Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one agreement. This Agreement may be executed by facsimile, and such facsimile signature shall be treated as an original signature hereunder.

15.8 <u>Section Headings</u>. The headings of sections of this Agreement are inserted for convenience only and shall not be considered for the purpose of determining the meaning or legal effect of any provisions hereof.

15.9 <u>Owned FF&E</u>. With respect to the FF&E owned by Merchant (the "<u>Owned FF&E</u>") and located at the Closing Stores, Agent shall be permitted to sell the Owned FF&E in any such Closing Store. Agent shall be entitled to all proceeds from the sale of such Owned FF&E (net only of sales taxes); provided however, Agent shall be responsible for payment of expenses incurred in connection with the disposition of the Owned FF&E. As of the Sale Termination Date, Agent may abandon, in place, any unsold Owned FF&E, at the Closing Stores..

15.10 <u>Reporting</u>. If requested, Agent shall furnish Merchant with weekly reports reflecting the progress of the Sale, which shall specify the Proceeds received to date and shall furnish Merchant with such other information regarding the Sale as Merchant reasonably requests. The Agent will maintain and provide to Merchant sales records to permit calculation of and compliance with any percentage of rent obligations under Store leases. During the course of the Sale, Merchant shall have the right to have representatives continually act as observers of the Sale in the Closing Stores, so long as they do not interfere with the conduct of the Sale.

Section 16. <u>Dispute Resolution</u>. The Bankruptcy Court shall have and retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach, default or Event of Default hereunder, or the transactions contemplated hereby, and any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

Section 17.    Further Assurances.  The Agent and the Merchant shall, from time to time after the Closing, without further consideration, execute and deliver such instruments and take such further actions as may be reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated hereby.

Section 18.    Reserved.

IN WITNESS WHEREOF, the parties hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

**Ritz Camera Centers, Inc.,** As Debtor and Debtor-in-Possession

By: _____
Name:
Its:

**Ritz Acquisition Group, LLC,** a Delaware limited liability company,
As Agent

By: _____
Name:
Its: