# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------X

In re:

RCC LIQUIDATING CORP. f/k/a Ritz Camera
Centers, Inc.,

              Debtor.

-------------------------------------------------------------X

Chapter 11

Case No.: 09-10617 (MFW)

## ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, DATED APRIL 13, 2010

RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc., the above-captioned

debtor and debtor in possession (the "**Debtor**")[1], having filed a voluntary petition for relief on

February 22, 2009 (the "**Petition Date**") under the provisions of chapter 11 of title 11 of the

United States Code (the "**Bankruptcy Code**"); and on October 23, 2009 having jointly filed with

the Official Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case (the

"**Committee**" and together with the Debtor, the "**Plan Proponents**") the *Joint Plan of*

*Liquidation Under Chapter 11 of the United States of Bankruptcy Code Proposed by the Debtor*

*and the Official Committee of Unsecured Creditors, Dated October 23, 2009* and a Disclosure

Statement in support thereof; and the Plan Proponents having filed the *First Amended Joint Plan*

*of Liquidation Under Chapter 11 of the United States Bankruptcy Code Proposed by the Debtor*

*and the Official Committee of Unsecured Creditors, Dated March 4, 2010* (the "**First Amended**

---

[1]     Unless otherwise specified herein, capitalized terms and phrases used herein shall have the meanings given to them in the Plan. Any term used in the Plan or herein that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The rules of interpretation set forth in Section I.B.1 of the Plan apply to this Confirmation Order.

**Plan**") and the Disclosure Statement in support thereof (the "**Disclosure Statement**") on March 4, 2010; and this Court having entered an order on March 4, 2010 (the "**Disclosure Statement Order**") by which this Court, among other things, approved the Disclosure Statement, established procedures for the solicitation and tabulation of votes to accept or reject the First Amended Plan and scheduled a hearing pursuant to sections 1128 and 1129 of the Bankruptcy Code and Bankruptcy Rule 3017(c) to consider confirmation of the First Amended Plan for April 20, 2010 at 11:30 a.m. (the "**Confirmation Hearing**"); and the Plan Proponents having filed the *Second Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code Proposed by the Debtor and the Official Committee of Unsecured Creditors, Dated April 13, 2010* (as it may be amended, supplemented or modified, the "**Plan**"), attached hereto as **Exhibit "A"** on April 13, 2010; and this Court having considered the Objections (hereinafter defined) to confirmation of the Plan and the Response (hereinafter defined) thereto; and upon the record of the Confirmation Hearing and the Affidavit of Service (hereinafter defined), Publication Affidavit (hereinafter defined), Voting Affidavit (hereinafter defined), the Response, the Memorandum of Law (hereinafter defined) and all other affidavits and declarations filed, evidence adduced and arguments of counsel made at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, this Court enters the following findings of fact and conclusions of law with respect to Confirmation of the Plan:[2]

---

[2]  These findings of facts and conclusions of law constitute this Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

46460/0002-6459146v6

I.

## FINDINGS OF FACT

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of a plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Debtor was and is qualified to be a debtor under section 109 of the Bankruptcy Code. Venue of the Bankruptcy Case in the United States District Court for the District of Delaware was proper as of the Petition Date, pursuant to 28 U.S.C. § 1408, and continues to be proper.

B. An affidavit of service was executed by Travis K. Vandell with respect to the mailing of notice of the Confirmation Hearing and solicitation materials in respect of the Plan in accordance with the Disclosure Statement Order (the "**Affidavit of Service**") and was filed with this Court on March 18, 2010 (D.I. 1417).

C. The affidavit of Cathy Zike (D.I. 1398) (the "**Publication Affidavit**") was filed with this Court on March 12, 2010, regarding the publication of the *Notice of Hearing to Consider Confirmation of, and Deadline for Objecting to, First Amended Joint Plan of Liquidation* in *The New York Times* as required by the Disclosure Statement Order.

D. Kurtzman Carson Consultants LLC, the Court-appointed noticing, claims and balloting agent in respect of the Plan, filed the *Declaration of Voting Agent Regarding Tabulation of Votes in Connection with Debtors' First Amended Joint Chapter 11 Plan of Liquidation For RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc.* (D.I. 1510) (the "**Voting Affidavit**") on April 13, 2010 pursuant to which Travis K. Vandell declared that the Debtor received 752 acceptances out of 786 total votes in favor of the Plan from holders of Claims under Class 4 (General Unsecured Claims), the only Class entitled to vote under the Plan, with Class 4 claimants who voted in favor of the Plan holding Claims in the amount of $99,593,813.53 for

3

voting purposes, such acceptances being 97.28% percent in number and 85.85% percent in amount of all Ballots received from holders of Class 4 Claims.

E.     Limited objections to Confirmation of the Plan were filed by (i) the Michigan Department of Treasury on March 9, 2010 (D.I. 1386) (the "**Michigan Objection**"); (ii) the Salt Lake County Treasurer on March 29, 2010 (D.I. 1441) (the "**SLC Objection**"); (iii) Travis County et al. on April 7, 2010 (D.I. 1489) (the "**Travis Objection**"); (iv) Brazos County et al. on April 8, 2010 (D.I. 1494) (the "**Brazos Objection**"); (v) Commonwealth of Pennsylvania, Department of Revenue on April 8, 2010 (D.I. 1495) (the "**Pennsylvania Objection**"); (vi) City of Hurst, et al. on April 9, 2010 (D.I. 1504) (the "**Hurst Objection**"); and (vii) Lewisville Independent School District, et al. on April 9, 2010 (D.I. 1506) (the "**Lewisville Objection**" and collectively with the Michigan Objection, SLC Objection, Travis Objection, Brazos Objection, Pennsylvania Objection, and Hurst Objection, the "**Objections**").

F.     Informal responses to the Plan were asserted by the Internal Revenue Service (the "**IRS Informal Response**"), and Bexar County, Cameron County, Cypress Fairbanks ISD, Dallas County, Fort Bend County, Galveston County, Harris County, Katy ISD, Memphis, Montgomery County, Nueces County, Round Rock ISD and Tarrant County (the "Texas Informal Response").

G.     The Plan Proponents filed an Omnibus Reply to the Objections on April 13, 2010 (D.I. 1513) (the "**Response**").

H.     The Plan Proponents filed a memorandum of law in support of the Plan on April 15, 2010 (D.I. 1523) (the "**Memorandum of Law**").

I.     The Disclosure Statement, Plan, Ballots, and notice of the Confirmation Hearing were transmitted and served in compliance with the Disclosure Statement Order and the

4

Bankruptcy Rules, and such transmittal and service constituted adequate and sufficient notice of the Plan and Confirmation Hearing.

I.     **Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

J.     The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

a.     **Sections 1122 and 1123(a)(1)-(4) - Classification and Treatment of Claims and Equity Interests**

K.     In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies each Claim against and Equity Interest in the Debtor into a Class containing only substantially similar Claims or Equity Interests. Further, the treatment of each Claim or Equity Interest within a Class is the same as the treatment of each other Claim or Equity Interest in such Class.

L.     In accordance with section 1123(a)(1) of the Bankruptcy Code, Article II of the Plan properly classifies all Claims and Equity Interests that require classification. In particular, Article II of the Plan segregates into separate classes Lenders' Secured Claims (Class 1), Other Secured Claims (Class 2), Priority Claims (Class 3), General Unsecured Claims (Class 4), and Equity Interests (Class 5). The number of classes reflects the diverse characteristics of those Claims and Equity Interests, and the legal rights under the Bankruptcy Code of each of the holders of Claims or Equity Interests within a particular Class are substantially similar to other holders of Claims or Equity Interests within that Class.

M.     In accordance with sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article III.B of the Plan identifies and describes each Class of Claims or Equity Interests that is impaired and not impaired under the Plan. In particular, Article III.B of the Plan indicates that

5

Classes 1, 2, and 3 are unimpaired and Classes 4 and 5 are impaired.

N.     In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides

the same treatment for each Claim or Equity Interest of a particular Class unless the holder of

such a Claim or Equity Interest agrees to less favorable treatment. Lenders' Secured Claims

have been separately classified in Class 1 due to the distinctive basis for such claims. Based on

their secured status, Other Secured Claims have been separately classified in Class 2. Due to

their entitlement to priority status under section 507 of the Bankruptcy Code, Priority Claims

have been separately classified in Class 3. General Unsecured Claims have been separately

classified in Class 4 due to the distinctive bases for such claims. Finally, Equity Interests have

been separately classified in Class 5 due to the distinctive bases for such interests.

**b.     Section 1123(a)(5) - Adequate Means for Implementation of the Plan**

O.     In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan,

including Article IV of the Plan, provides adequate means for its implementation, including:

(i) the transfer of Liquidation Trust Assets to the Liquidation Trust and the vesting therein under

the Plan; (ii) the limited vesting of Retained Assets in the Debtor under Section IV.A.3 of the

Plan; (iii) the creation of the Liquidation Trust and the appointment of the Liquidation Trustee

under Section IV.B of the Plan; and (vi) the preservation of Causes of Action by the Liquidation

Trust.

**c.     Section 1123(a)(6) - Prohibition Against the Issuance of Nonvoting
Equity Securities and Adequate Provisions for Voting Power of
Classes of Securities**

P.     Section 1123(a)(6) of the Bankruptcy Code is not applicable to the Debtor

because the Debtor is not issuing any equity securities under the Plan.

6

#### d. Section 1123(a)(7) - Selection of Directors and Officers in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy

Q.    Section 1123(a)(7) of the Bankruptcy Code is not applicable to the Debtor

because the Debtor has ceased its operations and will be liquidating its remaining assets under

the Plan.

#### e. Section 1123(a)(8) - Payment of Earnings From Personal Services or Other Income of a Debtor As Necessary for the Execution of the Plan

R.    Section 1123(a)(8) of the Bankruptcy Code is not applicable to the Debtor

because the Debtor is not an individual.

#### f. Section 1123(b)(1) - Impairment of Claims and Equity Interests

S.    As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the

Plan provides for the impairment of certain classes of Claims and Equity Interests, while leaving

other Classes unimpaired.  The Plan thus modifies the rights of the holders of certain Claims and

Equity Interests and leaves the rights of others unaffected.

#### g. Section 1123(b)(2) - Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases

T.    In accordance with section 1123(b)(2) of the Bankruptcy Code, Article V of the

Plan provides for the assumption, assumption and assignment or rejection of the Executory

Contracts and Unexpired Leases of the Debtor that have not been previously assumed, assumed

and assigned or rejected pursuant to section 365 of the Bankruptcy Code and appropriate

authorizing orders of this Court.

#### h. Section 1123(b)(3) - Retention, Enforcement and Settlement of Claims Held by the Debtor

U.    In accordance with section 1123(b)(3) of the Bankruptcy Code, Section XII.A. of

the Plan provides that on the Effective Date, all Causes of Action, with the exception of (i) the

7

Transferred Causes of Action, (ii) the Causes of Action related to or arising out of the Retained Assets, and (iii) any claim, right, interest or Cause of Action waived, relinquished, released, compromised or settled as provided in any Final Order, shall vest in the Liquidation Trust, which shall hold and possess all rights on behalf of the Debtor, its Estate and the Liquidation Trust to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation the Bankruptcy Code, and in any court or other tribunal).

### i.   Section 1123(b)(5) - Modification of the Rights of Holders of Claims

V.     Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each class of Claims and Equity Interests.

### j.   Section 1123(b)(6) - Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code

W.     In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code, including the provisions of: (i) Article IV of the Plan providing for (a) the creation of the Liquidation Trust and (b) the appointment of the Liquidation Trustee; (ii) Article VI of the Plan governing distributions on account of Allowed Claims; (iii) Article VII of the Plan establishing procedures for resolving Disputed Claims and making distributions on account of such Disputed Claims once resolved; and (iv) Article XI of the Plan regarding retention of jurisdiction by this Court over certain matters after the Effective Date.

### k.   Section 1123(d) - Cure of Defaults

X.     In accordance with section 1123(b)(2) of the Bankruptcy Code, any cure amounts required to be paid by the Debtor before assuming an Executory Contract or Unexpired Lease shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

8

## II.     Section 1129(a)(2) - Compliance with Applicable Provisions of the Bankruptcy Code

Y.     The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Disclosure Statement Order. Votes with respect to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order, including the inclusion of a letter from the Committee recommending acceptance of the Plan in the solicitation packages. The Plan Proponents, their respective members and each of their respective directors, officers, employees, agents, members and professionals, acting in such capacity, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

## III.     Section 1129(a)(3) - Proposal of the Plan in Good Faith

Z.     The Plan Proponents proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based on the evidence presented at the Confirmation Hearing, this Court finds and concludes that the Plan has been proposed with the legitimate purpose of maximizing the returns available to creditors and other parties in interest. The Plan itself and the arms'-length negotiations between the Debtor and the Committee leading to the Plan's formulation, as well as the overwhelming support of creditors for the Plan, provide independent evidence of the Plan Proponents' good faith in proposing the Plan.

9

**IV.** **Section 1129(a)(4) - Court Approval of Certain Payments as Reasonable**

AA.    In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, including Professional Fee Claims, has been or will be made by the Debtor other than payments that have been authorized by order of this Court. Section III.A.1 of the Plan provides for the payment of Administrative Claims, including Professional Fee Claims, which are subject to this Court's approval and the standards of the Bankruptcy Code.

**V.** **Section 1129(a)(5) - Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

BB.    To the extent that section 1129(a)(5) is applicable to the selection of the Liquidation Trustee, the identity and the terms of retention of the Liquidation Trustee have been disclosed in Schedule A to the Liquidation Trust Agreement.

**VI.** **Section 1129(a)(6) - Approval of Rate Changes**

CC.    No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtor, and the Plan complies with section 1129(a)(6) of the Bankruptcy Code.

**VII.** **Section 1129(a)(7) - Best Interests of Holders of Claims and Equity Interests**

DD.    As demonstrated by the liquidation analysis included as Exhibit B to the Disclosure Statement, with respect to each Impaired Class of Claims or Equity Interests under the Plan, each holder of a Claim or Equity Interest of each such Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive

10

or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

## VIII.     Section 1129(a)(8) - Acceptance of the Plan by Each Impaired Class

EE.     Pursuant to section 1129(a)(8) of the Bankruptcy Code, all classes of Claims and Equity Interests other than Class 5 have either accepted the Plan or are unimpaired. Specifically, Class 4, which is the only class entitled to vote on the Plan, overwhelmingly voted to accept the Plan. Classes 1-3 are unimpaired under the Plan and, therefore, are deemed to have accepted the Plan. Holders of claims in Class 5 will not receive or retain any property under the Plan and are deemed to have rejected the Plan. Accordingly, section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to all Classes other than Class 5. Nonetheless, as explained herein, the Plan satisfies the "cramdown" requirements of section 1129(b) of the Bankruptcy Code necessary to obtain Confirmation of the Plan, notwithstanding the deemed rejection by Class 5.

## IX.     Section 1129(a)(9) - Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

FF.     The Plan provides for the treatment of Administrative Claims, Priority Tax Claims, and Priority Claims as required by section 1129(a)(9) of the Bankruptcy Code.

## X.     Section 1129(a)(10) - Acceptance By at Least One Impaired, Non-Insider Class

GG.     As indicated in the Voting Affidavit and as reflected in the record of the Confirmation Hearing, Class 4 is impaired under the Plan and voted to accept the Plan. These results do not include the acceptance by any insider. In addition, none of the modifications made to the First Amended Plan, which are included in the Plan, adversely change the treatment of the claims of Class 4 creditors, so that pursuant to Bankruptcy Rule 3019(a), all of the Class 4 creditors who voted to accept the First Amended Plan shall be deemed to have accepted the Plan.

## XI.     Section 1129(a)(11) - Feasibility of the Plan

HH.     Because the Plan proposes a liquidation of all of the Debtor's remaining assets

11

and the distribution of Cash to holders of Allowed Claims in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## XII. Section 1129(a)(12) - Payment of Bankruptcy Fees

II. All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for the payment of all such fees on the Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code.

## XIII. Section 1129(a)(13) - Retiree Benefits

JJ. There are no Claims against the Debtor for payment of any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, and as required by section 1129(a)(13) of the Bankruptcy Code.

## XIV. Section 1129(a)(14) - Domestic Support Obligations

KK. The Debtor is not obligated to pay any domestic support obligations.

Accordingly, the requirements of section 1129(a)(14) of the Bankruptcy Code do not have to be met.

## XV. Section 1129(a)(15) - Payment of Unsecured Claims In Case of Individual Debtor

LL. The Debtor is not an individual. Accordingly, the requirements of

section 1129(a)(15) of the Bankruptcy Code do not have to be met.

## XVI. Section 1129(a)(16) - Restrictions on Transfers of Property of Nonprofit Entities

MM. The Debtor is not a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Accordingly, the Plan complies with section 1129(a)(16) of the Bankruptcy Code.

12

**XVII.** **Section 1129(b) - Confirmation of the Plan Over the Nonacceptance of Impaired Classes**

NN.     Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that Class 5 is impaired and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. With respect to the holders of interests in Class 5, the Plan does not discriminate unfairly and is fair and equitable within the meaning of section 1129(b)(2)(C)(ii) because there is no Class of holders of interests that is junior to Class 5 which will receive or retain any property under the Plan on account of such junior interests.

**XVIII.** **Section 1129(d) - Purpose of Plan**

OO.     The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, and there has been no filing by any governmental unit asserting such avoidance.

**XIX.** **Exemption of Certain Transfer Taxes**

PP.     The Debtor's sale of the Owned Real Property, generally, and 1533 Chestnut Street, Philadelphia, PA 19102 specifically, facilitates the implementation of the Plan and is necessary to the consummation of the Plan and the funding of distributions thereunder.

QQ.     The sale of the Owned Real Property generally, and 1533 Chestnut Street, Philadelphia, PA 19102 specifically, is found to be under the Plan for the purposes of section 1146(a) of the Bankruptcy Code and therefore the transfer of the Owned Real Property may not be taxed under any law imposing a stamp tax or similar tax, even if the Debtor or the Liquidation Trustee, as the case may be, proceeds to sell the Owned Real Property pursuant to section 363 of the Bankruptcy Code pursuant to a separate motion.

13

## II.

## CONCLUSIONS OF LAW

### A.    Confirmation of the Plan

1.     Pursuant to section 1129 of the Bankruptcy Code, the Plan and each of its provisions (whether or not specifically approved herein) is hereby CONFIRMED and the Plan Proponents are authorized and directed, without need for action by any directors, officers and/or shareholders, to implement the Plan in accordance with the terms thereof and to take any and all actions contemplated to be taken under the Plan.

2.     The Liquidation Trust Agreement, substantially in the form of Exhibit I.A.60. to the Plan, is approved in all respects, and the Debtor is authorized, without need for action by any directors, officers and/or shareholders, to implement the Liquidation Trust Agreement in accordance with the terms thereof and to take any and all actions contemplated to be taken under the Liquidation Trust Agreement.

3.     The Debtor is hereby authorized to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with section 1127 of the Bankruptcy Code and Section XII.E of the Plan.

4.     Any and all Objections to confirmation of the Plan that have not been withdrawn or consensually resolved are overruled.

5.     The record of the Confirmation Hearing is hereby closed.

46460/0002-6459146v6

**B.** **Plan Effectiveness**

6. The Plan shall become effective upon the satisfaction and/or waiver of the conditions set forth in Article VIII.A. of the Plan.

7. Upon the satisfaction or waiver of the conditions contained in Section VIII.A of the Plan and the occurrence of the Effective Date, substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur.

**C.** **Authority To Implement Plan and Vesting of Assets**

8. The Debtor, the Plan Proponents, the Liquidation Trustee and the Disbursing Agent and their respective representatives and agents, are hereby authorized and directed to take any and all actions reasonable and necessary to implement, and consistent with, the Plan.

**a.** **Creation of Liquidation Trust**

9. Immediately prior to the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of holding Liquidation Trust Assets, liquidating the Liquidation Trust Assets, resolving all Disputed Claims, making all distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan and administering the Estate. The Liquidation Trust is established for the sole purpose of liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to and consistent with its liquidating purpose.

10. Pursuant to section 1142 of the Bankruptcy Code, applicable state law (including Section 303 of the Delaware General Corporation Law) and other appropriate provisions of applicable state laws governing corporations or other legal Entities, and subject to and to the extent set forth in the Plan, this Confirmation Order, the Liquidation Trust Agreement or other

15

agreement (or any other order of this Court entered pursuant to or in furtherance hereof), the Liquidation Trust (and the Liquidation Trustee) shall be authorized and empowered to take any and all such actions as necessary or appropriate to implement, effectuate and consummate the Plan, the Liquidation Trust Agreement, this Confirmation Order or the transactions contemplated thereby or hereby.

## b. **Funding of the Liquidation Trust**

11. On the Effective Date and periodically thereafter if additional Liquidation Trust Assets become available, the Debtor shall be deemed to have automatically transferred to the Liquidation Trust all of its right, title, and interest in and to all of the Liquidation Trust Assets, and in accordance with Section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidation Trust free and clear of all Claims and Liens, subject to any liabilities of the Debtor or the Liquidation Trust payable from the proceeds of such assets as provided in the Liquidation Trust Agreement or the Plan. As of the Effective Date, the Liquidation Trustee shall be authorized but not required to execute and file on behalf of the Liquidation Trust beneficiaries Form UCC-3 Termination Statements or such other forms as may be necessary or appropriate to implement the provisions of Section IV of the Plan.

## c. **Liquidation Trustee**

12. Charles Reeves of FTI Consulting, Inc. is hereby approved as the Liquidation Trustee of the Liquidation Trust as of the Effective Date. The Liquidation Trustee shall be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights and responsibilities of the

16

Liquidation Trustee shall be as specified in the Liquidation Trust Agreement, the Plan and this Confirmation Order.

### d. Fees and Expenses of the Liquidation Trust

13. Except as otherwise ordered by this Court, Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets in accordance with the Plan and the Liquidation Trust Agreement.

### e. Professionals of the Liquidation Trust and Payments Thereto

14. The Liquidation Trustee, on behalf of the Liquidation Trust, may employ, without further order of this Court, professionals (including Professionals previously retained by the Committee) to assist in carrying out its duties. Without limiting the forgoing, the Liquidation Trustee is authorized to engage, FTI Consulting, Inc., Cole, Schotz, Meisel, Forman & Leonard, P.A. and Cooley Godward Kronish LLP.

15. The Liquidation Trustee may pay from the Liquidation Trust Assets in accordance with the Plan and the Liquidation Trust Agreement the reasonable fees and expenses that it incurs on or after the Effective Date for Liquidation Trust Expenses, including, without limitation, professionals' fees, disbursements, expenses or related support services (including fees related to the preparation of applications on account of Professional Fee Claims) without application to this Court in accordance with Article IV.B.3. of the Plan.

### f. No Revesting of Assets

16. Except with respect to the Retained Assets, the property of the Debtor's Estate shall not revest in the Debtor or any other person or entity on or after the Effective Date and will vest solely in the Liquidation Trust to be administered by the Liquidation Trustee in accordance with the Plan and the Liquidation Trust Agreement. On the Effective Date, the Retained Assets

17

shall vest in the Debtor for the purpose of liquidating the Estate and consummating the Plan. The Debtor may administer, use, acquire, convey, transfer, assign and/or dispose of any such Retained Assets free of any restrictions imposed under the Bankruptcy Code and otherwise consistent with the terms of the Plan.

g. **Creation of the Liquidation Trust Accounts**

17. The provisions relating to the Liquidation Trust Accounts contained in Article IV.A.2.a. of the Plan are approved in all respects. On or prior to the Effective Date, one or more Liquidation Trust Accounts shall be established and maintained in federally insured domestic banks in the name of the Liquidation Trustee or the Disbursing Agent.

D. **Distributions and the Disbursing Agent**

18. The provisions in Articles VI and VII of the Plan governing Distributions, Disputed Claims, and related matters are hereby approved and found to be fair and reasonable.

19. On the Effective Date, the transfers of assets by the Debtor contemplated by the Plan (a) shall be legal, valid and effective transfers of property, (b) vest or will vest in the transferee good title to such property free and clear of all Claims, Equity Interests and Liens, except those provided for in the Plan or this Confirmation Order, (c) do not or will not constitute fraudulent conveyances under any applicable law and (d) do not and will not subject the Debtor, the post Effective Date Debtor, the Liquidation Trustee and their respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns or property so transferred to any liability by reason of such transfer under applicable law or any theory of law.

20. Lawrence Sarf of Creditntell.com Inc. is hereby approved as the Disbursing Agent under the Plan. The Disbursing Agent is authorized to make all distributions of Cash required

18

under the Plan to holders of Allowed Claims against the Debtor. The Disbursing Agent shall not be required to serve with a bond or similar financial instrument unless otherwise required by (i) the Committee or the Oversight Committee, as applicable, or (ii) Final Order of the Bankruptcy Court. With the approval of the Oversight Committee, the Disbursing Agent may employ or contract with other entities to assist in or make the distributions required by the Plan.

21. The Disbursing Agent shall receive from the Liquidation Trust Assets, without further Bankruptcy Court approval, compensation in a base amount of $50,000 for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. In the event there are multiple distributions to General Unsecured Creditors, the Disbursing Agent shall receive an additional $25,000. These payments will not be deducted from Distributions (including any distributions of Cash Investment Yield) to be made pursuant to the Plan to holders of Allowed Claims receiving distributions from the Disbursing Agent.

**E.    Preservation of Causes of Action, Settlement of Claims and Controversies**

22. On the Effective Date, all Causes of Action, with the exception of (i) the Transferred Causes of Action, (ii) the Causes of Action related to or arising out of the Retained Assets, and (iii) any claim, right, interest or Cause of Action waived, relinquished, released, compromised or settled as provided in any Final Order, shall vest in the Liquidation Trust, which shall hold and possess all rights on behalf of the Debtor, its Estate and the Liquidation Trust to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation the Bankruptcy Code, and in any court or other tribunal). The Liquidation Trustee, on behalf of the Liquidation Trust, shall have the sole and exclusive right to commence, prosecute, pursue, settle, compromise or abandon such Causes of Action as set forth herein and in the Liquidation Trust Agreement.

19

23.     Unless a Cause of Action against any Person was expressly waived, relinquished, released, compromised or settled as provided or identified in the Plan or any Final Order, the Debtor (before the Effective Date) and the Liquidation Trustee, on behalf of the Liquidation Trust (post-Effective Date) have retained and reserved all Causes of Action for later adjudication and, therefore, no preclusion doctrine or other rule of law, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a result of the confirmation or Effective Date of the Plan, or this Confirmation Order. Further, the failure to identify in the Plan or Disclosure Statement any potential or existing Causes of Action generally or specifically does not limit the rights of the Debtor (before the Effective Date) and the Liquidation Trustee, on behalf of the Liquidation Trust (post-Effective Date) to pursue such action.

24.     Pursuant to Bankruptcy Rule 9019, the comprehensive settlement of claims and controversies pursuant to Article IV.D.2 of the Plan is approved in all respects and incorporated herein by reference. As of the Effective Date, the compromise or settlement of all claims or controversies pursuant to the Plan constitute a good faith compromise and settlement, is in the best interests of the Debtor, the Liquidation Trust, the Estate and their respective property and Claim and Equity Interest holders and is fair, equitable and reasonable.

### F.     **Injunction and Exculpation**

25.     The Injunction provision of the Plan, Article X.A. is hereby approved and incorporated herein by referenced as if fully restated herein.

26.     The Exculpation provision of the Plan, Article XII.D. is hereby approved and incorporated herein by referenced as if fully restated herein.

20

## G. Executory Contracts and Unexpired Leases and Bar Date for Rejection Claims

27. On the Effective Date, except (i) for the Executory Contracts or Unexpired Leases listed on Exhibit V.A. attached to the Plan, which Executory Contracts or Unexpired Leases shall be treated pursuant to the terms and conditions of the Sale Agreement, the Sale Order and any agreement by the Debtor and the non-Debtor party to an Unexpired Lease extending the Debtor's time to assume or reject such Unexpired Lease, and (ii) to the extent that the Debtor either (a) previously assumed and assigned or rejected (or terminated in accordance with its terms) an Executory Contract or Unexpired Lease pursuant to an order of this Court (if required), or (b) has filed a motion or Notice of Assumption (pursuant to Bankruptcy Court approved assumption procedures) to assume and assign or reject an Executory Contract or Unexpired Lease prior to the Effective Date (which this Court may consider and/or rule upon after confirmation of the Plan), each Executory Contract and Unexpired Lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms is deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.

28. Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to this Confirmation Order gives rise to a Claim by the other party or parties to such contract or lease, such rejection Claim will be forever barred and will not be enforceable against the Liquidation Trust unless a proof of Claim is Filed and served on the Plan Notice Parties listed in Section XII.I of the Plan no later than thirty (30) days after the Effective Date.

21

## H.  Second Administrative Claims Bar Date and Related Matters

### a.  Administrative Claims Bar Date

29.  Requests for payment of Administrative Claims arising on or after June 1, 2009

through and including the Effective Date must be Filed no later than thirty (30) days after the

Effective Date and served via regular mail on the following parties, which shall be referred to as

the "**Plan Notice Parties**":

**The Debtor:**

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD,
P.A.
Attn: Norman L. Pernick / Karen M. Grivner
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD,
P.A.
Attn: Irving E. Walker / Gary H. Leibowitz
300 East Lombard Street, Suite 2000
Baltimore, MD 21202

**The Liquidation Trustee:**

FTI CONSULTING, INC.
Attn: Charles Reeves
2001 Ross Avenue, Suite #400
Dallas, TX 75201

**The Claims Agent:**

RITZ CAMERA CENTERS, INC. CLAIMS
PROCESSING CENTER
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

**The Committee or the Oversight Committee:**

COOLEY GODWARD KRONISH LLP
Attn: Jay Indyke / Brent Weisenberg
1114 Avenue of the Americas
New York, NY 10036

BIFFERATO GENTILOTTI LLC
Attn: Garvan McDaniel
800 N. King Street
P.O. Box 2165
Wilmington, DE 19801

**The Disbursing Agent:**

CREDITNTELL.COM INC.
Attn: Lawrence Sarf
310 East Shore Road
Great Neck, NY 11023

46460/0002-6459146v6

30. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor, the Liquidation Trust or their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date.

### b. **Deadline to Objection to Administrative Claims**

31. Any objections to the allowance of Administrative Claims must be Filed and served on the requesting party no later than (i) one hundred and fifty (150) days after the Effective Date or (ii) one hundred and twenty (120) days after the date on which a request for payment of an Administrative Claim is filed with this Court (the "**Administrative Claim Objection Deadline**"). The Administrative Claim Objection Deadline may be extended for one thirty (30) day period by the Liquidation Trustee, by filing a notice of the extended Administrative Claim Objection Deadline with this Court. Thereafter, the Administrative Claim Objection Deadline may be further extended only by an order of this Court. If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim shall be deemed Allowed as of that date.

### c. **Professional Fee Claims**

32. Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must, unless previously Filed, File and serve on the Plan Notice Parties and such other entities who are designated in the Professional Fee Order, an application for final allowance of such Professional Fee Claim no later than sixty (60) days after the Effective Date; provided, however, that any Professional who receives compensation or

23

reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval (except as provided in the Ordinary Course Professionals Order).

     **I.**    **Notice of Confirmation Order, Effective Date and Related Matters**

33.    Notwithstanding Article XII.I.2. of the Plan, the Debtor shall not be required to serve notice of the entry of this Confirmation Order to all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing). Rather, within five (5) days of the occurrence of the Effective Date, the Plan Proponents shall file with this Court and serve on all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing) a written notice (the "**Effective Date Notice**") identifying, *inter alia*, the Effective Date and Administrative Claims Bar Date in the form substantially similar to that attached as **Exhibit "B"** hereto.

34.    From and after the date this Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with this Court prior to such date shall no longer be effective. No further notices (other than notice of the Effective Date) shall be required to be sent to any entities or persons, except for the Plan Notice Parties, the Office of the U.S. Trustee and any Creditor who files a renewed request for service of pleadings and whose Claim has not been fully satisfied.

     **J.**    **Retention of Jurisdiction**

35.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, pursuant to Article XI of the Plan, this Court shall retain such exclusive jurisdiction over the Bankruptcy Case and any matter related to the Bankruptcy Case after the

Effective Date as is legally permissible, including exclusive jurisdiction over the matters described in Article XI of the Plan. To the extent that it is not legally permissible for this Court to have exclusive jurisdiction over any of the matters described in Article XI of the Plan, this Court shall have nonexclusive jurisdiction over such matters to the extent legally permissible.

## K.   Dissolution of the Committee and Formation of the Oversight Committee

36.    On the Effective Date, immediately after the formation of the Oversight Committee, the Committee shall dissolve, and the members thereof shall be released and discharged from all duties and obligations arising from or related to their membership (except those duties or obligations which may arise from membership in the Oversight Committee). The Professionals retained by the Committee and the respective members thereof shall not be entitled to assert any Fee Claims for any services rendered or expenses incurred on behalf of the Committee after the Effective Date, except for fees for time spent and expenses incurred: (a) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.d.ii.A of the Plan; or (b) in connection with any appeal pending as of the Effective Date, including any appeal of this Confirmation Order.

37.    The Oversight Committee shall be formed on the Effective Date and shall initially consist of the members of the Committee. Members of the Oversight Committee may be added, removed or substituted from time to time, provided that all members of the Oversight Committee shall be persons or entities who were members of the Committee as of the Effective Date.

38.    The Oversight Committee is authorized to retain Cooley Godward Kronish LLP as counsel and such other professional persons previously retained by the Debtor and the

25

Committee as have previously been approved by this Court or as it deems necessary and appropriate, who shall be compensated from the Liquidation Trust Assets as set forth in the Plan.

39.　　The Oversight Committee shall have the powers and duties set forth in Article XII.B.2. of the Plan and the Liquidation Trust Agreement, and such powers and duties are incorporated herein by reference as if fully set forth herein. Without limiting the generality of the forgoing, the Oversight Committee may remove the Liquidation Trustee with or without cause at any time by majority vote. Such removal shall be effective thirty (30) days after the Oversight Committee's determination or as otherwise agreed to by the Oversight Committee, or after such shorter period (or immediately) as the Oversight Committee may direct for cause.

40.　　For so long as the Liquidation Trust shall continue, the Liquidation Trustee shall make regular reports to the Oversight Committee as and when required under the Liquidation Trust Agreement.

## L. Binding Effect of the Plan and Recourse Solely to Liquidation Trust Assets and the Retained Assets

41.　　In accordance with section 1141 of the Bankruptcy Code, immediately upon the entry of this Confirmation Order, the provisions of the Plan and this Confirmation Order shall be binding upon all Entities, including the Debtor, the Liquidation Trustee, the Committee, the Oversight Committee, any and all holders of Claims, demands or Equity Interests (irrespective of whether such Claims or Equity Interests are impaired under the Plan or whether the holders of such Claims or Equity Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any Person acquiring or receiving property under the Plan, any party to a contract or agreement with the Debtor, any lessor or lessee of property to or from the Debtor and any and all Entities who are parties to or are subject to the settlements, compromises, releases, waivers, discharges and injunctions described in the Plan and herein and the respective heirs, executors,

26

administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

42.    Except as otherwise provided in the Plan or in this Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made thereunder will be in exchange for and in complete satisfaction, discharge, release and/or termination of all existing debts and Claims and Equity Interests against or in the Debtor or any of its assets or properties of any kind, nature or description to the fullest extent permitted by section 1141 of the Bankruptcy Code. On the Effective Date, all existing Claims against the Debtor will be, and will be deemed to be, discharged and terminated, and all holders of Claims will be precluded and enjoined from asserting against the Debtor or any of its assets or properties, the Liquidation Trust or its assets, the Liquidation Trustee, the Disbursing Agent or the Oversight Committee any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred on or prior to the Effective Date, whether or not such holder has filed a proof of Claim.

## M.    Distribution Record Date

43.    Except as otherwise provided in a Final Order of this Court, the transferees of any Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date. The Disbursing Agent will have no obligation to recognize the transfer or sale of any Claim that occurs after 4:00 p.m. Wilmington Delaware time on the Distribution Record Date and will be entitled for all purposes herein to recognize and make distributions only to those holders who are holders of such Claims as of the close of business on the Distribution Record Date.

27

**N.    Resolution of IRS Informal Response**

44.    Notwithstanding any provision of the Plan, the Disclosure Statement, or the Liquidation Trust Agreement, the Liquidation Trustee shall make the election under Treasury Regulation § 1.468B-9(c)(2)(ii) to treat the Disputed Claim Reserve (as defined in the Liquidation Trust Agreement) as a "disputed ownership fund" for U.S. federal income tax purposes.  For the avoidance of doubt, the Liquidation Trustee shall not treat the Disputed Claim Reserve as a discrete trust taxed pursuant to section 641 et seq. of the Internal Revenue Code.

**O.    The Transfers Under the Plan are Governed by the Exemption Provided in Section 1146(a) of the Bankruptcy Code**

45.    Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax or similar tax:  (1) any Liquidating Transactions, including, but not limited to, the sale and/or transfer of 1533 Chestnut Street, Philadelphia, PA 19102, specifically, and the Owned Real Property, generally, which sales shall be deemed to have been made under, in furtherance of, or in connection with the Plan regardless of whether such sales and/or transfers are made by separate motion pursuant to section 363 of the Bankruptcy Code; (2) the transfer to the Liquidation Trust of any Liquidation Trust Assets at any time; (3) the execution and implementation of the Liquidation Trust Agreement, including any transfers to or by the Liquidation Trust; (4) the vesting of the Retained Assets in the Debtor after the Effective Date; or (5) the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, disposition, liquidation or dissolution executed in connection with any transaction pursuant to the Plan.

28

**P.    Miscellaneous Provisions**

46.    This Confirmation Order shall be deemed to constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other documents, instruments or agreements (and any amendments or modifications thereto) and any other acts referred to in, or contemplated by, the Plan or the Disclosure Statement.

47.    All Entities holding Claims against and Interests in the Debtor that are dealt with under the Plan are hereby directed to execute, deliver, file and record any document, and to take any action necessary or appropriate to implement, consummate and otherwise effect the Plan in accordance with its terms in all material respects, and all such Persons shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

48.    The appropriate state and/or local governmental officials are hereby directed, upon the presentation of a copy of this Confirmation Order, to terminate the filings evidencing any security interests against any property of the Debtor deemed released pursuant to the Plan. In the event that a state or local government official cannot readily determine whether it is appropriate to release such security interest, the Debtor shall bring the matter before this Court for determination and this Court hereby retains jurisdiction to resolve any such question or dispute and to enforce the foregoing directions.

49.    The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as

29

every other provision of the Plan and shall be deemed incorporated by reference into this Confirmation Order.

50.   If any or all of the provisions of this Confirmation Order are hereafter modified, vacated or reversed by subsequent order of this or any other court, such reversal, modification or vacation shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order, nor shall such reversal, modification or vacation of this Confirmation Order affect the validity or enforceability of such act or such obligations. Notwithstanding any reversal, modification or vacation of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the Effective Date of such reversal, modification or vacation shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all documents, instruments and agreements related thereto or any amendments or modifications thereto.

51.   In the event of any inconsistency between the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern.  Except with respect to the Sale Order, this Confirmation Order shall supersede any orders of this Court issued prior to the Effective Date that may be inconsistent herewith.

52.   The provisions of Rules 3020(e) and 7062 of the Federal Rules of Bankruptcy Procedure shall not apply, and this Confirmation Order shall take effect immediately and shall not be stayed.

Dated: April 20, 2010
      Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

30

46460/0002-6459146v6