# EXHIBIT "A"

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------X

In re:

RCC LIQUIDATING CORP. f/k/a Ritz Camera
Centers, Inc.,

Debtor.

Chapter 11

Case No.: 09-10617 (MFW)

-------------------------------------------------------------X

### SECOND AMENDED JOINT PLAN OF LIQUIDATION UNDER
### CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE
### PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS, DATED APRIL 13, 2010

Dated: April 13, 2010

Counsel for Debtor and Debtor in
Possession:

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.
Norman L. Pernick (No. 2290)
Karen M. Grivner (4372)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.
Irving E. Walker
Gary H. Leibowitz
300 East Lombard Street, Suite 2000
Baltimore, MD 21202
Telephone: (410) 230-0660
Facsimile: (410) 230-0667

Counsel for the Official Committee of Unsecured
Creditors:

COOLEY GODWARD KRONISH LLP
Jay Indyke
Cathy Hershcopf
Brent Weisenberg
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

BIFFERATO GENTILOTTI LLC
Garvan McDaniel
800 N. King Street
P.O. Box 2165
Wilmington, DE 19801
Telephone: (302) 429-1900
Facsimile: (302) 429-8600

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME..............................................................................1

    A.    Defined Terms .................................................................................................1

    B.    Rules of Interpretation and Computation of Time.......................................14

          1.    Rules of Interpretation .................................................................14

          2.    Computation of Time...................................................................14

ARTICLE II CLASSES OF CLAIMS AND EQUITY INTERESTS ...............................14

ARTICLE III TREATMENT OF CLAIMS AND EQUITY INTERESTS......................15

    A.    Unclassified Claims ......................................................................................15

          1.    Administrative Claims ................................................................15

          2.    Priority Tax Claims......................................................................17

    B.    Classified Claims and Equity Interests .......................................................17

          1.    Class 1 Claims (Lenders' Secured Claims) are unimpaired ..........17

          2.    Class 2 Claims (Other Secured Claims) are unimpaired ..............17

          3.    Class 3 Claims (Priority Claims) are unimpaired ..........................18

          4.    Class 4 Claims (General Unsecured Claims) are impaired...........18

          5.    Class 5 Equity Interests (Old Common Stock Interests) are
impaired .....................................................................................18

ARTICLE IV MEANS FOR IMPLEMENTATION OF THIS PLAN ............................18

    A.    Establishment of Liquidation Trust and Continued Existence of
Debtor ..........................................................................................................18

          1.    The Liquidation Trust ..................................................................18

          2.    Funding of the Liquidation Trust and Trust Accounts .................19

          3.    Limited Vesting of Assets in Post-Effective Date Debtor
and Liquidating Transactions.........................................................20

    B.    The Liquidation Trustee................................................................................20

          1.    Liquidation Trustee......................................................................20

          2.    General Powers of the Liquidation Trustee ....................................21

          3.    Payment of Liquidation Trust Expenses........................................22

          4.    Reports to be Filed by the Liquidation Trustee .............................22

          5.    Indemnification ...........................................................................22

|  | 6. | Tax Treatment | 22 |
|---|---|---|---|
| C. | | Employment-Related Agreements | 23 |
| | 1. | Termination of All Employee and Workers' Compensation Benefits | 23 |
| D. | | Effect of Confirmation of this Plan | 23 |
| | 1. | Recourse Solely to Liquidation Trust Accounts and the Retained Assets | 23 |
| | 2. | Comprehensive Settlement of Claims and Controversies | 24 |
| E. | | Special Provisions Regarding Insured Claims | 24 |
| F. | | Release of Liens | 24 |
| G. | | Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes | 24 |

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......25

| A. | Executory Contracts and Unexpired Leases to Be Rejected | 25 |
|---|---|---|
| B. | Bar Date for Rejection Claims | 25 |
| C. | Executory Contracts and Unexpired Leases Not Rejected Pursuant to this Plan | 25 |
| D. | Reservation of Rights with Respect to the Debtor's Insurance Policies | 26 |

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS .......26

| A. | | Method of Distributions to Holders of Allowed Claims | 26 |
|---|---|---|---|
| B. | | Compensation and Reimbursement for Services Related to Distributions and Cash Investment Yield | 26 |
| | 1. | Compensation and Reimbursement | 26 |
| | 2. | Investment of Cash Related to Distributions | 26 |
| C. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 27 |
| | 1. | Delivery of Distributions to Holders of Allowed Claims | 27 |
| | 2. | Undeliverable Distributions Held by Disbursing Agent | 27 |
| D. | | Distribution Record Date | 27 |
| E. | | Means of Cash Payments | 28 |
| F. | | Timing and Calculation of Amounts to Be Distributed | 28 |
| | 1. | Allowed Claims | 28 |
| | 2. | De Minimis Distributions | 28 |

|  |  | 3. | Compliance with Tax Requirements; Responsibility for Taxes | 28 |

     G.     Surrender of Canceled Instruments or Securities ....................................29

     H.     Setoffs .......................................................................................................29

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ....................29

     A.     Treatment of Disputed Claims ...................................................................29

              1.     Tort Claims ....................................................................................29

              2.     Disputed Insured Claims .................................................................30

              3.     Estimation of Claims ......................................................................31

     B.     Prosecution of Objections to Claims ..........................................................31

              1.     Objections to Claims ......................................................................31

               2.     Authority to Prosecute Objections ..................................................31

     C.     Treatment of Disputed Claims ...................................................................32

              1.     Partial Distributions Pending Allowance .........................................32

              2.     Recourse ........................................................................................32

              3.     Authority to Amend Schedules ........................................................32

              4.     Distributions on Account of Disputed Claims Once Allowed ..........................................................................................32

ARTICLE VIII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE AND CONSUMMATION OF THIS PLAN .........................................................32

     A.     Conditions to the Effective Date ...............................................................32

     B.     Waiver of Conditions to the Effective Date ................................................33

     C.     Effect of Nonoccurrence of Conditions to the Effective Date ....................33

ARTICLE IX CRAMDOWN ..........................................................................................33

ARTICLE X INJUNCTION AND SUBORDINATION RIGHTS ....................................33

     A.     Injunction ..................................................................................................33

     B.     Subordination Rights .................................................................................34

     C.     Automatic Stay ..........................................................................................34

ARTICLE XI RETENTION OF JURISDICTION ............................................................34

ARTICLE XII MISCELLANEOUS PROVISIONS .........................................................36

     A.     Preservation of All Causes of Action Not Expressly Settled or Released ...................................................................................................36

     B.     Dissolution of the Committee; Oversight Committee ................................37

              1.     Dissolution of the Committee ..........................................................37

|   |   | 2. | The Oversight Committee | 37 |
| C. | | | Termination of Ordinary Course Professionals | 38 |
| D. | | | Exculpation | 38 |
| E. | | | Modification of this Plan | 39 |
| F. | | | Revocation of this Plan | 39 |
| G. | | | Successors and Assigns | 39 |
| H. | | | Service of Certain Plan and Disclosure Statement Exhibits | 39 |
| I. | | | Notices | 39 |

46460/0002-6457323v4

## INTRODUCTION

RCC LIQUIDATING CORP., f/k/a Ritz Camera Centers, Inc., and its official committee of unsecured creditors, propose the following joint plan of liquidation for the resolution of the outstanding claims against and equity interests in the Debtor. The Debtor (hereinafter defined) and the Committee (hereinafter defined) are co-proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (hereinafter defined) for a discussion of the Debtor's history, businesses, assets, and other pertinent information, and for a summary and analysis of this Plan. There also are other agreements and documents, which are or shall be filed with the United States Bankruptcy Court for the District of Delaware, that are referenced in this Plan or the Disclosure Statement and that shall be available for review.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### A.    Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each term is defined below), shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.    "**Additional Collateral Agreement**" means that *Additional Collateral Agreement* by and between the Debtor and the Purchaser, dated July 24, 2009.

2.    "**Administrative Claim**" means a Claim for costs and expenses of administration allowed under sections 503(b), 503(c), 507(a) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; (c) Claims pursuant to section 503(b)(9) of the Bankruptcy Code for the value of goods received by the Debtor in the 20 days immediately prior to the Petition Date and sold to the Debtor in the ordinary course of the Debtor's businesses; (d) Reclamation Claims; (e) all U.S. Trustee Fees; (f) Gift Card Claims on account of Gift Cards purchased after the Petition Date; and (g) Boater's World ESP Claims on account of Boater's World ESPs purchased after the Petition Date.

3.    "**Allowed . . . Claim**" means an Allowed Claim in the particular Class or category specified. Any reference herein to a particular Allowed Claim includes both the secured and unsecured portions of such Claim.

4.    "**Allowed Claim**" means:

a.      a Claim that (i) has been listed by the Debtor on its Schedules as non-disputed, non-contingent and liquidated and (ii) is not a Disputed Claim;

b.      a Claim (i) for which a proof of Claim or request for payment of Administrative Claim (or similar request) has been Filed by the applicable Bar Date or otherwise has been deemed timely Filed under applicable law and (ii) that is not a Disputed Claim;

c.      a Reclamation Claim (i) for which a (a) timely demand for reclamation has been made in accordance with section 546(c) of the Bankruptcy Code and/or section 2-702 of the Uniform Commercial Code or other applicable state law and (b) proof of Claim or request for payment of an Administrative Claim has been Filed by the applicable Bar Date, and (ii) that is not a Disputed Claim;

d.      a Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by or on behalf of (a) the Debtor and Claim holder, or, if entered into on or after the Effective Date, (b) the Liquidation Trustee and such Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with this Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) pursuant to a Final Order; or (iv) pursuant to the terms of this Plan; or

e.      a Claim that the Debtor or the Liquidation Trust, as the case may be, determines prior to the Claims Objection Bar Date (i) should not be subject to an objection or to an amendment to the Schedules and (ii) should be satisfied in accordance with the terms of this Plan on or after the Effective Date.

5.      "**Ballot**" means the form distributed to each holder of an impaired Claim entitled to vote on this Plan on which the holder may indicate acceptance or rejection of this Plan or any election for treatment of such Claim under this Plan.

6.      "**Bankruptcy Case**" means the Chapter 11 case of the Debtor, administered under Case No. 09-10617 (MFW), which case is currently pending in the Bankruptcy Court.

7.      "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended, applicable to the Bankruptcy Case.

8.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

9.      "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, applicable to the Bankruptcy Case.

10.     "**Bar Date Order**" means that certain order dated June 29, 2009 establishing August 3, 2009 at 5:00 p.m. (PT) as the bar date both for (i) filing proofs of Claim against the Debtor's Estate, and (ii) filing applications for allowance of

2

Administrative Claims arising between February 22, 2009 through and including May 31, 2009, as the same may be amended, modified and supplemented.

11. "**Bar Date**" means the applicable bar date by which a proof of Claim or request for payment of Administrative Claim must be or must have been Filed, as established by an order of the Bankruptcy Court, including the Bar Date Order, the Confirmation Order and if applicable, the Customer Claims / Employee Bar Date Order.

12. "**Boater's World ESP Claim**" means any Claim Filed on account of a Boater's World ESP issued by the Debtor, prior to, or after, the Petition Date, and not honored by the Debtor.

13. "**Boater's World ESP**" means an extended service plan issued by the Debtor in connection with its Boater's World business, including, but not limited to, an extended service plan issued in connection with boating and fishing accessories, prior to, or after, the Petition Date.

14. "**Borrowers**" means, collectively, the Debtor, Ray Enterprises and Mufungo.

15. "**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16. "**Cash Investment Yield**" means the net yield from the investment of Cash, if any, held in a Liquidation Trust Account pending distribution pursuant to this Plan. Any such investment will be in a manner consistent with the provisions of the Liquidation Trust Agreement. Net yield means the cash yield net of any investment and other expenses and taxes payable thereon.

17. "**Cash**" means legal tender of the United States of America and equivalents thereof.

18. "**Causes of Action**" means, other than any and all Transferred Causes of Action, any and all claims, actions, adversary proceedings, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, whether or not scheduled as an asset of the Debtor, disputed or undisputed, legal or equitable, absolute or contingent, that are already pending or that have accrued or are accruing to the Debtor or the Estate, or that may be pursued derivatively by or on behalf of the Debtor or the Estate.

19. "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

20. "**Claims Agent**" means Kurtzman Carson Consultants LLC.

21. "**Claims Objection Bar Date**" means, for all Claims, other than Administrative Claims, one hundred and twenty (120) days after the later of the Effective Date or

3

the date on which a proof of Claim is filed with the Bankruptcy Court, which deadline may be extended by the Liquidation Trustee for one thirty (30) day period by filing a notice of the extended Claims Objection Bar Date with the Bankruptcy Court. Thereafter, the Claims Objection Bar Date may be further extended only by an order of the Bankruptcy Court.

22. **"Class"** means a class of Claims or Equity Interests, as described in Article II.

23. **"Collateral"** means any property or interest in property, whether tangible, intangible or otherwise, pledged by the Debtor to a creditor as security for a Secured Claim.

24. **"Committee"** means the official committee of unsecured creditors of the Debtor appointed by the United States Trustee in the Bankruptcy Case pursuant to section 1102 of the Bankruptcy Code, as such Committee may be reconstituted from time to time.

25. **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

26. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

27. **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

28. **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

29. **"Cure Amount Claim"** means a Claim based upon the Debtor's monetary defaults under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under section 365 of the Bankruptcy Code.

30. **"Customer Claims / Employee Bar Date Order"** any order entered by the Bankruptcy Court establishing the Customer Claims / Employee Bar Date.

31. **"Customer Claims / Employee Bar Date"** means any deadline established by the Bankruptcy Court by which (i) holders of (a) unredeemed Gift Cards must File a Gift Card Claim and (b) a Boater's World ESP not yet honored by the Debtor or the Purchaser must file an ESP Claim, and/or (ii) employees of the Debtor employed by the Debtor on the Petition Date not served with notice of the Bar Date Order must file a Claim.

4

32.    "**Debtor**" means the above-captioned debtor and debtor in possession specifically identified on the cover page to this Plan.

33.    "**Disallowed**" when used with respect to a Claim, means a Claim that has been disallowed by a Final Order; provided, however, that because the Purchaser agreed to honor Ritz ESP Claims, holders of such Claims shall not be entitled to any distribution under the Plan and all Claims filed against the Debtor on account of such Claims shall be Disallowed; provided further, however, that N.E.W. ESP Claims shall not be entitled to any distribution under the Plan and all Claims filed against the Debtor on account of such Claims shall be Disallowed.

34.    "**Disbursing Agent**" means Lawrence Sarf of Creditntell.com Inc. or any third party designated by the Oversight Committee, in its sole discretion, to serve as a disbursing agent under this Plan.

35.    "**Disclosure Statement**" means the disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

36.    "**Disputed Claim**" means:

a.    if no proof of Claim or request for payment of Administrative Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on the Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on the Debtor's Schedules;

b.    if a proof of Claim or request for payment of Administrative Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection, complaint or request for estimation has been Filed by the Debtor or, after the Effective Date, the Liquidation Trustee or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied in its entirety by a Final Order;

c.    a Claim for which a proof of Claim or request for payment of Administrative Claim is required to be Filed under this Plan and no such proof of Claim or request for payment of Administrative Claim is timely Filed;

d.    a Tort Claim; or

e.    any Reclamation Claim that fails to satisfy the conditions for allowance set forth in Section I.4.c.(i) or for which an objection, complaint or request for estimation has been Filed by the Debtor or, after the Effective Date, the Liquidation Trustee or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied in its entirety by a Final Order.

5

37.    "**Disputed Insured Claim**" means an Insured Claim that also is a Disputed Claim.

38.    "**Distributable Cash**" means all Liquidation Trust Assets in the form of Cash as of any Distribution Date after (i) payment of Liquidation Trust Expenses and unpaid, Administrative Claims and Allowed Secured Claims and Allowed Priority Tax Claims and (ii) the imposition of such reserves as the Liquidation Trustee deems appropriate, including, without limitation, reserves for Liquidation Trust Expenses and Disputed Claims, as provided for in the Liquidation Trust Agreement.

39.    "**Distribution Date**" means each date established by the Liquidation Trustee, at the direction of the Oversight Committee, for the delivery of a distribution to holders of Allowed (or partially Allowed) General Unsecured Claims; provided, however, that the first Distribution Date shall occur as soon as reasonably practicable after the Effective Date.

40.    "**Distribution Record Date**" means the Confirmation Date.

41.    "**Document Website**" means the internet site address www.kccllc.net/RitzCamera at which all of the Exhibits and Schedules to this Plan and the Disclosure Statement shall be available, without charge, to any party in interest and the public through the Effective Date.

42.    "**Effective Date**" means a day designated by the Plan Proponents that is a Business Day no earlier than the date on which all conditions to the effectiveness of this Plan set forth in Section VIII.A have been met or waived in accordance with Section VIII.B.

43.    "**Equity Interest**" means the rights and interests of the holders of the Old Common Stock of the Debtor, any other instruments evidencing an ownership interest in the Debtor and the rights of any entity to purchase or demand the issuance of any of the foregoing, including: (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends); (b) liquidation preferences; and (c) stock options and warrants.

44.    "**ESP Claim**" means collectively, a Ritz ESP Claim and a Boater's World ESP Claim.

45.    "**ESP**" means collectively, a Ritz ESP and a Boater's World ESP.

46.    "**Estate**" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Case.

47.    "**Exculpated Parties**" means, collectively and individually, the Debtor, the Liquidation Trustee, the Liquidation Trust, the Committee and its members

6

(solely in their capacity as such), the Oversight Committee and its members (solely in their capacity as such), the Disbursing Agent (solely in such capacity) and the Representatives of each of the foregoing.

48. "**Executory Contract or Unexpired Lease**" means a prepetition contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

49. "**Exhibit(s)**" means the exhibits to this Plan as identified on the Table of Exhibits, as the same may be amended, modified or supplemented.

50. "**File**" "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

51. "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

52. "**General Unsecured Claim**" means any Claim that is not a Secured Claim, Administrative Claim, Priority Tax Claim or Priority Claim. For the avoidance of doubt, Gift Card Claims and Boater's World ESP Claims on account of Gift Cards and Boater's World ESPs purchased prior to the Petition Date shall be classified as General Unsecured Claims.

53. "**Gift Card Claim**" means any Claim Filed on account of an unredeemed Gift Card.

54. "**Gift Card**" means any prepaid card issued by the Debtor, prior to, or after, the Petition Date, enabling the holder of the card to purchase goods or services up to the value of the card at one of the Debtor's retail locations.

55. "**Insured Claim**" means that portion of any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtor or its businesses.

56. "**Lenders**" means Wachovia Bank, National Association and the other financial institutions that are a party to the (i) Loan and Security Agreement dated October

7

25, 2007 and (ii) Ratification and Amendment Agreement dated as of February 23, 2009 with the Debtor, Ray Enterprises, and Mufungo.

57. "**Liens**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

58. "**Liquidating Transactions**" means certain transactions necessary to effect consummation of this Plan and set forth in Section IV.A.3. hereof.

59. "**Liquidation Trust Account(s)**" means one or more accounts established by the Liquidation Trustee to hold Liquidation Trust Assets (at least one of which shall be established before the Effective Date) and to fund the distribution of the Liquidation Trust Assets or the proceeds thereof to holders of Allowed Claims against the Debtor or to otherwise carry out the purposes of this Plan.

60. "**Liquidation Trust Agreement**" means the trust agreement, to be dated as of the Effective Date, among the Debtor, the Oversight Committee and the Liquidation Trustee, governing the Liquidation Trust, which shall be substantially in the form of **Exhibit I.A.60.**

61. "**Liquidation Trust Assets**" means any and all assets of the Debtor, as of the Effective Date, other than the Old Common Stock and the Retained Assets, including, without limitation, (i) all Cash on hand, (ii) all accounts receivable, notes receivable and other receivables of the Debtor, including, without limitation, any payments on credit card charges not transferred to the Purchaser under the Sale Agreement, (iii) all of the Debtor's ownership rights and equity interests in Mufungo, Ray Enterprises, and Boat House at Boater's World, LLC (other than the intellectual property related to "Boater's World Marine Centers" as referenced in Section 2.1(b)(viii) of the Sale Agreement), (iv) the Owned Real Property, (v) all of the Debtor's rights under the Sale Agreement and the Sale Order, including, but not limited to, the Debtor's rights under the Purchaser Note, the Security Agreement, the Additional Collateral Agreement, and the Mortgage, (vi) all Executory Contracts or Unexpired Leases not rejected pursuant to this Plan, (vii) any Tax Refund, (viii) any payments due on account of any Sale Agreement Reimbursement Obligation, (ix) all Causes of Action of the Debtor (other than the Transferred Causes of Action), and (x) all proceeds of, and any right or claim of the Debtor on account of, the foregoing and all proceeds of any of the foregoing received by any person or Entity on or after the Effective Date.

62. "**Liquidation Trust Beneficiary**" shall have the meaning ascribed to such term in the Liquidation Trust Agreement.

63. "**Liquidation Trust Expenses**" means any and all reasonable fees, costs and expenses incurred by the Liquidation Trust, the Liquidation Trustee, the

8

73.     **"Other Secured Claims"** means Secured Claims, including Priority Tax Claims that are secured by a Lien on property in which the Estate has an interest, excluding the Lenders' Secured Claims.

74.     **"Oversight Committee"** means the Committee comprised of former members of the Committee pursuant to Section XII.A. of this Plan to oversee the activities of the Liquidation Trustee and the affairs of the Liquidation Trust.

75.     **"Owned Real Property"** means all real property owned by the Debtor which was not transferred to the Purchaser under the Sale Agreement, together with all buildings and other structures, facilities or improvements currently or hereafter located thereon, all fixtures, systems, equipment (other than photo-processing equipment) and items of personal property of the Debtor attached or appurtenant thereto and all easements, licenses, rights and appurtenances relating to the foregoing.

76.     **"Petition Date"** means February 22, 2009.

77.     **"Plan Notice Parties"** means those parties set forth in Section XII.I.1. of this Plan.

78.     **"Plan Objection Deadline"** means April 9, 2010 at 5:00 p.m. or such other date as may be set by the Bankruptcy Court for filing an objection to confirmation of the Plan.

79.     **"Plan Proponents"** means, collectively, the Debtor and the Committee.

80.     **"Plan"** means this joint plan of liquidation and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented.

81.     **"Priority Claim"** means an unsecured Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

82.     **"Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

83.     **"Pro Rata"** means, when used in reference to a distribution of property pursuant to Article VI to holders of Allowed Claims in a particular Class or other specified group of Claims, a proportionate distribution so that with respect to a particular partially or fully Allowed Claim in such Class or group of Claims, after giving effect to all prior distributions from the Liquidation Trust, the ratio of (a)(i) the amount of property distributed on account of the Allowed portion of such Claim to (ii) the total amount of the Allowed portion of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all fully or partially Allowed Claims in such Class or group of Claims to (ii) the aggregate total

10

Disbursing Agent and any person, Entity or professional engaged by the Liquidation Trustee on or after the Effective Date in connection with any of their duties under this Plan and the Liquidation Trust Agreement, including any administrative fees, attorneys' fees and expenses, financial advisory fees and expenses, insurance fees, taxes and escrow expenses, including, but not limited to, the reasonable costs and expenses of the Oversight Committee, including reasonable professional fees and the reasonable out-of-pocket expenses of members of the Oversight Committee.

64. "**Liquidation Trust**" means the trust established pursuant to Section IV.A. of this Plan, to, among other things, hold the Liquidation Trust Assets and make distributions on account of Claims pursuant to Article VI.

65. "**Liquidation Trustee**" means Charles Reeves of FTI Consulting, Inc. or such other party that may be selected by the Committee no less than ten (10) days prior to the Voting Deadline or the Oversight Committee on or after the Effective Date pursuant to the Liquidation Trust Agreement.

66. "**Mortgage**" means that *Mortgage, Assignment of Lease and Rents and Security Agreement*, granted by the Purchaser to the Debtor as of July 24, 2009, as it may be or has been amended and/or supplemented by mutual agreement of the Debtor, the Purchaser and the Committee.

67. "**Mufungo**" means Mufungo, LLC.

68. "**N.E.W. ESP Claim**" means any Claim Filed on account of a N.E.W. ESP issued by the Debtor, prior to, or after, the Petition Date, and not honored by the Debtor.

69. "**N.E.W. ESP**" means an ESP issued by the Debtor (i) in the states of Florida, New York and Oregon and (ii) for televisions sold by the Debtor wherein N.E.W. Customer Service Companies, Inc. is the service provider for such ESP.

70. "**Old Common Stock**" means the common stock, membership interests, partnership interests or similar ownership interests, including options, warrants or rights to acquire or convert any such interests, issued by the Debtor and outstanding immediately prior to the Petition Date.

71. "**Ordinary Course Professionals Order**" means the *Order Authorizing the Debtor to Retain and Employ Professionals Utilized in the Ordinary Course of Business Nunc Pro Tunc to April 20, 2009* (Docket No. 670), entered by the Bankruptcy Court on June 24, 2009.

72. "**Ordinary Course Professionals**" means Professionals retained by the Debtor pursuant to the Ordinary Course Professionals Order.

9

amount of the Allowed portions of all Allowed Claims in such Class or group of Claims.

84.    "**Professional Fee Claim**" means a Claim against the Debtor under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Bankruptcy Case.

85.    "**Professional Fee Order**" means the *Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals* (Docket No. 259), entered by the Bankruptcy Court on March 19, 2009.

86.    "**Professional**" means any professional employed in the Bankruptcy Case pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses from the Debtor in connection with the Bankruptcy Case pursuant to section 503(b)(4) of the Bankruptcy Code.

87.    "**Purchaser Note**" means that certain *Secured Promissory Note* dated July 24, 2009 in the face amount of $8,093,271.26 by and between the Purchaser, as payor, and the Debtor, as payee, as it may be or has been amended and/or supplemented by mutual agreement of the Debtor, the Purchaser and the Committee.

88.    "**Purchaser**" means RCI Acquisition, Inc., a Delaware limited liability company.

89.    "**Ray Enterprises**" means Ray Enterprises, LLC.

90.    "**Reclamation Claim**" means a Claim for reclamation in accordance with section 546(c) of the Bankruptcy Code and/or section 2-702 of the Uniform Commercial Code or other applicable state law. Reclamation Claims shall be treated under the Plan as Administrative Claims.

91.    "**Representatives**" means, with respect to any entity: successor, predecessor, officer, director, partner, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other Professional of such entity, and committee of which such entity is a member, in each case in such capacity, serving on or after the Petition Date.

92.    "**Retained Assets**" means the property and assets, and all rights, claims and Causes of Action arising out of or related thereto, of the Debtor set forth in **Exhibit 1.A.92**, attached hereto, as it may be amended prior to entry of the Confirmation Order.

93.    "**Ritz ESP Claim**" means any Claim Filed on account of a Ritz ESP issued by the Debtor, prior to, or after, the Petition Date, and not yet honored by the Debtor or the Purchaser.

11

94. "**Ritz ESP**" means an extended service plan issued by the Debtor in connection with its Ritz Camera business, including, but not limited to, an extended service plan sold in connection with cameras and electronics, prior to, or after, the Petition Date.

95. "**Sale Agreement Reimbursement Obligations**" means the obligations of the Purchaser to pay, subject to certain caps, certain expenses of the Debtor, as provided for in the Sale Agreement.

96. "**Sale Agreement**" means that certain Asset Purchase Agreement by and between the Debtor and the Purchaser, dated as of July 23, 2009, as it may be or has been amended and/or supplemented by mutual agreement of the Debtor, the Purchaser and the Committee.

97. "**Sale Effective Date**" means July 24, 2009.

98. "**Sale Order**" means that certain *Order Approving Sale of Substantially All of the Debtor's Assets and Granting Related Relief*, dated July 23, 2009 (Docket No. 837), which approved the Sale.

99. "**Sale**" means the sale of substantially all of the Debtor's assets free and clear of all Liens to the Purchaser, which sale closed on July 24, 2009.

100. "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtor, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

101. "**Secured Claim**" means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

102. "**Security Agreement**" means that *Security Agreement*, by and between the Debtor and the Purchaser, dated July 24, 2009, as it may be or has been amended and/or supplemented by mutual agreement of the Debtor, the Purchaser and the Committee.

103. "**Stipulation of Amount and Nature of Claim**" means a stipulation or other agreement between the Debtor or, after the Effective Date, the Liquidation Trustee and a holder of a Claim or Equity Interest, or an agreed order of the Bankruptcy Court, establishing the Allowed amount and nature of a Claim or Equity Interest.

104. "**Subordinated Claim**" means any Claim subordinated by Final Order pursuant to sections 510(b) or 510(c) of the Bankruptcy Code.

12

105. "**Tax Refund**" means any refund on account of any Taxes paid by the Debtor at any time prior to the Effective Date, any right to receive any such refund, and all proceeds of the foregoing.

106. "**Tax**" means (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state or local taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

107. "**Termination Agreement**" means that Release and Termination Agreement dated July 28, 2009, by and among the Debtor, the Lenders, Ray Enterprises, and Mufungo.

108. "**Tort Claim**" means any Claim that has not been settled, compromised or otherwise resolved that: (a) is a tort or other similar claim and/or arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, employment, civil rights, hazardous substances or the environment.

109. "**Transferred Causes of Action**" means any and all of the Debtor's causes of action which were transferred to the Purchaser in accordance with the Sale Order and Sale Agreement. Transferred Causes of Action include, without limitation, all causes of action under Chapter 5 of the Bankruptcy Code against the Debtor's creditors, which the Purchaser covenanted and agreed not to pursue.

110. "**U.S. Trustee Fees**" means all fees and charges assessed against the Estate by the United States Trustee and due pursuant to section 1930 of title 28 of the United States Code.

111. "**Uninsured Claim**" means any Claim that is not an Insured Claim.

112. "**United States Trustee**" means the Office of the United States Trustee for the District of Delaware.

113. "**Voting Deadline**" means the deadline for submitting Ballots to either accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code that is specified in the Disclosure Statement, the Ballots or related solicitation documents approved by the Bankruptcy Court.

13

## B. Rules of Interpretation and Computation of Time

### 1. Rules of Interpretation

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan or Confirmation Order; (d) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors, assigns and affiliates; (e) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, bylaws, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

### 2. Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## CLASSES OF CLAIMS AND EQUITY INTERESTS

All Claims and Equity Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Section III.A, have not been classified and thus are excluded from the following Classes. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes. Claims against and Equity Interests in the Debtor are divided into the following Classes:

**Class 1 (Lenders' Secured Claims).** Secured Claims of the Lenders against the Debtor.

**Class 2 (Other Secured Claims).** Secured Claims other than the Lenders' Secured Claims against the Debtor.

14

**Class 3 (Priority Claims)**.  Unsecured Claims against the Debtor that are entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Claims and Priority Tax Claims.

**Class 4 (General Unsecured Claims)**.  General Unsecured Claims against the Debtor.

**Class 5 (Equity Interests)**.  Equity Interests in the Debtor.

## ARTICLE III
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

A. **Unclassified Claims**

1. **Administrative Claims**

a. **Payment of Administrative Claims**

Except as specified in this Section III.A.1, and subject to the Bar Date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the Debtor or, after the Effective Date, the Liquidation Trustee, or unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim shall receive from the Liquidation Trust, in full satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim either (i) as soon as reasonably practicable after the Effective Date or (ii) if the Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim.

For the avoidance of doubt, because the Purchaser agreed to honor Ritz ESP Claims on account of Ritz ESPs purchased after the Petition Date, holders of such Claims shall not be entitled to any distribution under the Plan and all Claims filed against the Debtor on account of such Claims shall be Disallowed.

b. **U.S. Trustee Fees**

On and after the Effective Date, Administrative Claims for U.S. Trustee Fees shall be paid in Cash equal to the amount of such Administrative Claims by the Liquidation Trustee from the Liquidation Trust Assets until the earlier of the conversion or dismissal of the Bankruptcy Case under section 1112 of the Bankruptcy Code, or the closing of the Bankruptcy Case pursuant to section 350(a) of the Bankruptcy Code.

c. **Ordinary Course Liabilities**

Allowed Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business after the Effective Date shall be paid by the Debtor and, after the Effective Date, the Liquidation Trustee, pursuant to the terms and conditions of the particular transaction giving rise to those Administrative Claims, without being required to File or serve any request for payment of such Administrative Claims or further approval by the Bankruptcy Court.

46460/0002-6457323v4

d. **Bar Dates for Administrative Claims**

i. **General Bar Date Provisions**

Except as otherwise provided in Section III.A.1.d.ii. of this Plan, the Bar Date Order or other order of the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims arising on or after June 1, 2009 through and including the Effective Date must be Filed and served on the Plan Notice Parties pursuant to the procedures specified in the Confirmation Order and the notice of occurrence of the Effective Date, no later than thirty (30) days after the Effective Date. Holders of such Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor, the Liquidation Trust or their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date. Any objections to the allowance of Administrative Claims must be Filed and served on the requesting party no later than (i) one hundred and fifty (150) days after the Effective Date or (ii) one hundred and twenty (120) days after the date on which a request for payment of an Administrative Claim is filed with the Bankruptcy Court (the "Administrative Claim Objection Deadline"). The Administrative Claim Objection Deadline may be extended for one thirty (30) day period by the Liquidation Trustee, by filing a notice of the extended Administrative Claim Objection Deadline with the Bankruptcy Court. Thereafter, the Administrative Claim Objection Deadline may be further extended only by an order of the Bankruptcy Court. If no objection to the applicable Administrative Claim is filed on or before that date, such Administrative Claim shall be deemed Allowed as of that date.

ii. **Bar Dates for Certain Administrative Claims**

**Professional Fee Claims**

Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must, unless previously Filed, File and serve on the Plan Notice Parties and such other entities who are designated in the Professional Fee Order, an application for final allowance of such Professional Fee Claim no later than sixty (60) days after the Effective Date; provided, however, that any Professional who receives compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval (except as provided in the Ordinary Course Professionals Order).

16

2. **Priority Tax Claims**

Unless otherwise agreed by the holder of an Allowed Priority Tax Claim and the Debtor or, after the Effective Date, the Liquidation Trustee, each holder of an Allowed Priority Tax Claim shall receive, from the Liquidation Trust, in full satisfaction of its Priority Tax Claim, payment, in full in Cash, of such Priority Tax Claim (i) as soon as reasonably practicable after the Effective Date or (ii) if the Priority Tax Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim. Any Priority Tax Claim that is determined to be a Secured Claim shall be treated as a Class 2 (Other Secured) Claim, pursuant to Paragraph III(B)(2) below.

Any Priority Tax Claim that is (i) held pursuant to a Final Order or (ii) determined by the Debtor and the Committee, or after the Effective Date, the Liquidating Trustee and the Oversight Committee, to be a Secured Claim shall be treated as a Class 2 (Other Secured) Claim, pursuant to Paragraph III(B)(2) below and shall only be paid in Cash, as set forth in Paragraph III(B)(2)(a) below, with interest to be paid at the rate determined under applicable nonbankruptcy law, pursuant to Section 511 of the Bankruptcy Code.

Notwithstanding Paragraph VII(A)(3) of this Plan, neither the Debtor nor the Liquidating Trustee shall seek to estimate Priority Tax Claims.

Notwithstanding Paragraph I(A)(21) of this Plan, the Claim Objection Bar Date for Priority Tax Claims shall be the later of ninety (90) days after (i) the Effective Date or (ii) the date on which a proof of Claim asserting a Priority Tax Claim is filed against the Debtor, which deadline may be further extended only by an order of the Bankruptcy Court.

B. **Classified Claims and Equity Interests**

1. **Class 1 Claims (Lenders' Secured Claims) are unimpaired**

Except to the extent that the Lenders have been paid by the Debtor prior to the Effective Date or agree to a less favorable treatment, the Lenders shall be paid in full in accordance with the terms of the Termination Agreement, which shall continue in full force and effect after the Effective Date. As security for the Borrower's "Continuing Obligations" (as defined in the Termination Agreement) under the Termination Agreement, the Lenders shall retain their lien on the "Wachovia Cash Collateral" (as defined in the Termination Agreement) as set forth in the Termination Agreement.

2. **Class 2 Claims (Other Secured Claims) are unimpaired**

Except to the extent that a holder of an Allowed Other Secured Claim has been paid by the Debtor prior to the Effective Date or agrees to a less favorable treatment, at the sole option of the Debtor, with the consent of the Committee, or the Liquidation Trustee, as the case may be, each holder of an Allowed Other Secured Claim that has not elected treatment pursuant to section 1111(b) of the Bankruptcy Code shall receive (a) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (b) the collateral

17

securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, in full and complete satisfaction of such Allowed Other Secured Claim as soon as reasonably practicable after the Effective Date, or, if the Other Secured Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim. The holder of an Allowed Other Secured Claim shall retain any liens it may have until such Allowed Other Secured Claim is satisfied.

3. **Class 3 Claims (Priority Claims) are unimpaired**

Except to the extent that a holder of an Allowed Priority Claim agrees to a less favorable treatment, as soon as reasonably practicable after the Effective Date, or, if the Priority Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Priority Claim becomes an Allowed Priority Claim, each holder of an Allowed Claim in Class 3 shall receive Cash equal to the amount of such Allowed Claim without postpetition interest.

4. **Class 4 Claims (General Unsecured Claims) are impaired**

Each holder of an Allowed or partially Allowed General Unsecured Claim shall receive its Pro Rata share (if any) of Distributable Cash on each Distribution Date as set forth in, and on the terms of, Article VI and the Liquidation Trust Agreement.

For the avoidance of doubt, because the Purchaser agreed to honor Ritz ESP Claims on account of Ritz ESPs purchased before the Petition Date, holders of such Claims shall not be entitled to any distribution under the Plan and all Claims filed against the Debtor on account of such Claims shall be Disallowed.

5. **Class 5 Equity Interests (Old Common Stock Interests) are impaired**

Holders of Equity Interests in the Debtor will receive no distributions under this Plan on account of such Equity Interests, and the Equity Interests will be deemed canceled and extinguished as of the Effective Date without any further act or action under any applicable agreement, law, regulation, order or rule.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THIS PLAN

A. **Establishment of Liquidation Trust and Continued Existence of Debtor**

1. **The Liquidation Trust**

After the entry of the Confirmation Order, the Debtor will take such actions as may be necessary or appropriate to (i) establish the Liquidation Trust pursuant to the Liquidation Trust Agreement, and (ii) effect and consummate this Plan.

Except as to the Retained Assets, the Liquidation Trust shall succeed, and shall be the sole entity to succeed, to all of the rights, claims, benefits and obligations of the Debtor, including, but not limited to, those rights, claims, benefits and obligations of the Debtor under

18

46460/0002-6457323v4

the Sale Agreement, and under any order issued by the Bankruptcy Court, including, but not limited to, the Sale Order. The Liquidation Trust is being organized for the primary purpose of holding the Liquidation Trust Assets, liquidating the Liquidation Trust Assets, resolving all Disputed Claims, making all distributions to holders of Allowed Claims in accordance with the terms of this Plan and otherwise implementing this Plan, with no objective to continue or engage in the conduct of a trade or business.

2. **Funding of the Liquidation Trust and Trust Accounts**

a. **Creation of the Liquidation Trust Accounts**

The Liquidation Trust Accounts will be established and maintained in federally insured domestic banks in the name of the Liquidation Trustee or the Disbursing Agent. The Liquidation Trustee and the Disbursing Agent shall not be required to serve with a bond or similar financial instrument unless otherwise required by (i) the Committee or the Oversight Committee, as applicable, or (ii) Final Order of the Bankruptcy Court.

b. **Funding of the Liquidation Trust**

In accordance with the terms of the Liquidation Trust Agreement and this Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidation Trust Assets become available, the Debtor shall be deemed to have automatically transferred to the Liquidation Trust all of its right, title, and interest in and to all of the Liquidation Trust Assets, and in accordance with Section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidation Trust free and clear of all Claims and Liens, subject to any liabilities of the Debtor or the Liquidation Trust payable from the proceeds of such assets as provided in the Liquidation Trust Agreement or this Plan. For the avoidance of doubt, except with respect to the Retained Assets, the property of the Debtor's Estate shall not revest in the Debtor or any other person or entity on or after the Effective Date and will vest solely in the Liquidation Trust to be administered by the Liquidation Trustee in accordance with this Plan and the Liquidation Trust Agreement.

In connection with the vesting and transfer of the Liquidation Trust Assets, including rights and Causes of Action, any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidation Trust shall vest in the Liquidation Trust. The Debtor and the Liquidation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.

c. **Closure**

Upon obtaining an order of the Bankruptcy Court authorizing final distribution and closure of the Bankruptcy Case, any funds remaining in any Liquidation Trust Account shall be distributed in accordance with this Plan and the Liquidation Trust Agreement.

19

3. **Limited Vesting of Assets in Post-Effective Date Debtor and Liquidating Transactions**

The Debtor will continue to exist after the Effective Date with all of the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law.

Upon entry of the Confirmation Order, the Debtor, through the Liquidation Trustee, may consummate any of the following Liquidating Transactions: (i) execute and deliver appropriate agreements or other documents of transfer, merger, consolidation, disposition, liquidation or dissolution, containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law, as well as other terms to which the Committee or the Oversight Committee, as the case may be, may agree; (ii) execute and deliver appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of this Plan and having such other terms as the Committee or the Oversight Committee, as the case may be, may agree; (iii) file appropriate certificates or articles of merger, consolidation, continuance or dissolution or similar instruments with the applicable governmental authorities; (iv) take any actions approved by the Oversight Committee with respect to the Retained Assets; and (v) take all other actions that the Plan Proponents determine to be necessary or appropriate, including making other filings or recordings that may be required by applicable law in connection with the Liquidating Transactions. Any costs and/or expenses incurred in connection with such Liquidating Transactions shall be paid by the Liquidation Trustee from the Liquidation Trust.

**B.     The Liquidation Trustee**

1.     **Liquidation Trustee**

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Liquidation Trustee shall be the (i) exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), and (ii) sole representative, director, officer and responsible person of the Debtor after the Effective Date. The powers, rights and responsibilities of the Liquidation Trustee shall be as set forth in this Plan and the Liquidation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Plan.

The Liquidation Trust Agreement generally will provide for, among other things: (i) the payment of reasonable compensation to the Liquidation Trustee; (ii) the payment of other expenses of the Estate and the Liquidation Trust; (iii) the retention of counsel, accountants, financial advisors or other professionals and the payment of their compensation; (iv) the investment of Cash by the Liquidation Trustee within certain limitations; (v) the orderly liquidation of the Retained Assets and the Liquidation Trust Assets; (vi) litigation of any Causes of Action of the Estate or assigned to the Liquidation Trust, which may include the prosecution, settlement, abandonment or dismissal of any such Causes of Action; and (vii) Distributions from the Estate to the Liquidation Trust, and from the Liquidation Trust.

20

## 2. **General Powers of the Liquidation Trustee**

Subject to and to the extent set forth in this Plan, the Confirmation Order, the Liquidation Trust Agreement or other agreement (or any other order of the Bankruptcy Court entered pursuant to or in furtherance hereof), the Liquidation Trust (and the Liquidation Trustee) shall have the power and authority, to the exclusion of all other parties, but only upon the consent of the Oversight Committee, to: (i) effect all actions and execute all agreements, instruments and other documents necessary to implement this Plan; (ii) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Retained Assets and the Liquidation Trust Assets (directly or through the Disbursing Agent), each in accordance with this Plan and Liquidation Trust Agreement; (iii) sell, lease, liquidate, transfer, distribute or otherwise dispose of the Liquidation Trust Assets (directly or through the Disbursing Agent) or any part thereof or any interest therein, including, but not limited to, selling or leasing the Owned Real Property, compromising the Secured Note, and releasing the Lien on the Purchaser's assets; (iv) review, reconcile, settle or object to Claims and resolve such objections as set forth in this Plan; (v) prosecute, compromise or settle any Causes of Action or Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; provided, however, that the Liquidation Trustee must seek Bankruptcy Court approval of the compromise or settlement of any Cause of Action or Claim whereby the amount of such compromise or settlement provides the claimant with an Allowed Claim in excess of $500,000; (vi) assume and assign, reject or terminate any Executory Contract or Unexpired Lease not otherwise rejected pursuant to this Plan; (vii) calculate and make distributions to holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in this Plan; (viii) establish and administer the Liquidation Trust Accounts; (ix) comply with this Plan and exercise the Liquidation Trust's rights and fulfill its obligations thereunder; (x) employ and compensate, without further order of the Bankruptcy Court, professionals (including Professionals previously retained by the Debtor and the Committee) to assist in carrying out its duties hereunder and may compensate and reimburse the expenses of these professionals without further order of the Bankruptcy Court from the Liquidation Trust Assets in accordance with this Plan and the Liquidation Trust Agreement; (xi) file appropriate Tax returns and other reports on behalf of the Liquidation Trust and pay Taxes or other obligations owed by the Liquidation Trust; (xii) pay Taxes or other obligations owed by the Debtor for all taxable periods ending on or before the Effective Date and the portion through the end of the Effective Date for any taxable period that includes (but does not end on) the Effective Date, and review and reasonably consent to the filing of Tax returns and other reports on behalf of the Debtor for such pre-Effective Date periods; provided, however, that nothing in this clause shall (A) constitute an assumption by the Liquidation Trust of any obligation to pay pre-Effective Date period Taxes that was assumed by the Purchaser in the Sale Agreement or (B) relieve any other person that has assumed or will assume the liability of the Debtor for such pre-Effective Date period Taxes or other obligations from such person's liability for such pre-Effective Date period Taxes or other obligations; (xiii) exercise such other powers as may be vested in the Liquidation Trust or as deemed by it to be necessary and proper to implement the provisions of this Plan and the Liquidation Trust Agreement; (xiv) take such actions as are necessary or appropriate to close or dismiss the Bankruptcy Case; and (xv) dissolve the Liquidation Trust in accordance with the terms of the Liquidation Trust Agreement.

21

3.    **Payment of Liquidation Trust Expenses**

The Liquidation Trustee may pay from the Liquidation Trust Assets in accordance with this Plan and the Liquidation Trust Agreement the reasonable fees and expenses that it incurs on or after the Effective Date for Liquidation Trust Expenses, including, without limitation, professionals' fees, disbursements, expenses or related support services (including fees related to the preparation of applications on account of Professional Fee Claims) without application to the Bankruptcy Court.

On a monthly basis, professionals retained by the Debtor, the Liquidation Trustee, the Oversight Committee and the Claims Agent shall serve a detailed invoice on the Plan Notice Parties. If any of the Plan Notice Parties dispute the reasonableness of any such invoice within fifteen (15) days of service of such invoice, the affected professional or the objecting Plan Notice Party may submit such dispute to the Bankruptcy Court for determination of reasonableness of such invoice, and the Disputed portion of such invoice shall not be paid until the dispute is resolved. If no objections are raised to an invoice in accordance with the deadline established above, the Liquidation Trustee shall promptly pay such invoice in full.

4.    **Reports to be Filed by the Liquidation Trustee**

The Liquidation Trustee, on behalf of the Liquidation Trust, shall File with the Bankruptcy Court and post on the Document Website quarterly reports regarding the administration of the assets subject to its ownership and control pursuant to this Plan, distributions made by it and other matters relating to the implementation of this Plan. The first quarterly report will be filed forty-five (45) days after the Effective Date and reports shall be filed thereafter every January 15th, April 15th, July 15th, and October 15th until a final decree has been entered or the Bankruptcy Case is dismissed.

5.    **Indemnification**

The Liquidation Trust Agreement may include reasonable and customary indemnification provisions. Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

6.    **Tax Treatment**

The Liquidation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d). For federal income tax purposes, the transfer of Liquidation Trust Assets to the Liquidation Trust will be treated as a transfer of Liquidation Trust Assets from the Debtor to the holders of Allowed General Unsecured Claims, subject to any liabilities of the Debtor or the Liquidation Trust payable from the proceeds of such assets, followed by such holders' transfer of such assets (subject to such liabilities) to the Liquidation Trust. The holders of Allowed General Unsecured Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets, subject to any liabilities of the Debtor or the Liquidation Trust payable from the proceeds thereof. For the avoidance of doubt, the holders of Allowed General Unsecured Claims are not intended to be treated for federal income tax

22

purposes as receiving Liquidation Trust Assets that are contributed to the disputed claims reserve until such time as the disputed claims reserve makes distributions, in which case (and at which time) the holders of Allowed General Unsecured Claims are intended to be treated as receiving the distributions actually received from the disputed claims reserve, if any. The Liquidation Trust Agreement will: (i) require that the Liquidation Trustee file income tax returns for the Liquidation Trust as a grantor trust; (ii) pay all Taxes owed on any net income or gain of the Liquidation Trust, including net income or gain of the disputed claims reserve, on a current basis from Liquidation Trust Assets; (iii) provide for consistent valuations of all Liquidation Trust Assets by the Liquidation Trustee and holders of Allowed General Unsecured Claims, and require that such valuations be used for all Tax reporting purposes; (iv) provide for the Liquidation Trust's termination no later than five (5) years after the Effective Date unless the Liquidation Trustee elects to extend such period for an additional year as provided for in the Liquidation Trust Agreement or the Bankruptcy Court approves a fixed extension based upon a finding that an extension is necessary for the Liquidation Trust to (a) resolve all Claims, (b) reduce and/or liquidate all Liquidation Trust Assets to Cash, or (c) terminate its existence; (v) limit the investment powers of the Liquidation Trustee; and (vi) require that the Liquidation Trust distribute at least annually all net income and the net proceeds from the sale or other disposition of all Liquidation Trusts asset in excess of amounts reasonably necessary to maintain the value of the remaining Liquidation Trust Assets and pay claims and contingent liabilities, including Disputed Claims. The Liquidation Trustee intends to treat the disputed claims reserve as a discrete trust taxed pursuant to section 641 *et seq.* of the Internal Revenue Code.

## C. Employment-Related Agreements

### 1. Termination of All Employee and Workers' Compensation Benefits

Except to the extent (i) that any of the forgoing have been assigned to the Purchaser and (ii) not earlier terminated in accordance with their terms, from and after the Effective Date, all employee programs, including but not limited to any retirement plans or agreements and health benefits and disability plans shall be deemed terminated in accordance with their terms with no further action required by the Debtor or the Liquidation Trustee, and to the extent any of such employee programs constitute distinct executory contracts with individual employees or otherwise, such contracts shall be deemed rejected and terminated in accordance with Section V.A hereof. The Liquidation Trustee shall be authorized to take any actions and make payment of the actual amount, if any, required to be contributed to or on account of an employee program to permit the termination of such programs and discharge all benefit liabilities to participants and beneficiaries of such programs, including, without limitation, continuation of the termination of the Debtor's 401(k) plan.

## D. Effect of Confirmation of this Plan

### 1. Recourse Solely to Liquidation Trust Accounts and the Retained Assets

All Claims against the Debtor are deemed fully satisfied, waived and released in exchange for the treatment of such Claims under this Plan, and holders of Allowed Claims against the Debtor will have recourse solely to the Liquidation Trust Assets and the Retained

23

Assets for the payment of their Allowed Claims in accordance with the terms of this Plan and the Liquidation Trust Agreement.

2. **Comprehensive Settlement of Claims and Controversies**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, the Liquidation Trust, the Estate and their respective property and Claim and Equity Interest holders and is fair, equitable and reasonable.

**E.     Special Provisions Regarding Insured Claims**

Distributions under this Plan to each holder of an Allowed Insured Claim shall be in accordance with the treatment provided under this Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the holder thereof under any pertinent insurance policies and applicable law. Nothing in this Section IV.E shall constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any entity may hold against any other entity, including the Debtor's insurance carriers.

**F.     Release of Liens**

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, on the Effective Date and consistent with the treatment provided for Claims and Equity Interests in Article III, all Liens on, in or against the Liquidation Trust Assets shall be fully released and discharged, and all of the right, title and interest of any holder of Liens, including any rights to any Collateral thereunder, shall revert to the Liquidation Trust and its successors and assigns. As of the Effective Date, the Liquidation Trustee shall be authorized, but not required, to execute and file on behalf of the trust beneficiaries Form UCC-3 Termination Statements or such other forms as may be necessary or appropriate to implement the provisions of this Section IV.F.

**G.     Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The Liquidation Trustee or its designee shall be authorized to (1) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan and (2) certify or attest to any of the foregoing actions. Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax or similar tax: (1) any Liquidating Transactions, including, but not limited to, the sale of the Owned Real Property; (2)

46460/0002-6457323v4

the transfer to the Liquidation Trust of any Liquidation Trust Assets at any time; (3) the execution and implementation of the Liquidation Trust Agreement, including any transfers to or by the Liquidation Trust; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any merger agreements or agreements of consolidation, disposition, liquidation or dissolution executed in connection with any transaction pursuant to this Plan.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Executory Contracts and Unexpired Leases to Be Rejected

On the Effective Date, except (i) for the Executory Contracts or Unexpired Leases listed on **Exhibit V.A.** attached hereto, which Executory Contracts or Unexpired Leases shall be treated pursuant to the terms and conditions of the Sale Agreement, the Sale Order and any agreement by the Debtor and the non-Debtor party to an Unexpired Lease extending the Debtor's time to assume or reject such Unexpired Lease, and (ii) to the extent that the Debtor either (a) previously assumed and assigned or rejected (or terminated in accordance with its terms) an Executory Contract or Unexpired Lease pursuant to an order of the Bankruptcy Court (if required), or (b) has filed a motion or Notice of Assumption (pursuant to Bankruptcy Court approved assumption procedures) to assume and assign or reject an Executory Contract or Unexpired Lease prior to the Effective Date (which the Bankruptcy Court may consider and/or rule upon after confirmation of this Plan), each Executory Contract and Unexpired Lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. Each such contract and lease will be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

### B.    Bar Date for Rejection Claims

Notwithstanding anything in the Bar Date Order to the contrary, if the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan gives rise to a Claim by the other party or parties to such contract or lease, such rejection Claim will be forever barred and will not be enforceable against the Liquidation Trust unless a proof of Claim is Filed and served on the Plan Notice Parties no later than thirty (30) days after the Effective Date.

### C.    Executory Contracts and Unexpired Leases Not Rejected Pursuant to this Plan

Executory Contracts or Unexpired Leases set forth on Exhibit V.A. will not be deemed rejected pursuant to this Plan but will vest in the Liquidation Trust to be administered by the Liquidation Trustee in accordance with this Plan, the Liquidation Trust Agreement, the Sale Agreement and the Sale Order. For the avoidance of doubt, the Executory Contracts or Unexpired Leases set forth on Exhibit V.A. shall be treated in accordance with the designation rights provisions set forth in the Sale Agreement and the Sale Order.

25

**D.** **Reservation of Rights with Respect to the Debtor's Insurance Policies**

Nothing herein shall be deemed to waive, release, bar and/or estop any Cause of Action, claim or right of setoff the Debtor may hold against any insurer on account of any insurance policy or agreement issued to or on behalf of the Debtor prior to or after the Petition Date, all of which shall be expressly reserved by the Debtor as part of the Retained Assets.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.** **Method of Distributions to Holders of Allowed Claims**

The Disbursing Agent will make all distributions of Cash required under this Plan to holders of Allowed Claims against the Debtor. The Disbursing Agent shall not be required to serve with a bond or similar financial instrument unless otherwise required by (i) the Committee or the Oversight Committee, as applicable, or (ii) Final Order of the Bankruptcy Court..

**B.** **Compensation and Reimbursement for Services Related to Distributions and Cash Investment Yield**

1. **Compensation and Reimbursement**

The Disbursing Agent providing services related to distributions pursuant to this Plan will receive from the Liquidation Trust Assets, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. These payments will be made on terms agreed to with the Liquidation Trustee, subject to the consent of the Oversight Committee, and will not be deducted from distributions (including any distributions of Cash Investment Yield) to be made pursuant to this Plan to holders of Allowed Claims receiving distributions from the Disbursing Agent.

2. **Investment of Cash Related to Distributions**

To assist in making distributions under this Plan, the applicable Liquidation Trust Accounts may be held in the name of the Disbursing Agent for the benefit of holders of Allowed Claims under this Plan. The Disbursing Agent will invest the Cash in the Liquidation Trust Accounts as directed by the Liquidation Trustee in accordance with the investment and deposit guidelines set forth in the Liquidation Trust Agreement; provided, however, that the scope of any permissible investment shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. §301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise; provided, further, however, that should such Liquidation Trustee determine, in its sole discretion, that the administrative costs associated with such investment will exceed the return on such investment, it may direct the Disbursing Agent to not invest such Cash. Distributions of Cash from accounts held by the Disbursing Agent will include a Pro Rata share of the Cash Investment Yield, if any, from such investment of Cash.

26

C.    **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1.    **Delivery of Distributions to Holders of Allowed Claims**

Distributions to holders of Allowed Claims will be made by the Disbursing Agent (a) at the addresses set forth on the respective proofs of Claim, requests for payment of Administrative Claim or similar document Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to the Disbursing Agent) after the date of Filing of any related proof of Claim, requests for payment of Administrative Claim or similar document; or (c) at the addresses reflected in the Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address.

2.    **Undeliverable Distributions Held by Disbursing Agent**

a.    **Holding of Undeliverable Distributions**

Subject to Section VI.C.2.c, distributions returned to the Disbursing Agent or otherwise undeliverable will remain in the applicable Liquidation Trust Account for the benefit of such claimants.

b.    **After Distributions Become Deliverable**

On each Distribution Date, the Disbursing Agent shall make all distributions that have become deliverable to holders of Allowed Claims since the preceding Distribution Date. Each such distribution shall include, to the extent applicable, a Pro Rata share of the Cash Investment Yield from the investment of any undeliverable Cash from the date that such distribution would have first been due had it then been deliverable to the date that such distribution becomes deliverable.

c.    **Failure to Claim Undeliverable Distributions**

Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable distribution to be made by the Disbursing Agent within one hundred and eighty (180) days after the later of (i) the Effective Date and (ii) the last date on which a distribution was deliverable to such holder will have its Claim for such undeliverable distribution deemed satisfied and released and will be forever barred from asserting any such Claim against the Debtor, the Liquidation Trust, the Liquidation Trustee and their respective property or the Liquidation Trust Accounts. In such cases, unclaimed distributions will be maintained in the applicable Liquidation Trust Account for redistribution to other claimants entitled to distribution from such Liquidation Trust Account.

D.    **Distribution Record Date**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of any Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by

27

the Distribution Record Date. The Disbursing Agent will have no obligation to recognize the transfer or sale of any Claim that occurs after 4:00 p.m. Wilmington Delaware time on the Distribution Record Date and will be entitled for all purposes herein to recognize and make distributions only to those holders who are holders of such Claims as of the close of business on the Distribution Record Date.

## E.    Means of Cash Payments

Except as otherwise specified herein, Cash payments made pursuant to this Plan will be in U.S. currency by checks drawn on the applicable Liquidation Trust Accounts or, at the option of the Liquidation Trust, by wire transfer from a domestic bank.

## F.    Timing and Calculation of Amounts to Be Distributed

### 1.    Allowed Claims

Distributions on account of Allowed Claims in Classes 1 and 2 shall be made at the times specified in Article III. Distributions to holders of Allowed (or partially Allowed) General Unsecured Claims shall be made on one or more Distribution Dates, as established by the Liquidation Trustee at the direction of the Oversight Committee. On each Distribution Date, the Disbursing Agent shall distribute to holders of Allowed General Unsecured Claims their Pro Rata share of all Distributable Cash, calculated so as to take account of all prior distributions to holders of such Allowed Claims.

Each holder of an Allowed Claim will receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class pursuant to the terms and conditions of this Plan and the Liquidation Trust Agreement, subject to any setoffs or deductions set forth therein. Holders of partially Allowed General Unsecured Claims shall receive partial distributions as provided for in Section VII C.1.b. Distributions to holders of Allowed or partially Allowed General Unsecured Claims shall be made on each Distribution Date.

### 2.    De Minimis Distributions

The Disbursing Agent shall not distribute cash to the holder of an Allowed Claim in an impaired Class if the amount of Cash to be distributed on account of such Claim is less than twenty five dollars ($25) in the aggregate. Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than twenty five dollars ($25) in the aggregate will be forever barred from asserting its Claim for such distribution against the Liquidation Trust or its property. Any Cash not distributed pursuant to this Section VI.F.2 will be the property of the Liquidation Trust free of any restrictions thereon, and any such Cash held by the Disbursing Agent shall be transferred or returned to the Liquidation Trust.

### 3.    Compliance with Tax Requirements; Responsibility for Taxes

a.    The Disbursing Agent will comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan or Liquidation Trust Agreement will be subject to such withholding and reporting requirements.

28

The Disbursing Agent will be authorized to take any actions that it determines, in its reasonable discretion, to be necessary or appropriate to comply with such withholding and reporting requirements.

b. Each person or entity receiving a distribution pursuant to this Plan or the Liquidation Trust Agreement will be solely responsible for all Taxes owed with respect to such distribution.

### G. Surrender of Canceled Instruments or Securities

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by any instruments or securities, the holder of such Claim must tender to the Disbursing Agent, in its sole discretion, the applicable instruments or securities evidencing such Claim or an affidavit of loss and indemnity satisfactory to the Disbursing Agent, in its sole discretion, together with any letter of transmittal required by the Disbursing Agent. Pending such surrender, any distributions pursuant to this Plan on account of any such Claim will be treated as an undeliverable distribution pursuant to Section VI.C.2.a.

### H. Setoffs

Except with respect to claims of the Debtor released, compromised or settled (a) pursuant to a Final Order, or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan or any Final Order, and (b) under the Sale Agreement, the Disbursing Agent, as instructed by the Liquidation Trustee, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, may set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim) the Claims, rights and Causes of Action of any nature that the Debtor may hold against the holder of such Allowed Claim prior to the Effective Date; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Liquidation Trustee of any claims, rights and Causes of Action that the Liquidation Trust may possess (by virtue of the transfer to it of the Liquidation Trust Assets) against such a Claim holder, which are expressly preserved and vested in the Liquidation Trust as Liquidation Trust Assets under Section I.A.61.

### ARTICLE VII
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A. Treatment of Disputed Claims

1. **Tort Claims**

After the Effective Date, at the Liquidation Trust's option, any unliquidated Tort Claim (as to which a proof of Claim was timely Filed in the Bankruptcy Case) not resolved through Final Order of the Bankruptcy Court or as agreed to by the holder of such unliquidated Tort Claim and the Debtor or the Liquidation Trust, shall be (i) determined and liquidated in the administrative or judicial tribunal(s) in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate

29

jurisdiction; (ii) estimated, pursuant to section 502(c) of the Bankruptcy Code, in a proceeding before the United States District Court for the District of Delaware; or (iii) resolved through an alternative dispute resolution program approved by the Bankruptcy Court after notice and a hearing. The Liquidation Trustee may exercise the above option by service upon the holder of the applicable Tort Claim of a notice informing the holder of such Tort Claim that the Liquidation Trustee has exercised such option. Upon the Liquidation Trustee's service of such notice, the injunction set forth in Section X.A and the automatic stay imposed by operation of section 362 of the Bankruptcy Code shall be deemed modified, without the necessity for further Bankruptcy Court approval, solely to the extent necessary to allow the parties to determine or liquidate the Tort Claim in the applicable administrative or judicial tribunal(s). Notwithstanding the foregoing, at all times prior to or after the Effective Date, the Bankruptcy Court shall retain jurisdiction relating to Tort Claims, including the Debtor or the Liquidation Trust's rights to have such Claims determined and/or liquidated in the Bankruptcy Court (or the United States District Court having jurisdiction over the Bankruptcy Case) pursuant to section 157(b)(2)(B) of title 28 of the United States Code, as may be applicable.

Any Tort Claim determined and liquidated pursuant to a judgment obtained in accordance with this Section VII.A.1 and applicable non-bankruptcy law that is no longer appealable or subject to review shall be deemed an Allowed Claim, as applicable, in Class 4 against the Debtor in such liquidated amount, provided that only the amount of such Allowed Claim that is less than or equal to the Debtor's self-insured retention or deductible in connection with any applicable insurance policy and that cannot be satisfied from proceeds of insurance payable to the holder of such Allowed Tort Claim under the Debtor's insurance policies shall be treated as an Allowed Claim for the purposes of distributions under this Plan. In the event a Tort Claim is determined and liquidated pursuant to a judgment or order that is obtained in accordance with this Section VII.A.1 and is no longer appealable or subject to review, and applicable non-bankruptcy law provides for no recovery against the Debtor, such Tort Claim shall be deemed expunged without the necessity for further Bankruptcy Court approval upon the Debtor's, or, after the Effective Date, the Liquidation Trustee's, service of a copy of such judgment or order upon the holder of such Tort Claim.

Nothing contained in this Section shall constitute or be deemed a waiver of any claim, right or Cause of Action that the Debtor or the Liquidation Trustee may have against any person or entity in connection with or arising out of any Tort Claim, including but not limited to, any rights under section 157(b)(5) of title 28 of the United States Code. All claims, demands, rights, defenses and Causes of Action that the Debtor or the Liquidation Trust may have against any person or entity in connection with or arising out of any Tort Claim are expressly retained and preserved.

## 2. **Disputed Insured Claims**

The resolution of Disputed Insured Claims, including Tort Claims, pursuant to this Section VII.A.2 shall be subject to the provisions of Section IV.E. of this Plan.

30

3.    **Estimation of Claims**

The Debtor or the Liquidation Trustee, as the case may be, may, at any time, request the Bankruptcy Court to estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim. In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Liquidation Trustee, as the case may be, may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims which have been estimated may be compromised, settled, withdrawn or otherwise resolved, without further order of the Bankruptcy Court.

**B.    Prosecution of Objections to Claims**

1.    **Objections to Claims**

All objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Bar Date. If an objection has not been Filed to a proof of Claim or a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or scheduled Claim relates shall be treated as an Allowed Claim if such Claim has not been allowed earlier. An objection is deemed to have been timely Filed as to all Tort Claims, thus making each such Claim a Disputed Claim as of the Claims Objection Bar Date. Each such Tort Claim shall remain a Disputed Claim until it becomes an Allowed Claim in accordance with Section I.A.4.

2.    **Authority to Prosecute Objections**

After the Effective Date, only the Liquidation Trustee shall have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims (excluding Administrative Claims or Professional Fee Claims, which shall be subject to objections by any party in interest with standing to do so), including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. The Liquidation Trustee may settle or compromise any Disputed Claim up to an Allowed Amount of $500,000 or less or any objection or controversy relating to any Claim without approval of the Bankruptcy Court.

C. **Treatment of Disputed Claims**

  1. **Partial Distributions Pending Allowance**

    a.  No payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim. Distributions on account of any Disputed Claim that has become an Allowed Claim will be governed by the Liquidation Trust Agreement. In addition, the Liquidation Trust Agreement shall include reasonable and customary provisions establishing reserves to account for Disputed Claims that become Allowed Claims.

    b.  Notwithstanding Section VII.C.1.a., holders of Disputed Claims in Class 4 shall be entitled to distributions on account of the Allowed portion, if any, of such Disputed Claims pending final resolution of the disputed portion of such Claim. The Liquidation Trustee shall take a reserve for the full amount of the disputed portion of any such Claim on the Distribution Date that the Allowed portion of such Claim is distributed.

  2. **Recourse**

    Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the undistributed Cash held by the Liquidation Trustee for the satisfaction of such Allowed Claim and not to any other assets previously distributed on account of any Allowed Claim.

  3. **Authority to Amend Schedules**

    After the Effective Date, the Liquidation Trustee, at the direction of the Oversight Committee, shall have the authority to amend the Schedules with respect to any Claim and to make distributions based on such amended Schedules without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Liquidation Trustee shall provide the holder of such Claim with notice of the amendment and such holder shall have twenty (20) days to File an objection to the amendment with the Bankruptcy Court. If no objection is Filed, the Liquidation Trustee may proceed with distributions based on such amended Schedules without approval of the Bankruptcy Court.

  4. **Distributions on Account of Disputed Claims Once Allowed**

    Distributions on account of previously Disputed or partially Disputed Claims shall be made in accordance with Article VI of this Plan.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE AND**
**CONSUMMATION OF THIS PLAN**

A. **Conditions to the Effective Date**

  The Effective Date shall not occur, and this Plan shall not be consummated, unless and until the following conditions have been satisfied or duly waived pursuant to Section VIII.B:

32

1.     The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents, which shall be a Final Order.

2.     The Liquidation Trust Agreement has been executed and at least one the Liquidation Trust Accounts has been established.

3.     If required by the Committee or the Oversight Committee, as the case may be, or otherwise required by the Bankruptcy Court, the Liquidation Trustee and/or the Disbursing Agent shall have obtained a bond or similar financial instrument.

**B.     Waiver of Conditions to the Effective Date**

The conditions to the Effective Date set forth in Section VIII.A.1, but not Section VIII.A.2, may be waived in whole or part at any time by the Plan Proponents without an order of the Bankruptcy Court. The condition to the Effective Date set forth in Section VIII.A.3. may only be waived by the Committee.

**C.     Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section VIII.B, then upon motion by the Plan Proponents or any party in interest made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section VIII.C:  (1) this Plan shall be null and void in all respects and (2) nothing contained in this Plan shall (a) constitute a waiver or release of any claims by or against, or any Equity Interest in, the Debtor or (b) prejudice in any manner the rights of the Plan Proponents or any other party in interest.

**ARTICLE IX**
**CRAMDOWN**

The Plan Proponents request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that has not accepted or is deemed not to have accepted this Plan pursuant to section 1126 of the Bankruptcy Code.

**ARTICLE X**
**INJUNCTION AND SUBORDINATION RIGHTS**

**A.     Injunction**

Except as provided in this Plan or the Confirmation Order and other than with respect to a right of recoupment or setoff, as of the Effective Date, all entities that held, currently hold or may hold (i) a Claim or other debt or liability subject to this Plan or (ii) an Equity Interest or other right of an equity security holder, will be permanently enjoined from taking any of the following actions in respect of any such Claims, debts, liabilities,

33

Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Liquidation Trust, the Liquidation Trustee, the Committee or its members, the Oversight Committee or its members, the Disbursing Agent or any Professional, other than to enforce any right under this Plan for a distribution from the Liquidation Trust Assets; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Liquidation Trust, the Liquidation Trustee, the Disbursing Agent, the Committee or its members, the Oversight Committee or its members, or any Professional other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Liquidation Trust, their respective property or the Liquidation Trust Assets; (d) asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtor or the Liquidation Trust; and (e) commencing or continuing any action, in any manner or in any jurisdiction that does not comply with or is inconsistent with the provisions of this Plan.

## B. Subordination Rights

The classification and manner of satisfying Claims and Equity Interests under this Plan does not take into consideration subordination rights among and between holders of Claims against the Debtor, and nothing in this Plan or Confirmation Order shall affect any subordination rights that a holder of a Claim among and between holders of Claims against the Debtor have with respect to any distribution to be made pursuant to this Plan, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code or otherwise.

## C. Automatic Stay

Except as provided herein or otherwise determined by order of the Bankruptcy Court, the automatic stay imposed by operation of section 362 of the Bankruptcy Code shall remain in full force and effect until the earlier of the time the Bankruptcy Case is closed or dismissed.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such exclusive jurisdiction over the Bankruptcy Case after the Effective Date as is legally permissible, including, but not limited to, jurisdiction to:

1.      allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the amount, allowance, priority or classification of Claims or Equity Interests;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

34

3.     resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor, the Purchaser or the Liquidation Trustee may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

4.     ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

5.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor or the Liquidation Trustee that may be pending on the Effective Date or brought thereafter;

6.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with this Plan, the Disclosure Statement, the Confirmation Order and the Liquidation Trust Agreement;

7.     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan, the Liquidation Trust Agreement or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to this Plan, including, but not limited to, the Liquidation Trust Agreement, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

8.     modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any         .
Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

9.     issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan and the Confirmation Order;

10.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to this Plan are enjoined or stayed;

11.    determine any other matters that may arise in connection with or relate to this Plan, the Confirmation Order, the Liquidation Trust or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan and the Confirmation Order;

35

12.     resolve any controversies that may arise in connection with the Sale Agreement and the Sale Order;

13.     determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes and the right of the Liquidation Trust to receive Tax Refunds under this Plan;

14.     adjudicate any matters delegated or transferred to the Oversight Committee, including, but not limited to, the prosecution of any Causes of Action that are Liquidation Trust Assets;

15.     recover all assets of the Estate, wherever located;

16.     enter a final decree closing the Bankruptcy Case; and

17.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.     **Preservation of All Causes of Action Not Expressly Settled or Released**

The Plan Proponents are currently investigating potential Causes of Action against certain persons or entities but have not yet completed their investigations. Therefore, on the Effective Date, all Causes of Action, with the exception of (i) the Transferred Causes of Action, (ii) the Causes of Action related to or arising out of the Retained Assets, and (iii) any claim, right, interest or Cause of Action waived, relinquished, released, compromised or settled as provided in any Final Order, shall vest in the Liquidation Trust, which shall hold and possess all rights on behalf of the Debtor, its Estate and the Liquidation Trust to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation the Bankruptcy Code, and in any court or other tribunal). The Liquidation Trustee, on behalf of the Liquidation Trust, shall have the sole and exclusive right to commence, prosecute, pursue, settle, compromise or abandon such Causes of Action as set forth herein and in the Liquidation Trust Agreement.

The Debtor hereby reserves the rights of the Liquidation Trust and the Liquidation Trustee, on behalf of the Liquidation Trust, to pursue administer, settle, litigate, enforce and liquidate:

(a)     Any Causes of Action, whether legal, equitable or statutory in nature;

(b)     Any and all actions arising under or actionable pursuant to the Bankruptcy Code, including, without limitation, sections 544, 545, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code; and

(c)     Any Causes of Action that currently exist or may subsequently arise and which have not been set forth herein because the facts upon which such Causes of Action are based are not currently or fully known by the Plan Proponents (collectively, the "Unknown Causes of Action"). The failure to list or describe any such Unknown Cause of Action herein is not

36

intended to limit the rights of the Liquidation Trustee, on behalf of the Liquidation Trust, to pursue any Unknown Cause of Action.

Unless Causes of Action against a person or entity are expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, the Debtor (before the Effective Date) and the Liquidation Trustee, on behalf of the Liquidation Trust (post-Effective Date), expressly reserve all Causes of Action (including the Unknown Causes of Action) for later adjudication and therefore, no preclusion doctrine or other rule of law, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a result of the confirmation or Effective Date of the Plan, or the Confirmation Order. In addition, the Debtor and the Liquidation Trustee, on behalf of the Liquidation Trust, and any successors-in-interest thereto, expressly reserve the right to pursue or adopt any Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs and co-defendants in such lawsuits.

**B.    Dissolution of the Committee; Oversight Committee**

   1.    **Dissolution of the Committee**

On the Effective Date, immediately after the formation of the Oversight Committee, the Committee shall dissolve, and the members thereof shall be released and discharged from all duties and obligations arising from or related to their membership (except those duties or obligations which may arise from membership in the Oversight Committee). The Professionals retained by the Committee and the respective members thereof shall not be entitled to assert any Fee Claims for any services rendered or expenses incurred on behalf of the Committee after the Effective Date, except for fees for time spent and expenses incurred: (a) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Section III.A.1.d.ii.A; or (b) in connection with any appeal pending as of the Effective Date, including any appeal of the Confirmation Order.

   2.    **The Oversight Committee**

         a.    The Oversight Committee shall be formed on the Effective Date and shall initially consist of the members of the Committee. Members of the Oversight Committee may be added, removed or substituted from time to time, provided that all members of the Oversight Committee shall be persons or entities who were members of the Committee as of the Effective Date.

         b.    The Oversight Committee shall be authorized to adopt such by-laws as it deems appropriate without further order of the Bankruptcy Court.

         c.    The Oversight Committee shall be authorized to direct the affairs of the Liquidation Trust and the Liquidation Trustee, as provided for in the Liquidation Trust Agreement, which authority shall include, without limitation: (a) overseeing the General

37

Unsecured Claims reconciliation and settlement process conducted by the Liquidation Trustee; (b) formulating with the Liquidation Trustee appropriate procedures for the settlement of Claims; (c) overseeing the distributions to the holders of General Unsecured Claims under this Plan; (d) implementing the provisions of this Plan; (e) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above duties; and (e) such other matters as may be agreed upon between the Liquidation Trustee and the Oversight Committee or specified in this Plan.

d.       The Oversight Committee may employ, without further order of the Bankruptcy Court, professionals to assist it in carrying out its duties, including any professionals previously retained by the Debtor or the Committee in the Bankruptcy Case, and the Liquidation Trustee shall pay the reasonable costs and expenses of the Oversight Committee, including reasonable professional fees and the reasonable out-of-pocket expenses of members of the Oversight Committee, in the ordinary course without further order of the Bankruptcy Court in accordance with the procedures set forth in Section IV.B.3. Nothing herein shall disqualify the Liquidation Trustee from retaining the same professionals as those employed or retained by the Debtor or the Committee.

e.       For so long as the Liquidation Trust shall continue, the Liquidation Trustee shall make regular reports to the Oversight Committee as and when required under the Liquidation Trust Agreement.

## C.       Termination of Ordinary Course Professionals

As of the Effective Date, all Ordinary Course Professionals retained by the Debtor pursuant to the Ordinary Course Professionals Order shall be deemed terminated by the Debtor; provided, however, that the Liquidating Trustee may retain such Professionals on terms acceptable to the Oversight Committee.

## D.       Exculpation

1.       From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any entity for any act taken or omitted to be taken in connection with, related to or arising out of the Bankruptcy Case, the Debtor, its Estate, the Liquidation Trust or the consideration, formulation, preparation, dissemination, implementation, Confirmation, consummation or administration of this Plan, the Disclosure Statement, the Sale, the Liquidation Trust Agreement or any transaction proposed in connection with the Bankruptcy Case or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions of this Section XII.B.1 shall have no effect on:  (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under this Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with this Plan or (b) the liability of any entity that would otherwise result from any such act, omission or occurrence to the extent that such act, omission or occurrence is determined in a Final Order to have constituted gross negligence or willful misconduct.

38

**E.** **Modification of this Plan**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend or modify this Plan before the Effective Date.

**F.** **Revocation of this Plan**

The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Effective Date, subject to section 1127 of the Bankruptcy Code. If the Plan Proponents revoke or withdraw this Plan, or if Confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor; (2) prejudice in any manner the rights of the Plan Proponents or any other party in interest; or (3) constitute an admission of any sort by the Plan Proponents or any other party in interest.

**G.** **Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**H.** **Service of Certain Plan and Disclosure Statement Exhibits**

With respect to any Schedules or Exhibits that are not being Filed or served with copies of this Plan and the Disclosure Statement, the Plan Proponents shall File such Schedules or Exhibits no later than seven (7) days before the deadline to vote to accept or reject this Plan. Once Filed, the Plan Proponents shall make available for review the relevant Schedules or Exhibits on the Document Website.

**I.** **Notices**

1.  Except as otherwise set forth in this Plan, all notices, requests or other communications required or permitted to be made in accordance with this Plan shall be in writing and shall be deemed given five (5) Business Days after first-class mailing, one (1) Business Day after sending by overnight courier, or upon receipt of facsimile transmission and addressed to:

**If to the Debtor:**

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.
Norman L. Pernick
Karen M. Grivner
npernick@coleschotz.com
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

**If to the Committee or the Oversight Committee:**

COOLEY GODWARD KRONISH LLP
Jay Indyke
jindyke@cooley.com
Cathy Hershcopf
chershcopf@cooley.com
Brent Weisenberg

39

Telephone: (302) 652-3131
Facsimile: (302) 652-3117

bweisenberg@cooley.com
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

COLE, SCHOTZ, MEISEL, FORMAN &
LEONARD, P.A.
Irving E. Walker
iwalker@coleschotz.com
Gary H. Leibowitz
gleibowitz@coleschotz.com
300 East Lombard Street, Suite 2000
Baltimore, MD 21202
Telephone: (410) 230-0660
Facsimile: (410) 230-0667

BIFFERATO GENTILOTTI LLC
Garvan McDaniel
gmcdaniel@bglawde.com
800 N. King Street
P.O. Box 2165
Wilmington, DE 19801
Telephone: (302) 429-1900
Facsimile: (302) 429-8600

**If to the Liquidation Trustee:**

**If to the Disbursing Agent:**

FTI CONSULTING, INC.
Charles Reeves
charlie.reeves@fticonsulting.com
2001 Ross Avenue, Suite #400
Dallas, TX 75201
Telephone: (214) 397-1633
Facsimile: (214) 397-1791

CREDITNTELL.COM INC.
Lawrence Sarf
larrys@creditntell.com
310 East Shore Road
Great Neck, NY 11023
Telephone: (800) 789-0123
Facsimile: (516) 487-4538

**If to the Claims Agent:**

RITZ CAMERA CENTERS, INC. CLAIMS
PROCESSING CENTER
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245
Telephone: (310) 823-9000

2. **Limitation on Notice**

The Plan Proponents and the Liquidation Trustee, as the case may be, shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters with no requirement for any additional or further notice:

a. **Notice of Entry of Confirmation Order.** Notice of the entry of the Confirmation Order shall be sufficient if mailed to all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing). Such notice shall be

40

mailed within five (5) Business Days of the date that the Confirmation Order becomes a Final Order.

b.    **Post-Confirmation Date Service.** From and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with the Bankruptcy Court prior to such date shall no longer be effective. No further notices (other than notice of entry of the Confirmation Order) shall be required to be sent to any entities or persons, except for any Creditor who files a renewed request for service of pleadings and whose Claim has not been fully satisfied.

c.    **General Notice To Creditors.** All notices and requests to Creditors of any Class shall be sent to them at the addresses set forth on the proofs of Claim or, if no proof of Claim was filed, to their last known address as reflected in the records of the Debtor. Any Creditor may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt by the Debtor before the Effective Date or the Liquidation Trustee after the Effective Date.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

46460/0002-6457323v4

Dated: April 13, 2010

**RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc.**

**The Official Committee of Unsecured Creditors of RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc.**

By: _____

Name: _____

Title: _____

By: /s/ Ronald M. Tucker

Name: Ronald M. Tucker

Title: Vice President, Simon Property Group, L.P.

42

Dated: April __, 2010

**RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc.**

By: _Mark W_____
Name: _Mark _____
Title: _CEO_____

**The Official Committee of Unsecured Creditors of RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc.**

By: _____
Name: _____
Title: _____