# Exhibit I.A.60.

# Liquidation Trust Agreement

1615389 v3/NY
46460/0002-6457323v4

## LIQUIDATION TRUST AGREEMENT

This LIQUIDATION TRUST AGREEMENT (this "Agreement"), by and among RCC LIQUIDATING CORP. f/k/a Ritz Camera Centers, Inc. (the "Debtor"), CHARLES REEVES OF FTI CONSULTING, INC., in his capacity as the Liquidation Trustee (the "Trustee"), and THE OVERSIGHT COMMITTEE (the "Committee") is effective as of the Effective Date of the Plan (as hereinafter defined). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan.

## RECITALS

**WHEREAS,** on February 22, 2009, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS,** on March 4, 2010, the Debtor and the Committee filed that *First Amended Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code Proposed by the Debtor and the Official Committee of Unsecured Creditors, Dated March 4, 2010* (the "Plan") pursuant to the Bankruptcy Code;

**WHEREAS,** by order dated [_____], 2010, the Bankruptcy Court confirmed the Plan;

**WHEREAS,** under the terms of the Plan, effective as of the Effective Date, all Liquidation Trust Assets will be transferred to and held by the Liquidation Trust created by this Agreement so that, among other things: (i) the Liquidation Trust Assets can be disposed of in an orderly and expeditious manner; (ii) objections to Claims can be pursued and disputed Claims can be resolved; and (iii) distributions can be made to the beneficiaries of the Liquidation Trust in accordance with the Plan;

**WHEREAS,** this Liquidation Trust is established under and pursuant to the Plan, which provides for the appointment of the Trustee to administer the Liquidation Trust for the benefit of creditors of the Debtor and to provide administrative services relating to the implementation of the Plan; and

**WHEREAS,** the Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Agreement.

**NOW, THEREFORE,** in accordance with the Plan and in consideration of the promises and of the mutual covenants and agreements contained herein, the validity and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## DECLARATION OF TRUST

The Debtor hereby absolutely and irrevocably assigns to the Liquidation Trust, and to its successors in trust and its successors and assigns, all of its right, title and interest to and in the Liquidation Trust Assets;

TO HAVE AND TO HOLD unto the Liquidation Trust and its successors in trust and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the holders of Allowed Claims, as and to the extent provided in the Plan, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Liquidation Trust in accordance with Article V hereof, this Agreement shall cease, terminate and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Liquidation Trust Assets are to be held and applied by the Trustee upon the further covenants and terms and subject to the conditions herein set forth.

I.

## NAME; PURPOSE

1.1 **Name of Trust.** The trust created by this Agreement shall be known as the "RCC Liquidation Trust" and shall be referred to herein as the "Liquidation Trust."

1.2 **Transfer of Liquidation Trust Assets.** In accordance with, and except as otherwise provided in the Plan, on the Effective Date, the Debtor shall transfer the Liquidation Trust Assets to the Liquidation Trust, free and clear of all Liens, claims, encumbrances and other interests of the Debtor or any other person or entity, to be held by the Trustee in trust as and to the extent provided in the Plan on the terms and subject to the conditions set forth herein and in the Plan. The Debtor shall retain no interest in the Liquidation Trust Assets transferred to the Liquidation Trust, and the Liquidation Trust shall have all of the rights, claims, powers, objections, counterclaims, defenses, setoffs and actions of the Debtor and its Estate. As of the Effective Date, any and all claims, rights and Causes of Action of the Debtor shall be exclusively filed, prosecuted and/or settled by the Trustee in the name of the Liquidation Trust; provided, however, that the Debtor shall retain and, upon the consent of the Oversight Committee, have authority to prosecute any and all claims, rights and Causes of Action arising out of or related to the Retained Assets.

1.3 **Purpose.** The Liquidation Trust is established for the sole purpose of liquidating the Liquidation Trust Assets in accordance with Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to and consistent with its liquidating purpose. Accordingly, the Trustee shall not unduly prolong the duration of the Liquidation Trust.

1.4 **Acceptance by the Trustee.** The Trustee is willing and hereby accepts the appointment to serve as Trustee pursuant to this Agreement and the Plan and agrees to observe and perform all duties and obligations imposed upon the Trustee by this Agreement and under the Plan, including, without limitation, to accept and hold and administer the Liquidation Trust Assets and the Retained Assets and otherwise to carry out the purpose of the Liquidation Trust in accordance with the terms and subject to the conditions set forth herein.

1.5     **Further Assurances.** The Debtor or its agents will, on request of the Trustee, execute and deliver such further documents and perform such further acts as may be necessary or proper to transfer to the Trustee any portion of the Liquidation Trust Assets or to vest the powers or property hereby conveyed. The Debtor disclaims any right to any reversionary interest in any of the Liquidation Trust Assets, but nothing herein will limit the right and power of the Trustee to abandon any Liquidation Trust Assets in the event the Trustee determines it is in the best interests of the Liquidation Trust and the Liquidation Trust Beneficiaries to do so.

1.6     **The Oversight Committee.**

(a)     As provided in Section XII.B of the Plan, the Oversight Committee shall continue in existence until such times as its members elect to cause its dissolution for the purpose of, among other things, assisting and directing the Trustee in holding the Liquidation Trust Assets and the Retained Assets, liquidating the Liquidation Trust Assets and the Retained Assets, resolving all Disputed Claims, making all distributions to holders of Allowed Claims in accordance with the terms of the Plan and otherwise implementing the Plan and administering the Estate. The Oversight Committee is authorized to retain Cooley Godward Kronish LLP as counsel and such other professional persons previously retained by the Debtor and the Committee as have previously been approved by the Bankruptcy Court or as it deems necessary and appropriate, who shall be compensated from the Liquidation Trust Assets as set forth in the Plan.

(b)     The Trustee shall report to the Oversight Committee on at least a monthly basis, or such other period as subsequently agreed to between the Oversight Committee and the Trustee, as to the status of all material litigation and Claims objections, and all other material matters affecting the Liquidation Trust and the Retained Assets. The Trustee shall provide the Oversight Committee with at least seven (7) days advanced notice in writing of any proposed action by the Trustee that may impact the Retained Assets or is material to the affairs of the Liquidation Trust (i.e., likely to have a material impact on the recovery of funds from Trust Assets or the amount of Allowed Claims to be paid by the Trust), and, in the event the Oversight Committee objects to such proposed action, the Trustee and the Oversight Committee shall attempt to consensually resolve such dispute and, if they are unable to do so, the matter shall be resolved by the Bankruptcy Court. The Trustee's failure to receive objections from the Oversight Committee within seven (7) days after written (including facsimile or electronic) notice is provided to the Oversight Committee of a proposed action shall be deemed an approval of the Oversight Committee for purposes of this Section. In the event the Trustee and counsel for the Oversight Committee agree that urgent circumstances require a more expedited decision, such decision may be made upon less than seven (7) days notice, and with the mutual agreement of the Trustee and counsel to the Oversight Committee, without notice, provided that the Trustee and the counsel to the Oversight Committee are in agreement on the course of action to be pursued.

# II.

## RIGHTS, POWERS AND DUTIES OF LIQUIDATION TRUSTEE

2.1 **General.** As of the Effective Date, the Trustee shall take possession and charge of the Liquidation Trust Assets and, subject to the provisions hereof and in the Plan, shall have full right, power and discretion to manage the affairs of the Liquidation Trust, subject to Section 1.6(b) above. Except as otherwise provided herein and in the Plan, the Trustee shall have the right and power to enter into any covenants or agreements binding the Liquidation Trust and in furtherance of the purpose hereof and of the Plan, to execute, acknowledge and deliver any and all instruments which are necessary or deemed by the Trustee to be consistent with and advisable in connection with the performance of its duties hereunder. On and after the Effective Date, the Trustee, subject to Section 1.6(b) above, shall have the power and responsibility to undertake all acts contemplated by the Plan to be done by the Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidation Trust Assets and the Retained Assets and the distribution of the proceeds thereof, as contemplated by the Plan, including, without limitation:

(a) To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by the Debtor or any officer, director or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such members, officers, directors and shareholders;

(b) To maintain escrows, bank accounts (including checking and money market accounts) and other accounts, make distributions to holders of Allowed Claims and take other actions consistent with the Plan and the implementation of this Agreement, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves in the name of the Liquidation Trust;

(c) To collect, hold, sell, lease, liquidate and distribute all Liquidation Trust Assets pursuant to the Plan and this Agreement, including, but not limited to, selling or leasing the Owned Real Property, compromising the Secured Note, and releasing the Lien on the Purchaser's assets, and to engage in all acts that would constitute ordinary performance of all obligations of a trustee of a liquidating trust;

(d) To assume and assign, reject or terminate any Executory Contract or Unexpired Lease not otherwise rejected pursuant to the Plan;

(e) To object to any Claim, right or Cause of Action (disputed or otherwise) as set forth in the Plan;

(f) To investigate, prosecute, defend, compromise, settle (subject to Section IV.B.2. of the Plan), adjust, retain, enforce or abandon any claim, right or Cause of Action under section 1123(b) of the Bankruptcy Code or otherwise in accordance with the Plan and this Agreement, and to seek Bankruptcy Court approval if required under and pursuant to the terms of the Plan;

(g) To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Liquidation Trust and to pay, from the Liquidation Trust Assets, the charges incurred by the Liquidation Trust on or after the Effective Date for services of professionals, disbursements, expenses or related support services relating to the implementation of the Plan and this Agreement as well as the fees and expenses of the Claims Agent and counsel to the Oversight Committee, without any supervision of, or approval by, the Bankruptcy Court or the United States Trustee;

(h) To prepare and file the Tax returns described in Section 2.7(b) hereof;

(i) To act as the Debtor's attorney-in-fact with respect to any Tax Refund not received by the Debtor before the Effective Date;

(j) To make all distributions to holders of Allowed Claims provided for or contemplated by the Plan;

(k) To make investments as permitted in Section 2.3 hereof and as deemed appropriate by the Trustee and the Oversight Committee;

(l) To collect any accounts receivable or other claims of the Debtor or its Estate not otherwise disposed of pursuant to the Sale, which may include the use of a collection company or agent for such purpose;

(m) To enter into any agreement or execute any document required by or consistent with the Plan and this Agreement and perform all of the obligations the Trustee thereunder;

(n) To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Trustee's choice, any assets, including documents, books and records, that the Trustee concludes are of no benefit to creditors of the Estate or, at the conclusion of the Debtor's chapter 11 case, are determined to be too impractical to distribute, store or otherwise maintain;

(o) To utilize the Liquidation Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs deemed necessary or advisable by the Trustee to insure the acts and omissions of the Trustee, and if appropriate, the Oversight Committee;

(p) To maintain appropriate books and records;

(q) To pay U.S. Trustee Fees, and in calculating such fees, to file with the Bankruptcy Court and serve upon the United States Trustee quarterly reports regarding the administration of the assets subject to the Trustee's ownership and control pursuant to the Plan, distributions made by the Trustee and other matters relating to the implementation of the Plan. The first quarterly report will be filed forty-five (45) days after the Effective Date and reports shall be filed thereafter every January 15th, April 15th, July 15th, and October 15th until a final decree has been entered or the Bankruptcy Case is dismissed;

(r) To serve the unaudited financial statements and unaudited written reports upon the holders of all interests in the Trust and entities having requested special notice pursuant to and in accordance with any order of the Bankruptcy Court; and

(s) To do all other acts or things not inconsistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable with respect to implementing, administering and enforcing the Plan and this Agreement;

Other than the obligations of the Trustee enumerated or referred to herein or under the Plan, the Trustee shall have no duties or obligations of any kind or nature respecting the implementation and administration of the Plan or this Agreement.

2.2 **Distributions.** On and after the Effective Date, the Liquidation Trust shall: (i) pay or provide for all expenses of the Liquidation Trust from the Liquidation Trust Assets; (ii) establish and maintain a reserve for expenses of the Liquidation Trust; (iii) establish and maintain a reserve for Disputed Claims; (iv) establish and maintain a reserve for unclaimed distributions; (v) establish any other reserves or accounts the Trustee deems necessary or appropriate; and (vi) make distributions of Cash to the holders of Allowed Claims from the Liquidation Trust in accordance with the Plan and this Agreement. The Trustee shall record and account for all proceeds received upon any disposition of Liquidation Trust Assets (after deduction therefrom of appropriate reserves as provided herein and in the Plan) for distribution in accordance with the provisions of the Plan and this Agreement.

(a) **Liquidation Trust Expense Reserve.** On the Effective Date, a reserve shall be established in an amount to be determined by the Trustee, with the consent of the Oversight Committee (the "Liquidation Trust Expense Reserve"), to fund all operating and administrative costs and expenses and other costs and expenses necessary to conduct all activities in connection with the Liquidation Trust, as set forth in the Plan and this Agreement, including, without limitation, the Trustee's compensation, insurance premiums, any bond required of, or desirable to be obtained by, the Trustee or the Disbursing Agent to protect the Liquidation Trust Assets, fees and expenses to be incurred with respect to legal services to be provided to the Trustee and the Oversight Committee, and accounting fees. No distributions will be made from the Liquidation Trust on account of Allowed Claims until the Trustee establishes appropriate reserves for the Liquidation Trust Expense Reserve.

(b) **Reserve for Disputed and Unpaid Claims.** On and after the Effective Date, the Trustee shall establish and maintain reserves for Disputed and unpaid Secured Claims, Administrative Claims, Priority Tax Claims, Priority Claims and the Disputed portion of General Unsecured Claims (collectively, the "Disputed Claims" and the "Disputed Claim Reserve"). The Disputed Claim Reserve shall initially be allocated the Cash or, in the case of a General Unsecured Claim, the other Liquidation Trust Assets that would, in each case, have been distributed to or held on behalf of the holders on account of the Disputed Claims had their Disputed Claims been deemed fully Allowed Claims on the Effective Date or such other amount as may be approved by Final Order of the Bankruptcy Court. The balance of the Disputed Claim Reserve, if any, remaining after all such Disputed Claims have been resolved and distributions with respect to and on account of the Disputed Claims have been made pursuant to subsection (d)

below, shall be added to any other reserve hereunder if necessary or distributed to holders of Allowed Claims in a manner consistent with the Plan.

(c) **Distributions of Allowed Secured Claims, Administrative Claims and Priority Claims.** On the Effective Date or as soon thereafter as is practicable, the Trustee shall make Cash distributions to holders of Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Claims, in each case, as provided for in the Plan.

(d) **Distributions on Account of Disputed Claims.** Distributions with respect to any Disputed Claim that becomes an Allowed Claim shall be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order of the Bankruptcy Court. As provided for in the Plan, no distribution shall be made on account of Disputed Claims other than those in Class 4 until such claims become Allowed Claims. Notwithstanding the foregoing, Holders of Disputed Claims in Class 4 shall be entitled to distributions on account of the Allowed portion, if any, of such Disputed Claims pending final resolution of the Disputed portion of such Claim.

(e) **Unclaimed Distributions.** If any distribution remains unclaimed for a period of one hundred and eighty (180) days after the later of (i) the Effective Date and (ii) the last date on which a distribution was made in accordance with the Plan to the holder of an Allowed Claim entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title and interest in and to the unclaimed property shall be added to any other reserve hereunder if necessary or distributed in holders of Allowed Claims in a manner consistent with the Plan.

(f) **Other Reserves.** The Trustee may at any time establish such additional reserves as he deems necessary to effectuate the provisions and intent of the Plan and this Agreement.

(g) **Limits on Retained Cash.** The Liquidation Trust may not receive or retain Cash or Cash equivalents in excess of an amount reasonably necessary to meet expenses, pay contingent liabilities (including Disputed Claims) and maintain the value of the Liquidation Trust Assets. Without limiting the foregoing, the Trustee shall distribute at least annually the net income of the Liquidation Trust and the net proceeds from the sale or other disposition of the Liquidation Trust Assets in excess of the amount retained for such purposes.

2.3 **Limitations on Investment Powers of Trustee.** Funds in the Liquidation Trust shall be invested in demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Liquidation Trust as determined by the Trustee and the Oversight Committee, and need not be invested in accordance with section 345 of the Bankruptcy Code unless the Bankruptcy Court otherwise requires. All such investments shall comply with the limitations contained in Revenue Procedure 94-45, 1994-2 C.B. 684 and any other limitations imposed on a liquidating trust, within the meaning of Treas. Reg. §301.7701-4(d), pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.4 **Liability of Trustee.**

(a) **Standard of Care.** Except in the case of willful misconduct, gross negligence or fraud, the Trustee shall not be liable for any loss or damage by reason of any action taken or omitted by him pursuant to the discretion, powers and authority conferred, or in good faith believed by the Trustee to be conferred, on the Trustee by this Agreement or the Plan.

(b) **No Liability for Acts of Predecessors.** No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

(c) **No Implied Obligations.** The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

(d) **No Liability for Good Faith Error of Judgment.** The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be proved that the Trustee was grossly negligent in ascertaining the pertinent facts.

(e) **Reliance by Trustee on Documents or Advice of Counsel or Other Persons.** Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with legal counsel for the Liquidation Trust and other agents and advisors and shall not be liable for any action taken or suffered by the Trustee in reliance upon the advice of such counsel, agents or advisors. The Trustee and the Oversight Committee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Liquidation Trust Assets.

(f) **No Personal Obligation for Trust Liabilities.** Persons dealing with the Trustee, or seeking to assert claims against the Liquidation Trust, shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

2.5 **Selection of Agents.** With the consent of the Oversight Committee, the Trustee may engage any employee or agent of the Debtor and the Committee or any other persons, and also may engage or retain brokers, banks, custodians, investment and financial advisors, attorneys (including existing counsel to the Oversight Committee or the Debtor), accountants (including existing accountants for the Committee or the Debtor) and other advisors and agents, including, without limitation, one or more Disbursing Agents, in each case without Bankruptcy Court approval. For the avoidance of doubt, the Trustee is authorized to engage, and hereby does engage, FTI Consulting, Inc., Cole, Schotz, Meisel, Forman & Leonard, P.A. and Cooley Godward Kronish LLP.

The Trustee may pay the salaries, fees and expenses of such persons or entities from amounts in the Liquidation Trust Expense Reserve, or, if such amounts are insufficient therefor, out of the Liquidation Trust Assets or proceeds thereof. In addition, the parties acknowledge that Liquidation Trust Assets may be advanced to satisfy such salaries, fees and expenses. The Trustee shall not be liable for any loss to the Liquidation Trust or any person interested therein by reason of any mistake or default of any such person or entity referred to in this Section 2.5 selected by the Trustee in good faith and without gross negligence.

2.6 **Trustee's Compensation, Indemnification and Reimbursement.**

(a) As compensation for services in the administration of this Liquidation Trust, the Trustee shall be compensated as specified on **Schedule A** attached hereto. The Trustee shall also be reimbursed for all documented actual, reasonable and necessary out-of-pocket expenses incurred in the performance of his duties hereunder.

(b) In addition, the Trustee shall be indemnified by and receive reimbursement from the Liquidation Trust Assets against and from any and all loss, liability, expense (including attorneys' fees) or damage which the Trustee incurs or sustains, in good faith and without gross negligence, acting as Trustee under or in connection with this Agreement.

(c) It is anticipated and intended that the Trustee devote his attention to the prompt and orderly administration of the Liquidation Trust and the Plan. If the Trustee and the Oversight Committee agree that the Trustee is able to fulfill his obligations under this Agreement and the Plan by devoting a portion of each work-day or work-week to performing the services set forth herein, the Trustee may be retained only on a part-time basis on terms to be agreed upon between the Trustee and Oversight Committee. Subject to the consent of the Oversight Committee, with such consent not to be unreasonably withheld, the Trustee may accept employment elsewhere during any period of part-time services, provided such additional employment does not result in a conflict of interest with his obligations hereunder. Either the Oversight Committee or the Trustee may provide thirty (30) days' prior written notice to the other party notifying such party that the Oversight Committee or Trustee, as applicable, believes that the Trustee's full-time engagement hereunder is no longer required, whereupon the parties agree to in good faith negotiate satisfactory part time engagement terms. If within the notice period the Oversight Committee and Trustee cannot agree on such terms (and subject to the Oversight Committee's right to remove the Trustee at any time under Section 4.2 hereof), either may opt to terminate the Trustee's engagement as of thirty (30) additional days after the expiration of the notice period, or when the appointment of a successor Trustee becomes effective.

(d) The Trustee is hereby authorized to obtain all reasonable insurance coverage for himself, his agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and his agents, representatives, employees or independent contractors under the Plan and this Agreement.

2.7    **Tax Matters.**

(a)    **Income Tax Treatment.**

(i)    The Debtor, the Trustee and the holders of Allowed General Unsecured Claims shall treat the Liquidation Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and any comparable provision of state or local law. For income tax purposes, the Debtor, the Trustee and the holders of Allowed General Unsecured Claims shall treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as (a) the transfer of the Liquidation Trust Assets by the Debtor to the holders of Allowed General Unsecured Claims (subject to any liabilities of the Debtor to which such assets are subject), followed by (b) the transfer of such assets (subject to such liabilities) by the holders of Allowed General Unsecured Claims to the Liquidation Trust in exchange for their beneficial interests therein. For the avoidance of doubt, the holders of Allowed General Unsecured Claims are not intended to be treated for federal income tax purposes as receiving Liquidation Trust Assets contributed to the Disputed Claim Reserve until such time as the Disputed Claim Reserve makes distributions, in which case (and at which time) the holders of Allowed General Unsecured Claims are intended to be treated as receiving the distributions actually received from the Disputed Claim Reserve, if any.

(ii)    As soon as reasonably possible after the Effective Date, the Trustee shall, in consultation with the Oversight Committee, determine the fair market value of each Liquidation Trust Asset other than Cash based on a good faith determination and the advice of any professional retained by the Trustee for this purpose. The Trustee shall then, as soon as reasonably possible after such determination, notify each holder of an Allowed General Unsecured Claim of the value of such holder's interest in the Liquidation Trust. The Debtor, the Trustee, the holders of Allowed General Unsecured Claims and all other parties shall consistently use such values for all federal income tax purposes.

(iii)    The holders of Allowed General Unsecured Claims shall be treated for tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust. As such, the holders of Allowed General Unsecured Claims shall include in their taxable incomes their respective shares of each item of the Liquidation Trust's income, gain, deduction, loss and credit.

(iv)    All income of the Liquidation Trust and the Disputed Claim Reserve will be subject to tax on a current basis.

(b)    **Tax Returns.**

(i)    The Trustee shall timely file all Tax returns required to be filed by the Liquidation Trust on the basis that the Liquidation Trust is a grantor trust pursuant to Treasury Regulation § 1.671-4(a), and the Trustee may require any holder of an Allowed General Unsecured Claim to provide the Trustee with certain Tax information that may be necessary for the Trustee to timely file such Tax returns.

(ii)    As soon as reasonably possible after the close of each calendar year, the Trustee shall send each holder of an Allowed General Unsecured Claim a statement

setting forth such holder's share of the Liquidation Trust's income, gain, deduction, loss and credit for the year and shall instruct the holder to report all such items on his, her or its Tax returns for such year and pay any Tax due with respect thereto.

(iii) The Trustee shall timely file all Tax returns required to be filed with respect to the Disputed Claim Reserve on the basis that the Disputed Claim Reserve is a discrete trust pursuant to Section 641 et seq. of the Internal Revenue Code. The Trustee shall pay from the Liquidation Trust Assets any Taxes required to be paid with respect to the Disputed Claim Reserve's undistributed income or gains.

(iv) The Trustee may request an expedited determination of the Taxes owed by the Liquidation Trust or the Disputed Claim Reserve under Section 505(b) of the Bankruptcy Code for any Tax return for which such determination may be requested.

(v) The Trustee shall be authorized, and shall file, any Debtor Tax return.

(c) **Withholding.** The Trustee shall withhold and pay over to the appropriate taxing authority any amount required to be withheld under Tax laws with respect to any distribution pursuant to this Agreement or the Plan. Any Tax withheld shall be treated as distributed to the distributee for purposes of this Agreement. The Trustee may require that any distributee certify to the Trustee's satisfaction such distributee's taxpayer identification number (assigned by the Internal Revenue Service), or certify to the Trustee's satisfaction that distributions to the distributee are exempt from backup withholding, and the Trustee may condition any distribution on receipt of such information.

2.8 **Conflicting Claims.** If the Trustee becomes aware of any disagreement or conflicting claims with respect to the Liquidation Trust Assets, or is in good faith doubt as to any action that should be taken under this Agreement, the Trustee may take any or all of the following actions as reasonably appropriate:

(i) to the extent of such disagreement or conflict, or to the extent deemed by the Trustee necessary or appropriate in light of such disagreement or conflict, withhold or stop all further performance under this Agreement with respect to the matter of such dispute (except, in all cases, the safekeeping of the Liquidation Trust Assets) until the Trustee is reasonably satisfied that such disagreement or conflicting claims have been fully resolved; or

(ii) file a suit in interpleader or in the nature of interpleader in the Bankruptcy Court and obtain an order requiring all persons involved to litigate in the Bankruptcy Court their respective claims arising out of or in connection with this Agreement; or

(iii) file any other appropriate motion for relief in the Bankruptcy Court.

2.9 **Records of Trustee.** The Trustee shall maintain accurate records of receipts and disbursements and other activity of the Liquidation Trust, and duly authorized representatives of the Oversight Committee shall have reasonable access to the records of the Liquidation Trust. The books and records maintained by the Trustee, as well as any and all other books and records

obtained from the Debtor, may be disposed of by the Trustee at such time as the Trustee determines, in consultation with the Oversight Committee, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Liquidation Trust or its beneficiaries, or upon the termination of the Liquidation Trust, provided that at least thirty (30) days notice of the intention to dispose of such books and records has been provided to the Oversight Committee.

2.10 **Bond.** The Committee or the Oversight Committee, as applicable, may require the Trustee to obtain a bond in favor of the Liquidation Trust in an amount to be determined from time to time by the Oversight Committee, the cost of which shall be a Liquidation Trust Expense. Any bond shall require thirty (30) days' notice to the Oversight Committee before termination or renewal.

## III.

## RIGHTS, POWERS AND DUTIES OF BENEFICIARIES

3.1 **Interests of Liquidation Trust Beneficiaries.** The holders of Allowed General Unsecured Claims shall have beneficial interests in the Liquidation Trust Assets as provided in the Plan. The ownership of a beneficial interest in the Liquidation Trust shall not be evidenced by any certificate or receipt or any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

3.2 **Interests Beneficial Only.** The ownership of a beneficial interest hereunder shall not entitle any holder of an Allowed General Unsecured Claim to any title in or to the Liquidation Trust Assets as such (which title shall be vested in the Trustee) or to any right to call for a partition or division of Liquidation Trust Assets or to require an accounting.

## IV.

## AMENDMENT OF TRUST OR CHANGE IN TRUSTEE

4.1 **Resignation of Trustee.** The Trustee may resign by an instrument in writing signed by the Trustee and filed with the Bankruptcy Court with notice to the Oversight Committee, provided that the Trustee shall continue to serve as such after his resignation for thirty (30) days or, if longer, until the time when appointment of his successor shall become effective in accordance with Section 4.3 hereof, or as otherwise agreed to by the Oversight Committee.

4.2 **Removal of Trustee.** The Oversight Committee may remove the Trustee with or without cause at any time by majority vote. Such removal shall be effective thirty (30) days after the Oversight Committee's determination or as otherwise agreed to by the Oversight Committee, or after such shorter period (or immediately) as the Oversight Committee may direct for cause. Upon removal of the Trustee by the Oversight Committee in accordance with this Section 4.2 other than for cause, the Trustee shall be entitled to all compensation that has accrued through the effective date of termination, but remains unpaid as of such date which payment shall be made promptly from the Liquidation Trust Expense Reserve. In the event the Trustee is removed for cause, the Trustee shall forfeit any accrued unpaid compensation. For the

purposes of this Agreement, "cause" shall mean (a) the willful and continued refusal by the Trustee to perform his duties as set forth herein; (b) gross negligence, gross misconduct, fraud, embezzlement or theft; or (c) such other cause as the Oversight Committee shall in good faith determine.

4.3 **Appointment of Successor Trustee.** In the event of the death, resignation, termination, incompetence or removal of the Trustee, the Oversight Committee may appoint a successor Trustee without the approval of the Bankruptcy Court, which the parties acknowledge shall nevertheless retain jurisdiction to resolve any disputes in connection with the service of the Trustee or his successor. If the Oversight Committee fails to appoint a successor Trustee within thirty (30) days of the occurrence of a vacancy, any holder of an Allowed General Unsecured Claim or the outgoing Trustee may petition the Bankruptcy Court for such appointment. Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the predecessor Trustee (if practicable) an instrument accepting such appointment and the terms and provisions of this Agreement, and thereupon such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers and duties of the retiring Trustee.

4.4 **Continuity.** Unless otherwise ordered by the Bankruptcy Court, the death, resignation, incompetence or removal of the Trustee shall not operate to terminate or to remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Trustee. In the event of the resignation or removal of the Trustee, the Trustee shall promptly execute and deliver such documents, instruments, final reports, and other writings as may be reasonably requested from time to time by the Bankruptcy Court, the Oversight Committee or the successor Trustee.

4.5 **Amendment of Agreement.** This Agreement may be amended, modified, terminated, revoked or altered only upon (i) order of the Bankruptcy Court; or (ii) agreement of the Trustee and the Oversight Committee.

V.

**TERMINATION OF TRUST**

The Liquidation Trust shall terminate upon the earlier to occur of (a) the liquidation and distribution of the Liquidation Trust Assets in accordance with the Plan, the Confirmation Order and this Agreement and the full performance of all other duties and functions of the Trustee as set forth therein, and (b) the fifth anniversary of the Effective Date, subject to (i) the Trustee's election to extend such period for an additional year (approved by the Bankruptcy Court within six (6) months of the fifth anniversary of the Effective Date), and (ii) any additional fixed extension of such period approved by the Bankruptcy Court within six (6) months of the then current termination date. A Bankruptcy Court's approval of any extension of the Liquidation Trust's termination date must be based upon a finding that the extension is necessary to the Liquidation Trust's purpose of liquidating the Liquidation Trust Assets.

# VI.

# RETENTION OF JURISDICTION

Subject to the following sentence, the Bankruptcy Court shall have exclusive jurisdiction over the Liquidation Trust, the Trustee and the Liquidation Trust Assets as provided in the Plan, including the determination of all controversies and disputes arising under or in connection with the Liquidation Trust or this Agreement. However, if the Bankruptcy Court abstains or declines to exercise such jurisdiction or is without jurisdiction under applicable law, any other court of competent jurisdiction may adjudicate any such matter.

# VII.

# MISCELLANEOUS

7.1 **Applicable Law.** The Liquidation Trust created by this Agreement shall be construed in accordance with and governed by the laws of the State of Delaware without giving effect to principles of conflict of laws, but subject to any applicable federal law.

7.2 **Waiver.** No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

7.3 **Relationship Created.** Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

7.4 **Interpretation.** Section and paragraph headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of any provision hereof.

7.5 **Savings Clause.** If any clause or provision of this Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court, such invalidity or unenforceability shall not affect any other clause or provision hereof, but this Agreement shall be construed, insofar as reasonable to effectuate the purpose hereof, as if such invalid or unenforceable provision had never been contained herein.

7.6 **Entire Agreement.** This Agreement and the Plan constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations with respect to the subject matter hereof except as set forth herein or therein. This Agreement together with the Plan supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to such subject matter. Except as otherwise authorized by the Bankruptcy Court or specifically provided in this Agreement or in the Plan, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

7.7 **Counterparts.** This Agreement may be executed by facsimile or electronic transmission and in counterparts, each of which when so executed and delivered shall be an

original document, but all of which counterparts shall together constitute one and the same instrument.

7.8 **Notices.**

(a) All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be deemed given five (5) Business Days after first-class mailing, one (1) Business Day after sending by overnight courier, or upon receipt of facsimile or electronic transmission.

**If to the Debtor:**

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Norman L. Pernick
npernick@coleschotz.com
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

**If to the Committee or the Oversight Committee:**

COOLEY GODWARD KRONISH LLP
Jay Indyke
jindyke@cooley.com
Cathy Hershcopf
chershcopf@cooley.com
Brent Weisenberg
bweisenberg@cooley.com
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Irving E. Walker
iwalker@coleschotz.com
Gary H. Leibowitz
gleibowitz@coleschotz.com
300 East Lombard Street, Suite 2000
Baltimore, MD 21202
Telephone: (410) 230-0660
Facsimile: (410) 230-0667

BIFFERATO GENTILOTTI LLC
Garvan McDaniel
gmcdaniel@bglawde.com
800 N. King Street
P.O. Box 2165
Wilmington, DE 19801
Telephone: (302) 429-1900
Facsimile: (302) 429-8600

**If to the Liquidation Trustee:**

FTI CONSULTING, INC.
Charles Reeves
charlie.reeves@fticonsulting.com
2001 Ross Avenue, Suite #400
Dallas, TX 75201
Telephone: (214) 397-1633
Facsimile: (214) 397-1791

**If to the Disbursing Agent:**

CREDITNTELL.COM INC.
Lawrence Sarf
larrys@creditntell.com
310 East Shore Road
Great Neck, NY 11023
Telephone: (800) 789-0123
Facsimile: (516) 487-4538

**If to the Claims Agent:**

RITZ CAMERA CENTERS, INC. CLAIMS
PROCESSING CENTER
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245
Telephone: (310) 823-9000

    (i)    if to any holder of an Allowed Claim (and, in the case of holders of Class 4 Claims, a partially Allowed Claim) (such holders, "Liquidation Trust Beneficiaries"), as set forth in Section XII.G.2.c. of the Plan.

    (b)    Any person may change the address at which it is to receive notices under this Agreement by furnishing written notice to the Trustee as set forth in Section XII.G.2.c. of the Plan.

    7.9    **Effective Date.** This Agreement shall become effective as of the Effective Date of the Plan.

    7.10    **Successors and Assigns.** This Agreement shall be binding upon each of the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties, the Liquidation Trust Beneficiaries and, subject to the provisions hereof, their respective successors and assigns.

    7.11    **Conflict with the Plan.** In the event of any conflict between the terms of this Agreement and the Plan, the terms of the Plan shall govern.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF** the undersigned have caused this Agreement to be executed as of [_____], 2010.

**RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc.**

By: _____
Name: _____
Title: _____

**The Liquidation Trustee of the RCC Liquidation Trust**

By: _____
Name: _____
Title: _____

**The Oversight Committee of Creditors of RCC Liquidating Corp. f/k/a Ritz Camera Centers, Inc.**

By: _____
Name: _____
Title: _____

## SCHEDULE A

## TERMS OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF THE TRUSTEE

1. **COMPENSATION**

    (a) Beginning as of the Effective Date of this Agreement, the Trustee shall be compensated on an hourly basis consistent with the attached schedule of hourly rates of FTI employees.

2. **COMPUTATION OF HOURS; RECORDKEEPING**

    (a) For the purpose of calculating the days and hours in respect of which the Trustee may receive compensation under Section 1 above, travel times shall be included in the number of hours expended at one-half otherwise applicable rates, but only if such travel is for the purpose of conducting Trustee activities. Travel by the Trustee for personal reasons, including travel to and from any residence of the Trustee, shall not be included in the number of hours expended.

    (b) The Trustee shall maintain a record of his time expended in his capacity as Trustee, which shall include a brief description of such activities. The record shall be available for inspection and copying by the Oversight Committee. The Trustee shall report to the Oversight Committee, as part of the reporting to be provided to the Oversight Committee under this Agreement, as to the amount of time so expended during each month.

3. **REIMBURSEMENT OF EXPENSES**

    The Trustee shall be entitled to reimbursement for documented actual and reasonable expenses incurred in performing his duties as the Trustee, and may submit a report of monthly expenses, if any, with each report under Section 2 above.

# Exhibit A

| FTI Professionals | Title | Hourly Rate |
|---|---|---|
| Duffy, Robert J | Sr Managing Director | 885 |
| Coulombe, Stephen L | Sr Managing Director | 885 |
| Weinsweig, Marc | Sr Managing Director | 795 |
| Vallerie, James | Sr Managing Director | 755 |
| Rinaldi, Scott A | Managing Director | 685 |
| Reeves, Charles | Managing Director | 675 |
| Robinson, Joshua M. | Managing Director | 625 |
| Cartwright, Emily | Sr Consultant | 440 |
| Schiraga, Michael | Consultant | 350 |
| Fagerberg, Jessica | Consultant | 305 |
| Voksky, Hannah | Consultant | 240 |
| Moore, Teresa | Paraprofessional | 200 |
| Stewart, Paul | Paraprofessional | 200 |